## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JASON TODD ROLO,

                Plaintiff,

   v.

SECURITIES & EXCHANGE COMMISSION,
FINANCIAL INDUSTRY REGULATORY
AUTHORITY, DEPOSITORY TRUST &
CLEARING CORPORATION, and
JOHN DOE 1 – 100,

                Defendants.

Case No. 3:24-cv-02053-VDO

## DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), by and through its undersigned counsel, hereby respectfully moves this Court for an order dismissing each cause of action that Plaintiff Jason Todd Rolo ("Plaintiff" or "Rolo") asserts against FINRA in his First Amended Complaint ("FAC") [ECF No. 13].

## I.    <u>INTRODUCTION</u>

FINRA is a private, not-for-profit self-regulatory organization ("SRO") that is authorized by Congress to conduct the daily regulation of the national securities markets, with oversight from the Securities and Exchange Commission ("SEC"). The national securities markets are comprised of the national securities exchanges (*e.g.*, NASDAQ, New York Stock Exchange, Cboe) and the over-the-counter ("OTC") market.  Equity securities not listed on a national securities exchange may be traded and quoted in the OTC market.

This case relates to an OTC equity security – formerly traded on the OTC market and identified with the symbol MMTLP.  On December 9, 2022, consistent with its authority to regulate its members who quote and trade equity securities on the OTC market, FINRA directed its member firms to halt trading and quoting of MMTLP shares. The FAC is one in a series of lawsuits filed by investors, proceeding *pro se*, who previously held shares of MMTLP and are seeking to lay blame at the feet of regulators like FINRA and the SEC, among other defendants, for losses that purportedly resulted from the activities of the named defendants rather than the investors' investment decisions.

Like the several unsuccessful MMTLP investor lawsuits before Rolo's,[1] the claims against FINRA in the FAC are fatally flawed. Most fundamentally, this Court lacks personal jurisdiction over FINRA. In addition, all of Rolo's claims against FINRA fail because they are based entirely on allegations related to FINRA's regulatory activities, and FINRA is immune from any suit challenging such activities. Further, neither the Exchange Act nor any other statute or common law principle provides Rolo with a private right of action against an SRO for acts or omissions in connection with its duties as a regulator. Finally, numerous other grounds, discussed below, also provide independent bases to dismiss Rolo's claims against FINRA.

The FAC also includes a section called "Action for Declaratory Judgment and Injunctive Relief," which asserts constitutional challenges to the structure and authority of FINRA. FAC ¶¶ 185-200. The Court should deny the requested relief because Rolo lacks standing to seek such relief and because FINRA is not a state actor.[2]

The FAC (which spans more than 217 separate paragraphs over eighty-one pages) cannot overcome the fatal deficiencies outlined in this motion. As a result, the FAC must be dismissed as to FINRA with prejudice, and without leave to amend because any amendment to the FAC would be futile.

---

[1] *See, e.g.*, *Hensley v. TD Ameritrade, Inc.,* No. 23-cv-5159, slip op. (W.D. Wash. Oct. 2, 2023) (a true and correct copy of this decision is attached as Exhibit A); *Park v. Financial Industry Regulatory Authority, Inc.*, 2023 WL 11795601, at *3-5 (N.D. Ga. Sept. 25, 2023); *Hofman v. Fidelity Brokerage Servs., LLC*, 2023 WL 3872564, at *6-8 (C.D. Cal. May 8, 2023); *Tawil v. Financial Industry Regulatory Authority, Inc.*, 2023 WL 4353179, at *1-2 (N.D. Fla. May 24, 2023); *see also Traudt v. Rubenstein,* 2:24-CV-00782, (D. Vt., July 17, 2024) (after FINRA's motion to dismiss was granted, plaintiff filed a motion to amend, which is currently pending before the court (ECF No. 112)).

[2] Rolo also asserts two other "Action[s] for Declaratory Judgment and Injunctive Relief," neither of which include claims against FINRA. *See* FAC, ¶¶ 175-184; 201-210.

DMS_US.370014806.6

## II.    FACTUAL BACKGROUND

### A.    The First Amended Complaint.

The FAC is one in a series of investor complaints, filed by *pro se* litigants, seeking relief for claims against FINRA that arise exclusively from its regulatory activities related to MMTLP – an equity security that traded on the OTC market.  Several of those cases have been dismissed pursuant to orders that have become final.[3]

---

[3] *See supra* fn. 1. FINRA respectfully requests that the Court take judicial notice of, and otherwise consider, the following documents (attached hereto for the Court's convenience) when deciding FINRA's Motion to Dismiss:

- **Exhibit A** – A true and correct copy of the decision in *Hensley v. TD Ameritrade, Inc.,* No. 23-cv-5159, slip op. (W.D. Wash. Oct. 2, 2023);
- **Exhibit B** – Options Clearing Corporation ("OCC") Memo #48884 RE: Torchlight Energy Resources, Inc. – Distribution dated 6/21/2021 (the "OCC Memo") available at https://infomemo.theocc.com/infomemo/search;
- **Exhibit C** – corporate action notice dated 12/6/2022 (the "12/6/2022 Corporate Action Notice") available at https://otce.finra.org/otce/dailyList?viewType=Deletions;
- **Exhibit D** – corporate action notice dated 12/8/2022 (the "12/8/2022 Corporate Action Notice") available at https://otce.finra.org/otce/dailyList?viewType=Deletions; and
- **Exhibit E** – notice of trading halt issued by FINRA on 12/8/2022 (the "Notice of Trading Halt") available at https://www.finra.org/sites/default/files/2022-12/UPC-35-2022-MMTLP%28Halt%29_2.pdf.
- **Exhibit F** – Certificate, Amendment or Withdrawal of Designation filed by Meta Materials, Inc. with Nevada Secretary of State on December 9, 2022 (the "Amendment") available at https://www.sec.gov/Archives/edgar/data/1431959/000119312522305648/d433696dex332.htm.

Courts may consider decisions from other federal district courts and other public records when deciding a motion to dismiss.  *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that court may "look to public records . . . in deciding a motion to dismiss."); *Golden Hill Paugussett Tribe of Indians v. Rell*, 463 F.Supp.2d 192, 197 (D. Conn. 2006) ("[I]t is a well-settled principle that the decision of another court or agency . . . is a proper subject of judicial notice."); *see also Virtusio v. Fin. Indus. Regul. Auth., Inc.*, No. 12-CV-00602 NC, 2013 WL 1899830, at *2 (N.D. Cal. May 7, 2013) (on summary judgment motion, granting FINRA's request for judicial notice of another court's order in a separate FINRA matter), *aff'd*, 615 F. App'x 400 (9th Cir. 2015).

Courts in this Circuit regularly consider public filings required by law to be made with the Securities and Exchange Commission ("SEC").  *See, e.g., Chien v. Skystar Bio Pharmaceutical Co.*, 566 F.Supp.2d 108, 110 (D. Conn. 2008) ("[A] court considering a motion to dismiss may look at public stock prices as well as 'public disclosure documents required by law to be, and that have been, filed with the [SEC].'") (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).  Likewise, documents published by self-regulatory organizations ("SRO") like the OCC and FINRA are appropriately considered on a motion to dismiss.  *See, e.g., Olagues v. Perceptive Advisers LLC*, 2016 U.S. Dist. LEXIS 122436, at *4 (S.D.N.Y. Sept. 8, 2016) ("The Court may also take judicial notice of the public rules of the Options Clearing Corporation . . . and [FINRA] . . . ."); *Forgione v. Gaglio*, No. 13 CIV. 9061 KPF, 2015 WL 718270, at *17 (S.D.N.Y. Feb. 13, 2015) ("the Court may take judicial notice of FINRA's registration requirements and the reports in which they are maintained").  Finally, the Court may consider any document where the plaintiff has notice of the information in the document and relied on it in drafting the plaintiff's complaint. *See DeLuca v. AccessIT Grp., Inc.*, 695 F.Supp.2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.2d 147, 153 (2d Cir. 2002)); *see also Howes v. New York Life Ins. Co.,* No. PWG-16-2952, 2017 WL 1176087, at *1 n.2 (D. Md. Mar. 30, 2017) (on motion to dismiss, taking judicial notice of disclosure publicly available on FINRA's website as a matter in the public record).

3

The FAC asserts nine causes of action against FINRA, all of which are based on speculative and unsupported conclusions about FINRA's regulatory activities related to MMTLP. There is a prolific social media community of former MMTLP investors who discuss conspiracy theories and misinformation related to MMTLP.  Indeed, the FAC is largely duplicative of other cases related to MMTLP that were filed on or after December 9, 2024,[4] and the social media community refers to the plaintiffs that filed those complaints as the "1209 Group."  The FAC (and the other complaints filed by the 1209 Group) include hundreds of paragraphs repeating the same or significantly similar allegations, all of which appear to be fueled by the social media discussions among former MMTLP investors.[5]

## B.     FINRA is a Private Company That Regulates its Broker-Dealer Members, Subject to SEC Oversight.[6]

Congress established a comprehensive statutory regime for "cooperative regulation" of the national securities markets through amendment to the Securities Exchange Act of 1934 ("Exchange Act"). *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 201 (2d Cir. 1999), *cert.*

---

[4] *See, e.g., Albert v. SEC*, D. Md. No. 1:24-cv-3548-JRR (dismissed voluntarily by plaintiff), *Auxier v. SEC*, W.D. Tex. No. 7:24-cv-318-DC-RCG, *Davis v. Next Bridge Hydrocarbons Inc.*, N.D. Tex. No. 3:24-cv-3058, *Pease v. SEC*, W.D. Tex. No. 7:24-cv-322-DC, *Spears v. Next Bridge Hydrocarbons, Inc.*, W.D. Tex. No. 7:24-cv-321-DC-RCG, *Vetrano v. Brda*, W.D. Tex. No. 7:24-cv-325-DC-RCG, and *Willcot v. SEC*, W.D. Tex. No. 7:24-cv-317-DC-RCG.

[5] For example, Rolo includes allegations that reference hearsay evidence cited in another case pending in Vermont federal court, claiming without any support that the trading halt imposed by FINRA was done to "prioritize[] institutional interests over the protection of retail investors . . . ." FAC ¶ 65.  In addition, Rolo asserts, in direct contradiction to information FINRA published for investors, that "[a]ccess to Blue Sheets, which contain transaction data for MMTLP and MMAT shares, is critical for identifying potential manipulative trading practices, such as synthetic share creation and naked short selling," *Cf.* FAC ¶ 69 *with* Supplemental FAQ: MMTLP Corporate Action and Trading Halt (Nov. 6, 2023), FAQ No. 13, *available at* https://www.finra.org/investors/insights/supplemental-faq-mmtlp-corporate-action-and-trading-halt (referred to in the FAC at ¶ 74).  Further, Rolo alleges without support that FINRA failed to act in response to market data that purportedly showed "persistent [failures to deliver]," which "allowed institutional participants to manipulate the market by creating synthetic shares and artificially suppressing prices, directly harming retail investors." FAC ¶ 138.

[6] In addition to the allegations in the FAC that describe FINRA's role in the securities industry, the information discussed in this motion regarding FINRA's role in the securities industry is found in publicly available information, case law, and other sources of which the Court may take judicial notice.

4

*denied,* 531 U.S. 1069 (2001). Under that congressional plan, private entities called SROs "exercise a primary supervisory role" and, in turn, are subject to SEC oversight. *See Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213–14 (9th Cir. 1998), *abrogated in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374 (2016).

FINRA is a private, not-for-profit Delaware corporation and SRO headquartered in the District of Columbia.[7] *See* FAC ¶¶ 7, 13. The government does not appoint FINRA board members, officers, or employees. *See* 72 Fed. Reg. at 42, 170-72. FINRA does not receive any state or federal funding; it is funded by registration, membership, and transaction fees charged to its members. *See* FINRA By-Laws, Art. VI, § 1, *publicly available at* https://www.finra.org/rules-guidance/rulebooks/corporate-organization/power-corporation-fix-and-levy-assessments.

The Exchange Act generally requires any registered broker or dealer transacting in securities to join an association of broker-dealers registered as a national securities association, which is one type of SRO. *See* 15 U.S.C. § 78o(b)(8), (b)(1). FINRA is currently the only registered national securities association. *See Turbeville v. FINRA*, 874 F.3d 1268, 1270 & n.2 (11th Cir. 2017). In that capacity, FINRA exercises its regulatory authority over the broker-dealer industry in accordance with the requirements of the Exchange Act and under close supervision by the SEC. *See Empire Fin. Grp., Inc. v. FINRA, Inc.,* No. 08-80534-CIV, 2009 U.S. Dist. LEXIS 133643, *20 (S.D. Fla. Jan. 15, 2009) ("[U]nder the comprehensive regulatory scheme for the securities industry that was established by Congress, FINRA's performance of its responsibilities is subject to the strict, on-going oversight of the SEC."); *see also NHBPA* v. *Black*, 53 F.4th 869, 876-77 (5th Cir. 2022) (FINRA's securities-regulation framework governs industry members under SEC oversight).

---

[7] FINRA was formed in 2007, when its predecessor, the National Association of Securities Dealers, Inc. ("NASD"), consolidated its member-firm regulation and enforcement functions with the regulatory and enforcement functions of the New York Stock Exchange. *See* Order Approving Proposed Rule Change to Amend the By-Laws of NASD, 72 Fed. Reg. 42,169 (Aug. 1, 2007).

The SEC has "broad supervisory responsibilities over [SROs]" and correspondingly broad power to enforce their compliance with these obligations. *See Austin Mun. Secs., Inc. v. NASD, Inc.*, 757 F.2d 676, 680 (5th Cir. 1985). If FINRA violates the Exchange Act, federal regulations, or its own rules, the SEC may suspend or revoke FINRA's registration as an SRO, limit FINRA's activities, functions, and operations, or impose other sanctions. *See* 15 U.S.C. § 78s(c), (h)(1)-(4). The SEC is also authorized to initiate judicial proceedings against FINRA to enjoin activities that would violate the Exchange Act or FINRA's rules and to seek civil penalties. *See* 15 U.S.C. § 78u(d)(1), (d)(3)(A). Thus, "Congress has vested in the SEC the obligation of ensuring that FINRA performs its statutory responsibilities." *Empire Fin.*, 2009 U.S. Dist. LEXIS 133643, at *20.

The Exchange Act requires FINRA to establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, . . . and, in general, to protect investors and the public interest . . . ." 15 U.S.C. § 78o-3(b)(6). FINRA's rules are "part of the apparatus of federal securities regulation." *Kurz v. Fid. Mgmt. & Rsch. Co.*, 556 F.3d 639, 641 (7th Cir. 2009).

### C.    FINRA Regulates the National Securities Markets.

The national securities markets are comprised of the national securities exchanges (*e.g.*, NASDAQ, New York Stock Exchange, Cboe) and the OTC market. FINRA does not operate a market, and it does not issue, cancel, settle, or clear securities that are traded in the national securities markets. Instead, FINRA performs oversight functions and regulates its members that trade and quote securities in the national securities markets to ensure compliance with FINRA rules,

6

the federal securities laws, and the rules and regulations thereunder.  *See* 15 U.S.C. § 78o-3(b); *Datek Sec. Corp. v. NASD,* 875 F. Supp. 230, 232 (S.D.N.Y. 1995).

Specifically, FINRA performs multiple regulatory functions to oversee the OTC market for equity securities, like MMTLP, that are not listed on a national securities exchange.  For example, FINRA (1) maintains a symbol directory for OTC equity securities and, where appropriate, can issue and delete security symbols, *see* https://otce.finra.org/otce/symbol-directory; (2) adopts rules regarding quoting and trading in OTC equity securities, *see* FINRA Rule 6400 Series;[8] (3) reviews, processes, and announces information about corporate actions regarding OTC equity securities, *see* SEC Rule 10b-17, 17 C.F.R. § 240.10b-17; *see also* FINRA Rule 6490;[9] and (iv) is authorized to halt trading and quoting of OTC equity securities if FINRA determines that doing so is necessary to protect investors and the public interest, *see* FINRA Rule 6440.[10]

### D.    Procedural History.

In 2020, Torchlight Energy Resources, Inc. ("Torchlight") announced a merger with Meta Materials, Inc. ("Meta").  FAC ¶ 15. As part of that merger, Torchlight shareholders received Series A Preferred Shares. FAC ¶ 16. In June 2021, the Options Clearing Corporation issued a memorandum explaining that the trading status of Torchlight's Series A Preferred Shares ("Series A Shares") was "not yet known," and based on the Proxy Statement filed by the company, those shares were not expected to be listed on a national securities exchange.  FAC ¶ 25; *see also* (Ex. B,

---

[8] The FINRA Rule 6400 Series is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6400.

[9] FINRA Rule 6490 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6490.

[10] FINRA Rule 6440 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6440-0.  Courts take judicial notice of FINRA's rules. *Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.*, 849 F. App'x 289, 294, n.4 (2d Cir. 2021) (taking judicial notice and noting FINRA's rules are subject to approval of the SEC); *Cashmore v. Fin. Indus. Regul. Auth.*, No. 18-CV-1198S, 2020 WL 6566302, at *4 (W.D.N.Y. Nov. 9, 2020) ("This Court takes judicial notice of FINRA and formerly the NASD's rules under Federal Rule of Evidence 201.").

7

OCC Memo). That memorandum also explains how transactions in the Series A Preferred Shares would be expected to clear if an OTC market developed and if such a market did not develop. *See* (Ex. B, OCC Memo at p. 1).

In October 2021, a market developed, and the Series A Preferred Shares began trading on the OTC market under the symbol MMTLP. FAC ¶¶ 23, 30.  Pursuant to FINRA Rule 6490, on December 6, 2022, as modified on December 8, 2022, FINRA announced Meta's plan to distribute shares of Next Bridge Hydrocarbon's common stock to holders of its Series A Preferred Shares on a one-for-one basis (the "Announcement"). FAC ¶ 41. The Announcement explained that "MMTLP shareholders with settled positions as of [December 12, 2022,] will receive one (1) share of [Next Bridge] for every one (1) share of MMTLP held." *See* (Ex. C, 12/06/2022 Corporate Action Notice).[11] Among other things, the Announcement further explained that any "[p]urchases of MMTLP executed after [December 8, 2022,] will not receive the distribution. . . .  Symbol: MMTLP will be deleted effective [December 13, 2022]." *See id.*; *see also* FAC ¶ 45.[12]

On December 9, 2022, pursuant to FINRA Rule 6440, FINRA notified its members to halt trading and quoting of MMTLP on the OTC market because "an extraordinary event has occurred or is ongoing that has caused or has the potential to cause significant uncertainty in the settlement and clearance process for shares in MMTLP." FAC ¶¶ 1(a), 49, 58; *see also* (Ex. E, Notice of

---

[11] Rolo references the Corporate Action Notices in the Complaint, which reflect the Announcement. *See, e.g.,* FAC ¶¶ 41, 45.  Thus, as previously noted, the Court may properly consider them when deciding this Motion to Dismiss.  *See Chambers v. Time Warner, Inc.*, 282 F.2d 147, 153 (2d Cir. 2002); *see also supra* fn. 1; (Exs. C and D).

[12] The Announcement was modified on December 8, 2022, in part, to clarify that FINRA would *delete* the MMTLP trading symbol on December 13, 2022. Ex. D, 12/08/2022 Corporate Action Notice; *see also* FAC ¶ 45. While the original version of the Announcement, published on December 6, 2022, stated that "MMTLP *shares will be cancelled* effective [December 13, 2022]," *id.,* FINRA does not *and cannot* cancel a company's securities.  FINRA may, however, delete a trading symbol for a security when it learns that the security has been cancelled. Thus, the Announcement was modified to reflect that FINRA would delete the MMTLP symbol because the Series A Shares would be cancelled as part of Meta's distribution. *See* (Ex. D, 12/08/2022 Corporate Action Notice); *see also* FAC ¶ 42.

Trading Halt).[13] As announced, the trading halt "officially ended on December 13, 2022." FAC ¶ 50; *see also* Ex. E, Notice of Trading Halt. The Meta distribution was finalized on December 14, 2022, *see* Next Bridge Hydrocarbons Press Release (Dec. 20, 2022),[14] and Meta cancelled the MMTLP shares on or about that same date.[15] *See* Next Bridge Investor FAQs.[16]

## III.  **ARGUMENT**

### A.  **Legal Standard.**

A plaintiff bears the burden to establish jurisdiction over a defendant moving to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). In deciding whether the Court has personal jurisdiction over the defendant, a Court may consider affidavits and documents submitted by the parties. *See Corning Inc. v. Shin Etsu Quartz Prods. Co.*, No. 00-7931, 2000 U.S. App. LEXIS 31853, *5-6 (2d Cir. Dec. 11, 2000); *see also Coan v. Bell Atlantic Sys. Leasing Int'l, Inc.*, 813 F. Supp. 929, 942 n.18 (D. Conn. 1990).

When considering a Rule 12(b)(6) motion to dismiss, a court accepts all well-pleaded facts as true and draws all inferences in the plaintiff's favor. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006). To survive a motion to dismiss, a complaint must contain enough facts for

---

[13] Rolo references FINRA's trading halt announcement in the FAC. *See, e.g.,* FAC ¶¶ 1(a), 49, 50; Ex. E, Notice of Trading Halt.

[14] *Available at* https://uploads-ssl.webflow.com/6169e69d0075ec7c66221a8b/63a376a38add926dd316f36a_NBH%20News%20Release%2012-20-2022%20.pdf ("Next Bridge Press Release") (last visited Mar. 7, 2025).

[15] On December 13, 2022, as announced, FINRA deleted the MMTLP trading symbol. FAC ¶ 68.

[16] *Available at* https://web.archive.org/web/20230106094030/https://www.nextbridgehydrocarbons.com/investors ("Next Bridge FAQs") (last visited Mar. 7, 2025).

the allegations to be plausible on their face.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 1955, 1974 (2007).

### B.    No Personal Jurisdiction.

A court must have jurisdiction over both the parties and the claims asserted in a plaintiff's complaint to decide the case. Because FINRA is not subject to personal jurisdiction in this action, the FAC should be dismissed under Rule 12(b)(2).

Personal jurisdiction over a party can be obtained by establishing: (1) general jurisdiction over the party to hear any claim asserted against it in the forum; or (2) specific jurisdiction over the party to hear only those claims arising out of a party's activities directed at the forum.  A federal court undertakes a "two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 37 (2d Cir. 2014).

As a threshold matter, Rolo does not allege that the Court has personal jurisdiction over FINRA as to any claim in the FAC. *See* FAC ¶¶ 8-10. Moreover, the facts as alleged do not support the exercise of personal jurisdiction over FINRA pursuant to Connecticut's long-arm statute. And even if Connecticut's long-arm statute did provide a basis for exercising jurisdiction over FINRA, the Due Process Clause of the Fourteenth Amendment requires dismissal because the Court lacks both general and specific personal jurisdiction over FINRA. Thus, Rolo's claims against FINRA should be dismissed.

1.    Connecticut's Long-Arm Statute Does Not Confer Jurisdiction Over FINRA.

Connecticut's long-arm statute provides for personal jurisdiction over foreign corporations, like FINRA, only in the case of: (1) a contract made in Connecticut or to be performed in Connecticut; (2) business solicited in Connecticut; (3) the production, manufacture or distribution of goods with the reasonable expectation that such goods will be used in Connecticut; or (4) tortious conduct in Connecticut. *See* C.G.S. § 33-929(f). None of FINRA's alleged conduct in the FAC falls into any of these categories. Indeed, Rolo's claims undeniably arise out of FINRA's performance of its regulatory functions generally, and the FAC does not allege any of those activities occurred in Connecticut. Thus, Connecticut's long-arm statute does not confer personal jurisdiction over FINRA as to any claim in the FAC. Even if Connecticut's long-arm statute did confer personal jurisdiction over FINRA, however, the Court still cannot exercise personal jurisdiction over FINRA in this action because to do so would violate the Due Process Clause of the Fourteenth Amendment.

2.    FINRA is Not Subject to General Personal Jurisdiction in Connecticut.

Corporations are subject to general personal jurisdiction solely where "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "[O]nly a limited set of affiliations with a forum" are sufficient to establish that the corporation is "essentially at home." *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation is considered "essentially at home" in two places: (1) its state of incorporation, and (2) the state in which its principal place of business is located.[17] *See Daimler AG*, 571 U.S. at 137.

---

[17] A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Typically, a corporation's headquarters qualifies as its principal place of business, and, as a result, the corporation is subject to general personal jurisdiction in the courts of that state. *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (noting that a corporation's principal place of business "should normally be the place where the corporation maintains its headquarters—provided

FINRA is an out-of-state corporation that is not subject to general personal jurisdiction in Connecticut. FINRA is not incorporated in Connecticut, and it does not maintain its principal place of business in Connecticut. Instead, FINRA is incorporated in Delaware and its principal place of business is in Washington D.C. *See Webb v. FINRA*, 889 F.3d 853, 856 (7th Cir. 2018) (noting that "FINRA is a Delaware corporation with its principal place of business in Washington, D.C."). Rolo acknowledges that FINRA is headquartered in Washington, D.C. *See* FAC ¶ 13. Accordingly, because FINRA is not at home in Connecticut, the Court lacks general personal jurisdiction over FINRA.

        3.      <u>Plaintiff Has Not Alleged Any Basis for Specific Personal Jurisdiction Over FINRA.</u>

FINRA is also not subject to specific personal jurisdiction because Rolo has not alleged any connection between FINRA's alleged conduct and Connecticut. A forum may exercise personal jurisdiction over an out-of-state defendant not otherwise subject to personal jurisdiction in the forum when the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear*, 564 U.S. at 923 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In other words, there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 924 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). It is not enough that an act was allegedly directed at the plaintiff. Instead, to be consistent with due process, the defendant must

---

that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center.'") (quoting *Hertz Corp.*, 559 U.S. at 93)).

have taken action "purposefully directed toward the forum State." *Asahi Metal Ind. Co., v. Sup. Court of Cal.*, 480 U.S. 102, 112 (1987).

Here, Rolo fails to allege any facts establishing that his claims "arise[] out of or [are] related to [FINRA's] contacts with the forum." *See In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673-74 (2d Cir. 2013). Indeed, Rolo does not allege that FINRA had any contact with Connecticut. *See generally* FAC. Rather, Rolo challenges the propriety of FINRA's regulatory decisions related to MMTLP and FINRA's power for making such determinations, claiming that such failures harmed him and other retail investors generally. *See e.g.*, FAC ¶ 2 ("FINRA imposed a U3 trading halt on MMTLP shares, effectively freezing all trading activity and denying investors access to their assets."), ¶ 3 ("FINRA's refusal to disclose Blue Sheets—critical records for tracking transaction activity—exposes significant regulatory failures."), ¶ 4 ("Further compounding these regulatory failures, this lawsuit challenges the constitutional validity of FINRA's authority."); *see also id.*, ¶¶ 34, 41, 42, 46-49, 51-61, 67-75, 81, 94-100. Such allegations do not establish specific personal jurisdiction over FINRA in this forum. As such, the FAC should be dismissed.

## C.    FINRA's Regulatory Immunity Bars All Claims.

An SRO such as FINRA is "immune from liability based on the discharge of its duties under the Exchange Act." *Sparta Surgical*, 159 F.3d at 1213; *see also Partnership Exch. Sec. Co. v. NASD*, 169 F.3d 606, 608 (9th Cir. 1999) (SRO is immune from suit when acting under the aegis of the Exchange Act's authorization); *DL Capital Group LLC v. NASDAQ Stock Market, Inc.*, 409 F.3d 93, 97 (2d Cir. 2005) (when an SRO engages in conduct consistent with the powers delegated to it pursuant to the Exchange Act and the regulations and rules promulgated thereunder, SRO is immune from suit). This form of absolute immunity is "an integral part of the American system of securities

regulation." *Dexter v. Depository Tr. & Clearing Corp.*, 406 F. Supp. 2d 260, 263 (S.D.N.Y. 2005), *aff'd*, 219 F. App'x 91 (2d Cir. 2007).

Every circuit court that has considered the issue has held that SROs are absolutely immune "from suit for conduct falling within the scope of [their] regulatory and general oversight functions." *See, e.g.*, *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001), *cert. denied*, 534 U.S. 1066 (2001); *see also In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) ("When an SRO acts under the aegis of the Exchange Act's delegated authority it is absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC."); *Weissman v. NASD, Inc.*, 500 F.3d 1293, 1296 (11th Cir. 2007) ("Because they perform a variety of vital governmental functions, but lack the sovereign immunity that government agencies enjoy, SROs are protected by absolute immunity when they perform their statutorily delegated adjudicatory, regulatory, and prosecutorial functions."). Such protection is crucial to an SRO's ability to perform its regulatory tasks within the federal framework and is consistent with the system of cooperative regulation enacted by Congress "under which [SROs] . . . exercise a primary supervisory role subject to ultimate SEC control." *Sparta Surgical*, 159 F.3d at 1213-14.

When determining an SRO's entitlement to immunity, courts examine the nature of the function performed and not "an SRO's subjective intent or motivation." *Weissman*, 500 F.3d at 1297; *see also Sparta Surgical*, 159 F.3d at 1214; *Gallagher v. FINRA, Inc.*, 2022 U.S. App. LEXIS 15309, *4 (11th Cir. June 3, 2022) (courts examine the nature and function of the alleged misconduct to determine if immunity applies); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 96 (2d Cir. 2007) (courts look to the nature of the function performed to determine whether immunity applies to an SRO's conduct); *Empire Fin.*, 2009 U.S. Dist. LEXIS at *19 ("[Regulatory] immunity

14

applies regardless of FINRA's alleged motives, and despite [plaintiff's] disagreement with how FINRA carried out this function.").

Here, all of Rolo's claims against FINRA arise from its regulatory activities. Specifically, Rolo asserts that the trading halt FINRA imposed on December 9, 2022, is "[c]entral to this case." FAC ¶ 121; *see also* Ex. E, Trading Halt. In addition, Rolo asserts that FINRA's announcement of Meta's corporate action to cancel MMTLP shares and replace them with shares of Next Bridge involved "procedural irregularities" that "raised concerns about [FINRA's] compliance with FINRA Rule 6490." FAC ¶¶ 51, 52, 55. Rolo acknowledges that FINRA has "broad regulatory powers to oversee market activities and address irregularities," including the "authority to impose trading halts." FAC ¶ 52. But, according to Rolo, the "systemic failures within the U.S. financial markets" that he purports to redress are "rooted in regulatory negligence." *Id.*, at ¶ 136. The FAC, however, relies on vague and conclusory allegations that FINRA abdicated its regulatory responsibilities by failing to, among other things, take action to address alleged failures to deliver, synthetic share creation, naked short selling, and market manipulation. *See, e.g., id.*, ¶¶ 33, 38, 90, 122, 135, 150, 162. Rolo repeatedly alleges that FINRA failed to perform its regulatory functions. *See id.*, ¶¶ 1(e), 3, 4, 7, 68, 82, 123 (discussing "***regulatory failures***"); ¶¶ 39, 42, 48, 130 (discussing "***regulatory lapses***"); ¶¶ 1, 121, 132, 134 (discussing "***regulatory negligence***"), ¶¶ 138, 161 (discussing "***regulatory deficiencies***"); ¶ 64 (discussing "***regulatory missteps***")(emphasis added).

While vaguely alleged and wholly unsupported, all of Rolo's factual allegations against FINRA are based exclusively on FINRA's regulatory activities. *See, e.g.,* FAC ¶ 58 (discussing FINRA's alleged disregard for "the high standards of commercial honor and equitable principles required of FINRA in its ***regulatory capacity***")). As a result, FINRA is immune from suit. *See, e.g., In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 986 F. Supp. 2d 428, 454 (S.D.N.Y. 2013) (dismissing claim against an SRO alleging its decision not to halt trading of a security was negligent

on regulatory immunity grounds because "[t]he capacity to suspend trading . . . is a quintessentially regulatory function."); *Tawil v. FINRA*, 2023 U.S. Dist. LEXIS 117247, *2-3 (N.D. Fla. May 24, 2024) ("Suspending trading – when warranted – is precisely the kind of activity FINRA can undertake in its quasi-regulatory capacity."); *Opulent Fund, L.P. v, Nasdaq Stock Mkt., Inc.*, 2007 U.S. Dist. LEXIS 79260, *13 (N.D. Cal. Oct. 12, 2007) (identifying suspension of trading as regulatory in nature).[18]

This remains true despite Rolo's contention that FINRA incorrectly applied its own rules when it decided to suspend trading of MMTLP. *See, e.g., Pee Pee Pop Trust v. FINRA*, 2019 U.S. Dist. LEXIS 165024, *11-12 (D. Nev. Sept. 26, 2019) (dismissing complaint alleging FINRA's violation of its own rules in its application of them on grounds of regulatory immunity); *In re NYSE Specialists Secs. Litig.*, 503 F.3d at 99 (dismissing claims that SRO "violated its own internal rules" because the "enforcement (or nonenforcement) of these rules clearly implicates the quasi-governmental functions" for which an SRO is entitled to absolute immunity); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 637 F.3d 112, 116 (2d Cir. 2011) (FINRA's enforcement and regulatory decisions constitute regulatory functions for which FINRA is immune from suit).

Put simply, the allegations in the FAC are direct challenges to FINRA's performance of its regulatory functions. No matter how Rolo packages his claims, they are, by Rolo's own words, challenges to FINRA's role as a regulator of the national securities markets. Accordingly, all claims against FINRA in the FAC should be dismissed with prejudice.

---

[18] Rolo contends that regulatory immunity does not attach to FINRA's actions because SROs lose regulatory immunity where they "exceed their statutory authority or fail to comply with their own rules," citing to *Credit Suisse Securities (USA) LLC v. Simmonds*, 566 U.S. 221 (2012). FAC, ¶ 107. But *Credit Suisse Securities* was about whether a Section 16(b) claim brought against a corporate insider was timely under the Exchange Act. *See id.*, at 222-223. It has absolutely nothing to do with SROs, their statutory authority, or immunity (regulatory or otherwise).

16

**D.    Rolo's Lack of a Private Right of Action Bars the FAC.**

Neither the Exchange Act nor any other statute or common law principle provides for a private right of action against an SRO, like FINRA, for acts or omissions in connection with its duties as a regulator. Thus, in addition to being barred by regulatory immunity, Rolo's claims against FINRA fail for the independent reason that Rolo has no private right of action against FINRA arising under the Exchange Act, the Bank Secrecy Act, or otherwise.

**1.    No Private Right of Action Under the Exchange Act.**

The FAC purports to assert four causes of action against FINRA arising out of FINRA's alleged acts or omissions under the Exchange Act. *See generally* FAC.[19] Courts routinely hold that no private right of action exists against an SRO, like FINRA, for its regulatory acts, omissions, or alleged violations of its own rules. *See, e.g., See In re: Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d at 114 ("By specifically adopting an appeals process which does not provide monetary relief, Congress has displaced claims for relief based on state common law."); *MM&S Financial, Inc. v. NASD*, 364 F.3d 908, 911-12 (8th Cir. 2004) ("[T]he Exchange Act does not create a private right of action against NASD defendants for violating their own rules" and a party's attempt to bypass the absence of a private right of action by asserting a claim under state contract law is "fruitless."); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 208 (2d Cir. 1999) ("[T]here is no private right of action available under the Securities Exchange Act . . . to challenge an exchange's failure to follow its own rules."), *cert. denied,* 531 U.S. 1069 (2001); *Sparta Surgical*, 159 F.3d at 1213 ("a party has no private right of action against an exchange for violating its own rules or for actions taken to perform its self-regulatory duties under the" Exchange Act); *Feins v.*

---

[19] Specifically, Count I (Violation of Exchange Act of 1934), Count VI (Negligence in Regulatory Oversight Under the Exchange Act), Count VII (Breach of Fair Representation and Accountability under the Exchange Act), and Count VIII (Control Person Liability Under Section 20(a) of the Exchange Act).

*AMEX*, 81 F.3d 1215, 1223-34 fn. 6 (2d Cir. 1996) (no private right of action exists against an SRO under Section 19 of the Exchange Act); *Spicer v. Chicago Bd. of Options Exch., Inc.*, 977 F.2d 255, 259-60 (7th Cir. 1992) (no private right of action exists under the Exchange Act against an SRO for failing to enforce its rules); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980) (finding no private right of action for violations of stock association rules). Here, the claims asserted by Rolo all allege that FINRA violated specific provisions of the Exchange Act while performing its regulatory functions. Thus, Counts I, VI, VII, and VIII are barred because Rolo has no private right of action to assert any of those claims, and those counts should be dismissed with prejudice.[20]

### 2.    No Private Right of Action Exists Under Criminal Law.

While Rolo does not specifically assert a cause of action for money laundering or other alleged criminal acts, Rolo does allege that FINRA violated "anti-money laundering obligations" and requests declaratory and injunctive relief concerning all Defendants' alleged "criminal activities." FAC ¶ 147, Action for Declaratory Judgment and Injunctive Relief #3. Private citizens, however, lack standing to prosecute violations of criminal law. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (noting that "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *see also Nersoyan v. Cty. Of L.A.*, 2020 U.S. Dist. LEXIS 184492 at *11-12 (C.D. Cal. July 7, 2020) ("[M]oney laundering constitutes a criminal cause of action that cannot be asserted by a civil plaintiff."). The decision to investigate or prosecute alleged violations of a criminal statute is left exclusively to the discretion of authorized prosecutors. *See, e.g., United States v. Armstrong*, 517 U.S. 456, 464 (1996)

---

[20] To the extent that Rolo contends he is asserting a stand-alone common law negligence claim, such a claim is barred because it cannot be based on any alleged duties arising under the Exchange Act. *See Lowee v. Nat'l Ass'n of Sec. Dealers, Inc. (In re Series 7 Brokers Qual. Exam Scoring Litig.)*, 548 F.2d 110, 113 (D.C. Ct. App. 2008) (dismissing negligence claim against FINRA, in part, because "plaintiffs cannot raise a common law complaint against [defendant SROs] based on duties arising under the Exchange Act.").

18

(private citizens do not have the power to instigate prosecutions of alleged crimes). As such, courts have found that declaratory relief cannot be predicated upon alleged violations for which a plaintiff is not the appropriate prosecuting authority. *Insight Psychology & Addiction, Inc. v. City of Costa Mesa*, 2021 U.S. Dist. LEXIS 65453, *15 (C.D. Cal. March 4, 2021).

Thus, Rolo has no private right of action to seek any relief based on alleged violations of criminal statutes.

### 3.    No Private Right of Action Under the Bank Secrecy Act.

Similarly, Rolo possesses no private right of action to assert claims against FINRA for purported violations of the BSA. *See AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004) (stating that the Bank Secrecy Act does not create a private right of action); *James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 106 (3d Cir 2006) ("[T]he Bank Secrecy Act . . . does not authorize a private cause of action . . . ."), *cert. denied*, 550 U.S. 939 (2007); *Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 326 (D. Conn. 2008) (dismissing Bank Secrecy Act claim because statute did not "appear[] to authorize a private right of action."); *Aiken v. Interglobal Mergers and Acquisitions*, 2006 U.S. Dist. LEXIS 45730, *2 (S.D.N.Y. July 5, 2006) (stating that the Bank Secrecy Act does not afford a private right of action).

Thus, Count II should be dismissed with prejudice because Rolo does not have a private right of action against FINRA under the BSA.

### E.    Rolo Cannot State a Claim for Violation of the Administrative Procedure Act.

Count III in the FAC fails to state a claim upon which relief can be granted because Rolo cannot show that FINRA is an "agency" subject to the APA. *See* 5 U.S.C. § 701(b)(1) (defining "agency" as "each authority of the Government of the United States"). Courts, and the SEC, have repeatedly recognized that the "APA does not apply to [self-regulatory organizations]." *North v.*

19

*Smarsh, Inc.*, 160 F. Supp. 3d 63, 78 (D.D.C. 2015) (rejecting federal-question jurisdiction under APA in challenge to FINRA) (citing *Matter of Frank L. Palumbo*, 52 S.E.C. 467, 475 (1995) ("We have repeatedly noted that the [APA] does not apply to self-regulatory organizations such as the NASD.")). Rejecting the application of the APA to another self-regulatory organization, the Seventh Circuit explained that the APA "applies only to an 'authority of the Government of the United States,'" not a private corporation like the "[Chicago Board Options] Exchange." *Shultz v. SEC*, 614 F.2d 561, 569 (7th Cir. 1980).  FINRA is a private company and SRO. FAC ¶ 13.

Thus, Count III should be dismissed because FINRA, as an SRO, is not an "agency" subject to the APA.

### F.    Rolo Cannot State a Claim under the Sherman or Clayton Acts.

A private individual may bring suit under federal antitrust laws pursuant to Section 4 of the Clayton Act if that individual has been "injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. Thus, as an initial matter, a plaintiff must allege an antitrust violation that can be remedied pursuant to Section 4 of the Clayton Act. No such allegations exist in the FAC.

Specifically, to state a claim under the Sherman Act, a plaintiff must state sufficient facts to establish either an agreement to restrain trade or an intent to monopolize. *See Electronics Communs. Corp. v. Toshiba Am. Consumer Prods.*, 129 F.3d 240 (2d Cir. 1997). The FAC does neither. The FAC asserts that "the Defendants' cumulative actions constitute a coordinated conspiracy to defraud investors," FAC ¶ 138, but it fails to allege any agreement among the Defendants.  Moreover, Rolo relies on unsupported assertions that FINRA purportedly has a dual role in the industry that "raises concerns about the potential for monopolistic practices." *Id.* at ¶¶ 98-100.  These allegations are woefully inadequate to state a claim under the Sherman Act.  Finally, Rolo's assertion that FINRA's

20

failure to regulate its members reduces competition, FAC ¶ 147, does not and cannot form the basis for relief under the antitrust laws. Accordingly, the FAC fails to allege sufficient facts to support an antitrust claim.

In addition, securities laws preclude application of antitrust laws where "the two are 'clearly incompatible.'" *Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264, 275 (2007). To determine whether there is "sufficient incompatibility to warrant an implication of preclusion," courts look to the following factors: "(1) the existence of regulatory authority under the securities law to supervise the activities in question; (2) evidence that the responsible regulatory entities exercise that authority;…(3) a resulting risk that the securities and antitrust laws, if both applicable, would produce conflicting guidance, requirements, duties, privileges, or standards of conduct[; and] (4) . . . the possible conflict affected practices that lie squarely within an area of financial market activity that the securities law seeks to regulate." *Id.* at 275-76 (citing *Gordon v. NYSE*, 422 U.S. 659 (1975); *U.S. v. NASD, Inc.*, 422 U.S. 694 (1975)).

Here, Rolo admits that FINRA exercises broad regulatory authority in the national securities markets. FAC ¶ 52. And as discussed above, the allegations in the FAC all relate to FINRA's regulatory activities regarding MMTLP – an equity security previously traded on the OTC market. Thus, Rolo's antitrust claim is precluded by the Exchange Act and should be dismissed.

## G.    Rolo Cannot State a Claim Under the Connecticut Unfair Trade Practices Act.

### 1.    FINRA Is Not Engaged in "Trade" or "Commerce" and is Exempt from Application of the CUTPA

Under the CUTPA, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S. § 42-110b(a).  "To successfully state a claim for a CUTPA violation, the [plaintiff] must allege that the defendant's acts occurred in the conduct of trade or commerce." *Cenatiempo v. Bank of America, N.A.*, 333 Conn.

769, 789 (2019). "Trade or commerce" is defined as "*the advertising, the sale or rent* or lease, the offering for sale or rent or lease, or the distribution *of any services and any property*, tangible or intangible, real, personal or mixed, and any other article, commodity, *or thing of value in this state.*" C.G.S. § 42-110a(4) (emphasis added); *see also Peruta v. City of Hartford*, 2012 WL 3656366, *17 (D. Conn. Aug. 24, 2012) (a city issuing a parking ticket is not trade or commerce, in part, because the city "did not advertise, sell, offer to sell, or distribute any services, property, or anything of value.").

Here, Rolo claims that all Defendants violated the CUTPA by allegedly: (1) misrepresenting or failing to disclose information regarding the tradeability of MMTLP; (2) manipulating MMTLP through price suppression, sham trades, and unauthorized trading; and (3) failing to provide transparency regarding the trading halt and alleged procedural irregularities and "unresolved short positions." FAC ¶ 167(a)-(c). Of these allegations, only the trading halt implicates FINRA's alleged conduct. Rolo does not (because he cannot) allege that FINRA engaged in advertising, selling, or attempting to sell or distribute shares of MMTLP. Rather, Rolo's allegations against FINRA relate entirely to FINRA's regulatory conduct surrounding the issuance of the trading halt. *See, e.g.*, FAC at ¶¶ 2, 58 – 61, 63, 65, 67, 70, 71, 74, 81, 91, 95, 98, 100, 136 ("At the center of this case is FINRA's arbitrary and indefinite U3 trading halt on MMTLP shares."). FINRA is authorized to engage in this regulatory conduct under the Exchange Act and FINRA Rules. FAC ¶ 13 (alleging that FINRA "is a self-regulatory organization authorized by the [SEC] to oversee and regulate broker-dealers and ensure compliance with federal securities laws.")); *see also* FINRA Rule 6440.

The regulatory conduct about which Rolo complains simply does not constitute "trade" or "commerce" under Connecticut law. Indeed, the CUTPA expressly exempts "[t]ransactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States." C.G.S. § 42-110c. This exception "is

22

broader than the [state action immunity] exception in the state antitrust act." *Garcia v. Fry*, 186 F. Supp. 3d 228, 234 (D. Conn. 2016). Accordingly, regulators operating under a statutory mandate and subject to extensive oversight are exempt from the application of CUTPA. *See, e.g., Connelly v. Housing Authority of New Haven*, 213 Conn. 354, 362 (1990) (municipal housing authority exempt from CUTPA because it "is subject to pervasive state regulation . . . and to pervasive federal regulation pursuant to the relevant provisions of the United States Housing Act of 1937, . . . and its implementing regulations in title 24 of the Code of Federal Regulations."); *City of Danbury v. Dana Inv. Corporation/Lot No. GO8065*, 249 Conn. 1, 20 (1999) (plaintiff could not bring CUTPA claim where "[t]he process by which the city assesses real estate is authorized and regulated expressly by a pervasive statutory scheme."); *Garcia*, 186 F. Supp. 3d at 234-35 (state marshals could not be subject to CUTPA claim because they are "creatures of statute . . . regulated by the State Marshal Commission."); *Tremont Public Advisors, LLC v. Materials Innovation and Recycling Authority*, 216 Conn. App. 775, 780-82 (2022) (quasi-public agency responsible for providing solid waste disposal and recycling services under state law was exempt from CUTPA because the agency's conduct was subject to a comprehensive statutory scheme).

Thus, Count XI of the FAC should be dismissed because FINRA's regulatory activities are not "trade" or "commerce," and those activities fall squarely into the express exception in the CUTPA for regulatory entities operating pursuant to statutory authority.

2.      <u>Rolo's CUTPA Claim is Barred Because it is Based on the Sale of a Security.</u>

Rolo's CUTPA claim against FINRA also fails because it is impermissibly based on alleged "deceptive practices in the purchase or sale of securities." *See Tarpon Bay Partners LLC v. Zerez Holdings Corporation*, 79 F.4th 206, 232 (2d. Cir. 2023) (citing *Russell v. Dean Witter Reynolds, Inc.*, 200 Conn. 172, 180 (1986)).  Courts applying Connecticut law have long held that a CUTPA

DMS_US.370014806.6

claim will not lie where it is based on the alleged deceptive sale of a security.  *See, e.g., Russell*, 200 Conn. at 180 (CUTPA does not "cover transactions for the purchase and sale of securities."); *Tarpon Bay Partners LLC*, 79 F.4th at 233 (affirming district court's grant of summary judgment to defendant on plaintiff's CUTPA claim, in part, because "any deceptive conduct would have been in furtherance of . . . a sale of debt for equity pursuant to [federal securities law]."); *Slainte Invs. L.P. v. Jeffrey*, 142 F. Supp. 3d 239, 251-52 (D. Conn. 2015) (investment contracts with defendant were securities and could not form the basis of a CUTPA claim).

Therefore, any claim that FINRA violated CUTPA because it participated in market manipulation or otherwise wrongfully interfered with the trading of MMTLP fails as a matter of law.  MMTLP was an equity security traded on the OTC market, FAC ¶ 38, and, as a result, any allegedly deceptive practices relating to its sale falls outside the ambit of the CUTPA.  Accordingly, Count XI in the FAC should be dismissed with prejudice.

### H.  Rolo's Constitutional Claims Fail.

1.  <u>Rolo Lacks Article III Standing to Pursue the Constitutional Claims Asserted in the FAC.</u>

Rolo lacks standing to assert claims based on any alleged constitutional violation, including "Separation of Powers Violation," "Violation of Constitutional Principles (Appointments Clause and Nondelegation Doctrine)," and procedural due process. To have such standing, Rolo must show: (i) that he "has suffered . . . a concrete and particularized 'injury in fact'; (ii) that is 'fairly traceable to the challenged action of the defendant' and (iii) that his injury is 'likely to be redressed by a favorable judicial decision.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Count IV of the FAC asserts only generalized grievances about the Appointments Clause and nondelegation doctrine. *See* FAC ¶¶ 151-52.  Without allegations of any "personal, particularized injury," Rolo cannot establish Article

III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 556 (1992) ("This Court has consistently held that a plaintiff claiming only a generally available grievance . . ., unconnected with a threatened concrete interest of his own, does not state an Article III case or controversy."); *see also Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (collecting cases). In fact, Rolo does not predicate his purported constitutional claims upon FINRA's application of any particular rule as applied to him individually. Rather, Rolo expressly states that his claim seeks, among other relief, to declare that "FINRA's structure, governance, and delegation of authority violate the United States Constitution, including the doctrines of separation of powers, the Appointments Clause, and the nondelegation doctrine" and to declare that "FINRA's imposition of the U3 trading halt on MMTLP shares constitutes an unconstitutional exercise of regulatory authority, infringing upon Plaintiff's property rights and due process guarantees." FAC ¶ 200.

Rolo is effectively challenging FINRA's existence. However, "[t]he only injury [P]laintiff[] allege[s] is that the law . . . has not been followed," which is "precisely the kind of undifferentiated, generalized grievance" that is not redressable in federal court. *See Lance v. Coffman,* 549 U.S. 437, 442 (2007) (*per curiam*).  Rolo simply cannot circumvent the constitutional bar on asserting generalized grievances by framing FINRA's very existence as a harm to him.

Challenges to a regulator's constitutional structure are not exempt from Article III's requirement that a plaintiff allege a concrete, particularized injury. As the Supreme Court has emphasized, constitutional-structure challenges remain "subject to the Article III requirements . . . applicable to all litigants." *Bond v. United States*, 564 U.S. 211, 225 (2011) (explaining that a litigant must "show actual or imminent harm that is concrete and particular" and that "[t]hese requirements must be satisfied before an individual may assert a constitutional claim"). Because the FAC does not assert a concrete, particularized injury fairly traceable to FINRA and redressable by a favorable judicial determination, Count IV fails to state a claim upon which relief can be granted.

DMS_US.370014806.6

2.    <u>FINRA is not a State Actor.</u>

Rolo's constitutional claims are further legally deficient because, to assert a constitutional violation, a plaintiff must "demonstrate 'that in denying plaintiff's constitutional rights, the defendant's conduct constituted state action.'" *D.L. Cromwell Invs., Inc. v. NASD Reg., Inc.*, 279 F.3d 155, 161 (2d Cir. 2002) (citation omitted); *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 256-57 (2d Cir. 2008) (dismissing First Amendment claims and other claims where plaintiff failed to plead state action); *Desiderio*, 191 F.3d at 206-07 (affirming dismissal of plaintiff's Fifth Amendment claim because plaintiff failed to show NASD's actions constituted state action). Courts nationwide have uniformly held that FINRA, like its predecessor the NASD and other SROs, "is a private actor, not a state actor." *Desiderio*, 191 F.3d at 206-07; *see also Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002) ("It is clear that NASD is not a state actor."); *Barbara v. New York Stock Exch.*, 99 F.3d 49, 58 (2d Cir. 1996) (same, with regard to New York Stock Exchange); *Graman v. NASD*, 1998 WL 294022, at * 3 (D.D.C. Apr. 27, 1998) ("Every court that has considered the question has concluded that NASD is not a governmental actor."); *Kim v. FINRA*, 698 F. Supp. 3d 147, 161 (D.D.C. 2023) (same); *Meyers*, 1996 WL 1742619, at *8-10 (finding that allowing the complaint to be amended would be futile because NASD's regulatory actions do not constitute state action); *Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010) ("Epstein cannot bring a constitutional due process claim against the NASD, because the NASD is a private actor, not a state actor.") (alterations and internal quotation marks omitted); *Mohlman v. FINRA*, 2020 WL 905269, at *6 (S.D. Ohio Feb. 25, 2020) ("Courts have held without exception that FINRA is a private entity and not a state actor.") (collecting cases), *aff'd*, 977 F.3d 556 (6th Cir. 2020). *See also D.L. Cromwell, Inc.*, 279 F.3d at 162; *Scher v. NASD*, 386 F. Supp. 2d 402, 407-08 (S.D.N.Y. 2005), *aff'd,* 218 Fed. Appx. 46 (2d Cir. 2007); *Weinraub v. Glen Rauch Sec., Inc.*, 399 F. Supp. 2d 454, 463 (S.D.N.Y. 2005); *Am. Benefits Grp. Inc. v. NASD*, 1999 WL 605246, at

*8 (S.D.N.Y. Aug. 10, 1999); *Dobbins v. NASD*, 2007 WL 2407081, *3 (N.D. Ohio Aug. 22, 2007);

*First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 698 (3d Cir. 1979).

Rolo relies on *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), for the proposition that FINRA's framework parallels that of the PCAOB, and therefore FINRA's conduct is subject to challenge. However, the Court *in Free Enterprise Fund* expressly invoked *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995) in distinguishing "*private* self-regulatory organizations in the securities industry" from the PCAOB, which, "[u]nlike the self-regulatory organizations," is a "*Government-created, Government-appointed entity*." 561 U.S. at 484-85 (emphasis added). The Court's contrast between "private" SROs and the PCAOB, while expressly invoking the *Lebron* factors, plainly indicates that an SRO "is *in fact* a private entity." *Lebron*, 513 U.S. at 382.

FINRA is a private entity organized as a not-for-profit corporation under Delaware law that does not receive state or federal funding. *See Meyers*, 1996 WL 1742619, at *1; *see also Desiderio*, 191 F.3d at 206. No government official serves as a FINRA employee, and the government does not appoint any FINRA employees or officers. *Id.* Because FINRA is not a state actor, Rolo's purported constitutional claims against FINRA fail as a matter of law. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991) ("[T]he conduct of private parties lies beyond the Constitution's scope in most instances.").

### 3.    Rolo Has No Basis to Challenge FINRA's Structure or Existence.

Rolo makes alternative arguments that FINRA is subject to the Article II Appointments Clause (which applies to officers of the *federal government*) and that FINRA's authority exceeds constitutional limits on the delegation of federal power to *private entities*. *See* FAC ¶¶ 4, 97, 151-52, 193, 199.  Rolo's arguments are logically inconsistent and completely unsupported.  Rolo's

Appointments Clause argument is foreclosed by the inability to establish that FINRA is part of the government under *Lebron*. *Lebron* recognized an exceptional category of nominally private companies—in that case, Amtrak—that are actually "part of the Government" for constitutional purposes because the government "create[d]" the corporation for "governmental objectives" and "retains for itself permanent authority to appoint a majority of the directors of that corporation." *Lebron*, 513 U.S. at 397, 400.

FINRA does not possess any of those characteristics: the government did not create FINRA, *see Scottsdale Cap. Advisors v. FINRA*, 678 F. Supp. 3d 88, 103 (D.D.C. 2023); the government does not appoint a single member of FINRA's board, *see* FINRA Board of Governors, *available at* https://www.finra.org/about/governance/finra-board-governors; and the government does not fund or otherwise control FINRA. *See Desiderio*, at 206-07; *Kim*, 698 F. Supp. 3d at 157-58; *see also NHBPA* v. *Black*, 107 F.4th 415, 440 (5th Cir. 2024), *pet. for cert. filed* (Oct. 16, 2024), (holding that a "private entity" is "not subject to Article II's Appointments Clause" or removal requirements and that "Lebron is the governing test to determine whether an entity is private or public").

Rolo relies on *Buckley v. Valeo*, 424 U.S. 1 (1976) and *Edmond v. United States*, 520 U.S. 651 (1997) to assert that members of FINRA's Board of Governors are "officers of the United States" subject to the Appointments Clause. *See* FAC ¶¶ 189-90. Here again, the Constitution's appointment and removal requirements apply only to government officials and to employees of nominally private companies that, under *Lebron*, 513 U.S. 374, 378 (1995), are part of the government. Rolo cannot overcome "*Lebron* ['s] . . . insuperable hurdle" for demonstrating that a "private entity qualifies as part of the government for constitutional purposes." *Black*, 107 F.4th at 434, 437-439 (rejecting Appointments Clause challenge to HISA, a private self-regulatory organization modeled on FINRA).

Because FINRA is a private company that is not part of the government under *Lebron*, its board members and employees are not "Officers of the United States" subject to presidential appointment and removal.

Likewise, Rolo's invocation of the non-delegation doctrine is misplaced. The Supreme Court has long held that Congress may give a private entity, such as FINRA, some role in a regulatory program, provided it "function[s] subordinately" to, and is under the "authority and surveillance" of, a governmental body. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940). In *Adkins*, for example, Congress did not unconstitutionally "delegate its legislative authority to the [coal] industry" in authorizing industry boards to propose regulations subject to a government agency's "approv[al]" because the agency's ultimate "authority" over those regulations meant that "law-making [was] not entrusted to the industry." *Id.* at 388, 399; *see also Currin v. Wallace*, 306 U.S. 1, 14-16 (1939) (upholding statute requiring industry members to ratify the government's regulations before they took effect); *United States v. Rock Royal Co-op.*, 307 U.S. 533, 577-78 (1939) (similar).

Because FINRA functions subordinately to the SEC, courts have determined that it does not violate the private nondelegation doctrine. *See Black*, 53 F.4th at 877 (5th Cir. 2022). "In case after case, courts have upheld this arrangement, reasoning that the SEC's ultimate control over the rules and their enforcement makes the [SROs] permissible aides and advisors." *Oklahoma v. United States*, 62 F.4th 221, 229 (6th Cir. 2023) (citing, *inter alia*, *Sorrell v. SEC*, 679 F.2d 1323, 1325-26 (9th Cir. 1982); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 697 (3d Cir. 1979); *R.H. Johnson & Co. v. SEC*, 198 F.2d 690, 695 (2d. Cir. 1952)).[21]

---

[21] In making his private nondelegation doctrine claim, Rolo attempts to rely on the D.C. Circuit's recent decision in *Alpine Securities Corporation v. Financial Industry Regulatory Authority*, 121 F.4th 1314,1325 (D.C. Cir. 2024). As the D.C. Circuit explicitly stated, that decision was "narrow and limited," to the expulsion of FINRA member firms

4.        Rolo Does Not Allege That FINRA Deprived Him of Any Property Right.

Rolo alleges the trading halt that FINRA imposed on MMTLP "constitutes a violation of investors' Fifth Amendment due process rights [thereby] depriv[ing] investors of their financial interests without adequate notice or an opportunity to seek redress." FAC ¶ 60. Rolo further claims that the trading halt "constitutes an unconstitutional taking of property under the [Fifth, Ninth, and Fourteenth Amendments]." FAC ¶ 194.

As noted above, FINRA is not a state actor. But, notwithstanding that fatal pleading defect, a plaintiff alleging that the state deprived him of his property without due process must (1) identify the property right, (2) show that the state deprived him of that right, and (3) demonstrate that the deprivation occurred without due process. *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990); *see also Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012) ("A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process."). A state actor's alleged interference with a property right does not rise to a constitutional deprivation if the property loses value as a result. *See Fusco v. Connecticut*, 815 F.2d 201, 206 (2d Cir. 1987) ("[G]overnmental action [allegedly causing a decline in property values] has never been held to 'deprive' a person of property within the meaning of the Fourteenth Amendment."); *Ramapo Homeowners' Ass'n v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 180 F. Supp. 2d 519, 526-27 (S.D.N.Y. 2002) (plaintiff homeowners' association could not allege a cognizable deprivation of property where the alleged harm was based on loss of real property value).

Here, Rolo does not identify any property interest that FINRA took from him. *See generally* FAC. Rather, Rolo alleges that the "indefinite [trading] halt deprived Plaintiff of the ability to

---

in expedited disciplinary proceedings. *Id.* at 1330. Rolo is not a FINRA member firm and is not subject to an expedited disciplinary proceeding. As such, the D.C. Circuit's *Alpine* decision does not support his claim.

control or trade MMTLP shares without due process." FAC ¶ 195. As an initial matter, the trading halt has not been indefinite. As Plaintiff admits, the halt "officially ended on December 13, 2022." FAC at ¶ 50; *see also* (Ex. E, Notice of Trading Halt).  Meta determined that it would distribute to MMTLP shareholders shares in Next Bridge Hydrocarbons and that the MMTLP shares would be cancelled by Meta on December 14, 2024. *See* Ex. F (Amendment). In other words, MMTLP was not "taken" from Plaintiff—instead, the Plaintiff became a holder of shares of Next Bridge Hydrocarbons, which Plaintiff admits he now holds. FAC ¶ 11. The FAC's reliance on loss in value of MMTLP, is insufficient to establish a deprivation of a property interest as a matter of law. This is especially true because Rolo admits he still possesses the same property interest—namely, shares in Next Bridge Hydrocarbons. Thus, any claim that FINRA deprived Rolo of a property interest fails because he has not alleged, much less established, that he was deprived of any property rights.

## IV.     <u>AMENDMENT WOULD BE FUTILE</u>

Finally, any proposed further amendment to Rolo's First Amended Complaint would be futile. First, because FINRA is not at home in Connecticut and none of FINRA's alleged conduct occurred in Connecticut or was specifically directed at it, no amendment can establish personal jurisdiction in this Court. Moreover, because FINRA's only connection to this case is its regulatory activities, as a matter of law FINRA is entitled to regulatory immunity, and Rolo cannot state a private right of action against FINRA. No amendment can cure these fatal defects. Accordingly, this Court can and should dismiss the FAC as to FINRA with prejudice. *See Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 92 (2d Cir. 2003) (affirming district court's dismissal of complaint with prejudice for failure to state a claim where amendment of the complaint would have been futile).

31

## V.    <u>CONCLUSION</u>

For the foregoing reasons, FINRA respectfully requests that the Court dismiss each Count asserted against FINRA in the FAC, with prejudice.

Dated:  March 31, 2025

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By: *John P. Mitchell*
John P. Mitchell, Esq. (admitted *pro hac vice*)
John.mitchell@faegredrinker.com
105 College Road East, Third Floor
P.O. Box 627
Princeton, New Jersey 08540

Brian M. Hayes, Esq. (ct 31801)
brian.hayes@faegredrinker.com
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

32