# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JASON ROLO,<br><br>               Plaintiff,<br><br>*v.*<br><br>SECURITIES & EXCHANGE COMMISSION, FINANCIAL INDUSTRY REGULATORY AUTHORITY, DEPOSITORY TRUST & CLEARING CORPORATION, and JOHN DOE 1-100,<br>               Defendants. | Case No. 24-cv-02053-VDO<br><br>March 31, 2025 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT BY DEFENDANT THE DEPOSITORY <u>TRUST & CLEARING CORPORATION</u>

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 3

    I.    DTCC and Its Role in the National Market System for Securities Transactions................ 3

    II.   Plaintiff's Allegations Against DTCC. .............................................................................. 5

LEGAL STANDARD............................................................................................................... 7

ARGUMENT .......................................................................................................................... 8

    I.    Plaintiff's Claims against DTCC are Barred by Absolute SRO Immunity. ...................... 8

       A.    DTCC is Absolutely Immune from Liability for the Alleged Conduct......................... 8

       B.    NSCC and DTC are SROs Which Are Immune From This Suit.................................... 8

    II.   Plaintiff Fails to State a Claim Against DTCC as a Matter of Law................................. 11

       A.    Plaintiff Fails to State a Securities Fraud Claim (Count I). ............................................ 11

       B.    There is No Private Right of Action Under the Bank Secrecy Act (Count II). ............ 14

       C.    Plaintiff Fails to State a Federal Antitrust Claim (Count V). ....................................... 14

       D.    There is No Private Right of Action Under Section 17A of the Exchange Act to Bring a Claim for Failure to Maintain Records (Count X). ............................................................. 17

       E.    Plaintiff Fails to State a Claim under the Connecticut Unfair Trade Practices Act ("CUTPA") (Count XI)........................................................................................................ 18

       F.    Plaintiff's Declaratory Judgment and Injunctive Relief Claims Fail........................... 19

    III.   The Claims in the FAC Against DTCC Should be Dismissed with Prejudice Because Further Amendment Would Be Futile. ...................................................................................... 22

CONCLUSION....................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
  57 F.4th 85 (2d Cir. 2023) .................................................................................20

*Anschutz Corp. v. Merrill Lynch & Co.*,
  690 F.3d 98 (2d Cir. 2012).................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................7, 12

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)...........................................................................12, 13

*Bancorp Int'l Grp. v. Fin. Indus. Regul. Auth.*,
  No. 3:13-CV-00170-RCJ, 2014 WL 134282 (D. Nev. Jan. 10, 2014) ...................17

*Barletta v. Quiros*,
  No. 3:22CV01110, 2023 WL 2687285 (D. Conn. Mar. 29, 2023).........................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................7

*Callahan v. City of New Haven Bd. of Educ.*,
  No. 3:17-CV-00617 (JAM), 2017 WL 11590986 (D. Conn. Nov. 7, 2017) ............7

*Cashmore v. FINRA*,
  No. 18-CV-1198S, 2020 WL 6566302 (W.D.N.Y. Nov. 9, 2020).........................19

*Cato v. United States*,
  70 F.3d 1103 (9th Cir. 1995) ..............................................................................22

*CDC Techs., Inc. v. IDEXX Labs., Inc.*,
  7 F. Supp. 2d 119 (D. Conn. 1998), *aff'd*, 186 F.3d 74 (2d Cir. 1999) ................18

*Chiste v. Hotels.com L.P.*,
  756 F. Supp. 2d 382 (S.D.N.Y. 2010)..................................................................19

*City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*,
  92 F.4th 381 (2d Cir. 2024) ................................................................................12

*Cohen v. Stevanovich*,
  722 F. Supp. 2d 416 (S.D.N.Y. 2010)..................................................................13

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000)..................................................................................22

*D'Alessio v. New York Stock Exch., Inc.*,
   258 F.3d 93 (2d Cir. 2001)....................................................................................9

*Dexter v. Depository Trust & Clearing Corp.*,
   406 F. Supp. 2d 260 (S.D.N.Y. 2005), *aff'd*, 219 F. App'x 91 (2d Cir. 2007)...............5, 9, 11

*Fedorova v. Foley*,
   No. 1:22-CV-991, 2023 WL 3484430 (W.D. Mich. May 16, 2023) ................................. 21-22

*Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*,
   697 F.3d 59 (2d Cir. 2012)............................................................................... 20-21

*Granite Partners, LP v. Bear, Stearns & Co. Inc.*,
   17 F. Supp. 2d 275 (S.D.N.Y. 1988).....................................................................14

*Hanninen v. Fedoravitch*,
   583 F. Supp. 2d 322 (D. Conn. 2008).....................................................................14

*Harrington Glob. Opportunity Fund, Ltd. V. CIBC World Mkts. Corp.*,
   585 F. Supp. 3d 405 (S.D.N.Y. 2022), *reconsideration denied*, 2022 WL
   580787 (S.D.N.Y. Feb. 25, 2022) .........................................................................13

*Hill v. Curcione*,
   657 F.3d 116 (2d Cir. 2011)................................................................................22

*Hofman v. Fid. Brokerage Servs. et al., LLC*,
   2:23-cv-00881-MCS-PVC, 2023 WL 3872564 (C.D. Cal. May 8, 2023)..........................1, 10

*In re Agape Litig.*,
   681 F. Supp. 2d 352 (E.D.N.Y. 2010) ....................................................................14

*In re Jan. 2021 Short Squeeze Trading Litig.*,
   No. 21-2989-MDL, 2021 WL 5359731 (S.D. Fla. Nov. 17, 2021) .........................................1

*In re NYSE Specialists Secs. Litig.*,
   503 F.3d 89 (2d Cir. 2007)....................................................................................9

*In re Scholastic Corp. Securities Litigation*,
   252 F.3d 63 (2d Cir. 2001)..................................................................................11

*In re Series 7 Broker Qualification Exam Scoring Litig.*,
   548 F.3d 110 (D.C. Cir. 2008) ...........................................................................9, 10

*Internet L. Lib., Inc. v. Southridge Cap. Mgmt., LLC*,
   223 F. Supp. 2d 474 (S.D.N.Y. 2002).....................................................................12

iii

*Laureatus Grp., LLC v. U.S. Dep't of Treasury*,
No. CV 22-2103 (RC), 2023 WL 5929412 (D.D.C. Sept. 12, 2023) ......................................10

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005)...................................................................................................11, 13

*Mastafa v. Chevron Corp.*,
770 F.3d 170 (2d Cir. 2014)............................................................................................................7

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,
709 F.3d 129 (2d Cir. 2013)..........................................................................................................15

*MM&S Fin., Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*,
364 F.3d 908 (8th Cir. 2004) ..........................................................................................................9

*N. Am. Energy Sys., LLC v. N. Eng. Energy Mgmt., Inc.*,
269 F. Supp. 2d 12 (D. Conn. 2002)..............................................................................................18

*Ne. Bancorp Inc. v. Woolf*,
576 F. Supp. 1225 (D. Conn. 1983), *aff'd*, 742 F.2d 1439 (2d Cir. 1984).............................20

*Neitzke v. Williams*,
490 U.S. 319 (1989)........................................................................................................................22

*Obeda v. Conn. Bd. of Registration for Pro. Eng'rs & Land Surveyors*,
570 F. Supp. 1007 (D. Conn. 1983)..........................................................................................20, 21

*Park v. Fin. Indus. Regul. Auth., Inc.*,
No. 2:23-CV-69-RWS, 2023 WL 11795601 (N.D. Ga. Sept. 25, 2023)...................................1

*Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*,
545 F. Supp. 2d 845 (E.D. Ark. 2008), *aff'd*, 559 F.3d 772 (8th Cir. 2009) .........................17

*Slayton v. Am. Express Co.*,
604 F.3d 758 (2d Cir. 2010)............................................................................................................7

*Smith v. Wells Fargo Bank, N.A.*,
158 F. Supp. 3d 91 (D. Conn.), *aff'd*, 666 F. App'x 84 (2d Cir. 2016) ..................................18

*Society For Good Will To Retarded Children, Inc. v. Cuomo*,
737 F.2d 1239 (2d Cir. 1984)........................................................................................................22

*Sparta Surgical Corp. v. NASD*,
159 F.3d 1209 (9th Cir. 1998), *abrogated on other grounds, Merrill Lynch,*
*Pierce, Fenner & Smith v. Manning*, 578 U.S. 374 (2016) .................................................4, 17

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers*,
637 F.3d 112 (2d Cir. 2011) (per curiam)......................................................................................9

iv

*State of Texas v. Interstate Com. Comm'n,*
258 U.S. 158 (1922)........................................................................................................20

*State Oil Co. v. Khan,*
522 U.S. 3 (1997)............................................................................................................14

*Success Sys., Inc. v. Excentus Corp.,*
439 F. Supp. 3d 31 (D. Conn. 2020)..............................................................................16

*Swinton v. Pullen,*
No. 3:22-CV-290 (CSH), 2023 WL 2613539 (D. Conn. Mar. 23, 2023).......................19

*Tawil v. Fin. Indus. Regul. Auth., Inc.,*
4:22cv440-RH-MAF, 2023 WL 4353179 (N.D. Fla. May 24, 2023)................................1

*The Upper Deck Co., LLC v. Fed. Ins. Co.,*
358 F.3d 608 (9th Cir. 2004) .................................................................................. 19-20

*United States* v. *Grinnell Corp.,*
384 U.S. 563 (1966).......................................................................................................16

*Verizon Commc'ns Inc.* v. *Law Offs. of Curtis V. Trinko, LLP,*
540 U.S. 398 (2004).......................................................................................................16

*Volmar Distribs., Inc. v. New York Post Co.,*
825 F. Supp. 1153 (S.D.N.Y. 1993)..........................................................................16, 17

*Whistler Invs., Inc. v. Depository Trust & Clearing Corp.,*
539 F.3d 1159 (9th Cir. 2008) .........................................................................................4

**STATUTES AND FEDERAL RULES**

15 U.S.C. § 1 ..................................................................................................................14

15 U.S.C. § 2 ..................................................................................................................15

15 U.S.C. § 78j(b) ...........................................................................................................11

15 U.S.C. § 78q-1 ..................................................................................................... passim

15 U.S.C. § 78s ............................................................................................................4, 8

15 U.S.C. § 78s(b)............................................................................................................5

15 U.S.C. § 78s(g)............................................................................................................5

15 U.S.C. § 78u-4(b)(1)....................................................................................................7

28 U.S.C. § 2201(a) ........................................................................................................20

31 U.S.C. § 5311 ..................................................................................................6, 14

Conn. Gen. Stat. § 42-110b(a) ....................................................................................18

Fed. R. Civ. P. 9(b) ...................................................................................3, 7, 11, 12

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 3, 12

**ADMINISTRATIVE MATERIALS**

*In re Depository Trust Co.,*
　　Exchange Act Release No. 34-47978, 2003 WL 21288541 (June 4, 2003) .........................3, 4

*Order Granting the Fixed Income Clearing Corporation's Amended Application*
　　*for Permanent Registration as a Clearing Agency,*
　　Exchange Act Release No. 34-69838, 2013 WL 3191172 (June 24, 2013) .............................1

**OTHER AUTHORITIES**

S. Rep. No. 75, 94th Cong., 1st Sess. (1975)...................................................................4

The Depository Trust & Clearing Corporation ("DTCC")[1] respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Complaint (the "FAC") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

The FAC is an eighty-page morass of unsupported and repetitive allegations of systemic failures within the U.S. financial markets connected to a specific security (MMTLP) issued by a company called Meta Materials, Inc. ("Meta Materials"). Similar to other *pro se* lawsuits concerning the same security, Plaintiff, who claims to own shares of MMTLP, attempts to blame the entities that oversee, regulate, and support the securities market for his undefined losses allegedly arising from trades involving MMTLP, which DTCC cleared and settled, and from a regulatory trading halt imposed by the Financial Industry Regulatory Authority ("FINRA") on MMTLP in 2022.[2]

---

[1] DTCC is a private holding company and the parent company of its wholly-owned registered clearing agency subsidiaries the National Securities Clearing Corporation ("NSCC"), The Depository Trust Company ("DTC"), and the Fixed Income Clearing Corporation ("FICC"). *In re Jan. 2021 Short Squeeze Trading Litig.*, No. 21-2989-MDL, 2021 WL 5359731, at *2 n.7 (S.D. Fla. Nov. 17, 2021). DTCC itself does not process securities transactions, nor does DTCC clear or settle transactions. *Id.* Those functions are performed by NSCC, DTC, and FICC. *See id.* Although vague and conclusory, the allegations in the FAC and the claims asserted against DTCC appear to relate to NSCC's and DTC's clearance and settlement functions in the securities market. Despite the fact that Plaintiff repeatedly mentions FICC, FICC only processes transactions in U.S. Government Securities and Mortgage Backed Securities, neither of which are securities issued by Meta Materials. *See Order Granting the Fixed Income Clearing Corporation's Amended Application for Permanent Registration as a Clearing Agency*, Exchange Act Release No. 34-69838, 2013 WL 3191172, at *1-2 (June 24, 2013). Therefore, DTCC will assume any references in the FAC to DTCC were intended to be directed at NSCC and/or DTC. Accordingly, for purposes of this motion, unless context suggests otherwise, references to "DTCC" also refer to NSCC and DTC.

[2] Each of the following lawsuits against DTCC and FINRA relating to Meta Materials were dismissed with prejudice. *See Park v. Fin. Indus. Regul. Auth., Inc.*, No. 2:23-CV-69-RWS, 2023 WL 11795601, at *3-5 (N.D. Ga. Sept. 25, 2023) (dismissed with prejudice); *Hofman v. Fid. Brokerage Servs. et al., LLC*, 2:23-cv-00881-MCS-PVC, 2023 WL 3872564, at *6-8 (C.D. Cal. May 8, 2023) (dismissed with prejudice); *Tawil v. Fin. Indus. Regul. Auth., Inc.*, 4:22cv440-RH-MAF, 2023 WL 4353179, at *1-2 (N.D. Fla. May 24, 2023) (dismissed with prejudice).

Based on wholly conclusory and unsupported allegations, Plaintiff purports to assert claims against DTCC for securities fraud; violations of the Bank Secrecy Act, the Connecticut Unfair Trade Practices Act ("CUTPA"), and the Sherman and Clayton Acts; and for a "failure to maintain accurate and transparent records" under Section 17A(a)(1) of the Securities Exchange Act of 1934, as amended (the "Exchange Act").  Plaintiff also seeks certain declaratory and injunctive relief.

The Court should dismiss DTCC from this action because the claims in the FAC against DTCC (i) are barred by self-regulatory organization ("SRO") absolute immunity, and (ii) fail to state a claim.  These fatal pleading defects doom Plaintiff's claims against DTCC at the threshold and are not amenable to cure.

As a preliminary matter, DTCC has absolute immunity from this suit.  DTCC acts through its subsidiaries NSCC and DTC, which are SROs and clearing agencies registered with the U.S. Securities and Exchange Commission ("SEC") pursuant to Section 17A of the Exchange Act.  As the nation's principal central counterparty and principal central securities depository, NSCC and DTC are part of the "national system for the prompt and accurate clearance and settlement of transactions in securities" established by the SEC in accordance with the Exchange Act. Accordingly, it is well-settled law that NSCC and DTC (and by extension, DTCC) are immune from suit when they act in furtherance of their regulatory functions.  All of Plaintiff's claims against DTCC relate to NSCC's and DTC's regulatory clearance and settlement functions and are therefore barred by SRO immunity.

Putting aside absolute immunity, each of Plaintiff's claims against DTCC also fail as a matter of law.  While the FAC is rife with conclusory allegations that DTCC failed to address "trading irregularities" and "settlement failures" relating to MMTLP, it is devoid of any factual allegations of the actions taken – or not taken – by DTCC or the impact of any such actions or

inaction on Plaintiff. The absence of supporting factual allegations dooms each of Plaintiff's claims against DTCC. Additionally, Plaintiff's securities fraud claim fails because it lacks the sufficient particularity required by Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act (PSLRA), there is no private right of action under the Bank Secrecy Act or under Section 17A(a)(1) of the Exchange Act, and Plaintiff's claims for declaratory and injunctive relief are legally baseless. Because these defects cannot be cured, DTCC respectfully requests the Court dismiss the FAC as against DTCC with prejudice.

## BACKGROUND

### I.   DTCC and Its Role in the National Market System for Securities Transactions.[3]

In 1975, Congress added Section 17A to the Exchange Act to "facilitate the establishment of a national system for the prompt and accurate clearance and settlement of transactions in securities." 15 U.S.C. § 78q-1(a)(2)(A)(i); *see In re Depository Trust Co*., Exchange Act Release No. 34-47978, 2003 WL 21288541, at *6 (June 4, 2003).

To implement congressional policy, Congress vested the SEC with the authority and responsibility to regulate, coordinate, and direct the operations of all persons involved in processing securities transactions. 15 U.S.C. § 78q-1(a)(2)(A)(i); *In re Depository Trust Co*., Exchange Act Release No. 34-47978 at *6. Congress expressly envisioned that the SEC's authority would extend to every facet of the securities handling process, including activities by clearing agencies, depositories, corporate issuers, and transfer agents, each of which plays a different role in the national market system for securities transactions. *In re Depository Trust Co*.,

---

[3] In deciding a motion to dismiss under Rule 12(b)(6), courts may consider documents incorporated into the complaint by reference, and matters of which a court may take judicial notice, which include its own records and other "relevant matters of public record." *Barletta v. Quiros*, No. 3:22CV01110 (SALM), 2023 WL 2687285, at *2 (D. Conn. Mar. 29, 2023) (citation omitted).

Exchange Act Release No. 34-47978 at *6, n.48 (citing S. Rep. No. 75, 94th Cong., 1st Sess. at 55 (1975)).

DTCC, a holding company, acts through its subsidiaries, including NSCC and DTC.  DTC is the nation's "principal securities depository" and "operates an automated, centralized system for book-entry transfers of securities positions among its participants, the beneficial owners of the securities, in accordance with their instructions."  *Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159, 1163 (9th Cir. 2008).  NSCC provides central counterparty clearance and settlement services, guaranteeing payment and delivery of securities between its members for virtually all transactions in equities and other types of securities in the United States.  *Id.*  Together NSCC and DTC facilitate the payment and delivery of cash and securities to sellers and buyers for the vast majority of securities transactions in the U.S. market involving equities, corporate and municipal debt, money market instruments, American depositary receipts, and exchange-traded funds.

NSCC and DTC are registered clearing agencies and SROs under Sections 17A(b) and 19 of the Exchange Act.  15 U.S.C. §§ 78q-1(b), 78s.  As such, NSCC and DTC "are intended to be subject to the SEC's control and have no governmentally derived authority to act independently of SEC oversight."  *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213-14 (9th Cir. 1998), *abrogated on other grounds, Merrill Lynch, Pierce, Fenner & Smith v. Manning*, 578 U.S. 374 (2016) (citation omitted).

The SEC was vested with the authority to register clearing agencies, which includes the evaluation of clearing agencies' capabilities and rules.  15 U.S.C. § 78q-1(b)(3).  As SROs and registered clearing agencies, NSCC and DTC are required to adopt rules that promote the goal of a national system for the prompt and accurate clearance and settlement of securities transactions.

*Dexter v. Depository Trust & Clearing Corp.*, 406 F. Supp. 2d 260, 264 (S.D.N.Y. 2005), *aff'd*, 219 F. App'x 91 (2d Cir. 2007) ("Under [15 U.S.C. § 78q-1(a)(1)(A)(i)], clearing agencies are required to adopt rules, subject to SEC approval, to further these goals."); 15 U.S.C. § 78q-1(b)(3)(F). NSCC and DTC are also required to submit their rule proposals for SEC review and public notice and comment, and proposed rules must receive SEC approval before going into effect. *See* 15 U.S.C. § 78s(b)(1)–(3). The Exchange Act requires that NSCC and DTC comply with their own SEC-approved rules. 15 U.S.C. § 78s(g)(1)(C).

## II.    Plaintiff's Allegations Against DTCC.

The FAC centers around alleged "trading irregularities, governance failures, and statutory breaches associated with [MMTLP]," and a corporate action to distribute the common stock of Next Bridge Hydrocarbons, Inc. ("Next Bridge") to holders of MMTLP, and FINRA's regulatory trading halt on MMTLP prior to the corporate action. FAC ¶¶ 1-2. Plaintiff alleges that he is a small business owner and shareholder of Next Bridge and Meta Materials, but does not allege how many shares he owned, when he purchased them, or how the alleged conduct impacted his shares. *See* FAC ¶ 11.

Plaintiff's claims against DTCC stem from DTCC's alleged "critical responsibilities of clearing and settling trades" involving MMTLP and other Meta Materials related securities. *See* FAC ¶¶ 85, 105. Plaintiff's few allegations that mention DTCC focus on its alleged failure to address (or coordinate effectively with other regulatory bodies to address) "unresolved failures-to-deliver (FTDs)," "settlement discrepancies," "synthetic shares," and "naked short selling" involving MMTLP. *See, e.g.*, FAC ¶¶ 26, 43, 85, 105, 140, 173. However, the FAC does not identify any specific supposed instances of "FTDs," "settlement discrepancies," "naked short

sales" or "synthetic share creation," nor does it allege how DTCC failed to address these "irregularities" or how this purported failure impacted Plaintiff.[4]

Nevertheless, Plaintiff asserts eleven unsupported and wide-ranging claims against Defendants, five of which he asserts against DTCC: violation of the Exchange Act's regulations prohibiting securities fraud (Count I), violation of the Bank Secrecy Act (Count II), violation of Sherman and Clayton Acts (Count V), "Failure to Maintain Accurate Records under Section 17A(a)(1) [of the Exchange Act]" (Count X), and violation of CUTPA (Count XI). FAC ¶¶ 145-170.[5]

Plaintiff then tacks on claims for declaratory and injunctive relief against all Defendants, including DTCC, many of which go far beyond the allegations and parties involved in this case, including: declaring the PSLRA unconstitutional; declaring that Defendants' actions violated federal securities laws, the Sherman and Clayton Acts, and "fiduciary duties"; requesting that the Court order a "[c]omprehensive [m]arket [a]udit"; and requesting the Court order the Department of Justice ("DOJ") to conduct a "full-scale investigation into all Defendants for violations of

---

[4] At best, Plaintiff speculates that between October 1, 2022 and December 8, 2022 certain market conditions "*suggest[ed]*" the presence of synthetic shares or naked short selling. FAC ¶ 50 (emphasis added). Plaintiff also contends, without any basis, that "[e]vidence *suggests* that GTS Securities, in coordination with other market participants, engaged in naked short selling of TRCH stock during the first half of 2021." *Id.* ¶ 22 (emphasis added). However, the FAC does not say how, if at all, these allegations concern DTCC or the Plaintiff.

[5] On page 63 of the FAC, Plaintiff identifies Counts VI, VII, and IX in a list of claims against DTCC. However, the Counts themselves do not mention DTCC. Count VI is directed explicitly at the SEC and FINRA and their alleged failure to address "clear evidence of manipulation." FAC ¶ 155. To the extent Plaintiff intended to direct this claim at DTCC as well, it should be dismissed for the same reasons discussed in Sections I, II.A, and II.D (immunity, no private right of action, and failure to state a claim for market manipulation). Count VII is directed explicitly at FINRA and FINRA's alleged breach of its obligations under the Exchange Act. *Id.* ¶¶ 157-59. Therefore, it is inapplicable to DTCC. Count IX is directed at "broker-dealers" and therefore is inapplicable to DTCC, as neither DTCC nor any of its subsidiaries are broker-dealers. *See id.* ¶¶ 162-63.

federal securities laws, AMLA [the "Anti-Money Laundering Act"], and other statutory and regulatory obligations." *Id.* ¶¶ 184, 210, 216.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (internal quotations and citation omitted). Rather, there must be "well-pleaded factual allegations." *Iqbal*, 556 U.S. at 679. And the well-pleaded facts must make out a plausible claim.

"Although courts are obliged to interpret a *pro se* complaint liberally, even a *pro se* complaint must include sufficient factual allegations to meet the standard of facial plausibility." *Callahan v. City of New Haven Bd. of Educ.*, No. 3:17-CV-00617 (JAM), 2017 WL 11590986, at *1 (D. Conn. Nov. 7, 2017).

Plaintiff's securities fraud claim (Count I) is subject to heightened pleading requirements pursuant to Rule 9(b), which requires a plaintiff to "stat[e] with particularity the circumstances constituting fraud," and the PSLRA, *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010). Under the PSLRA, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In addition, the complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A).

7

**ARGUMENT**

I.  **Plaintiff's Claims against DTCC are Barred by Absolute SRO Immunity.[6]**

>    A.  *DTCC is Absolutely Immune from Liability for the Alleged Conduct.*

As a preliminary matter, the FAC is devoid of any specific allegations of conduct undertaken by DTCC, and the few allegations that mention DTCC vaguely refer to conduct, or the lack thereof, arising not from DTCC but from NSCC's and DTC's discharge of their clearance and settlement duties pursuant to the Exchange Act's delegated authority as registered clearing agencies. As SROs, NSCC and DTC are immune from suit for conduct arising from their statutory duties. DTCC, a holding company, is alleged to have engaged in actionable conduct only through its purported control over NSCC and DTC, and is therefore independently immune from suit under well-established law.

>    B.  *NSCC and DTC are SROs Which Are Immune From This Suit.*

NSCC's and DTC's status as registered clearing agencies and SROs derives from Sections 17A(b) and 19 of the Exchange Act. 15 U.S.C. § 78q-1(a)(1)(D) (laying the groundwork for "the development of uniform standards and procedures for clearance and settlement" of securities transactions); *id* § 78s (establishing the framework for the SEC to oversee and regulate SROs, including registered clearing agencies); *id* § 78c(a)(26) ("The term 'self-regulatory organization' means any . . . registered clearing agency . . . ."").

Congress's goal of uniform standards and procedures would be impossible to maintain if registered clearing agencies like NSCC and DTC could be held liable for performing their

---

[6] As previously noted, DTCC itself does not process, clear, or settle securities transactions (as it is a holding company). *See supra* n.1. Therefore, DTCC is interpreting any references in the FAC to DTCC to be directed at NSCC and/or DTC. *Id.* To the extent Plaintiff intended to levy its allegations directly against NSCC and DTC, those claims are barred for the reasons discussed below.

regulatory functions as approved by the SEC. NSCC and DTC play a critical role in the coordinated national system for the prompt, accurate, and efficient clearance and settlement of transactions in securities throughout the United States. To allow NSCC's and DTC's clearing agency activities pursuant to its SEC-approved rules and procedures to be challenged by private lawsuits would cause significant disruption to that system.

SRO immunity is well-settled law in the Second Circuit and beyond: "[t]here is no question that an SRO and its officers are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities" and that "[t]his immunity extends both to affirmative acts as well as to an SRO's omissions or failure to act." *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers*, 637 F.3d 112, 115 (2d Cir. 2011) (per curiam). "When an SRO acts under the aegis of [this] delegated authority, it is absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC." *In re Series 7 Broker Qualification Exam Scoring Litig*., 548 F.3d 110, 114 (D.C. Cir. 2008); *see also D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001) (finding SROs entitled to immunity "from suit for conduct falling within the scope of [their] regulatory and general oversight functions"); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 98 (2d Cir. 2007) (immunity applies to SROs where "specific acts and forbearances were incident to the exercise of regulatory power"); *MM&S Fin., Inc. v. Nat'l Ass'n of Secs. Dealers, Inc*., 364 F.3d 908, 912 (8th Cir. 2004) (holding that the Exchange Act does not create a common law right of action against an SRO).

In particular, federal courts have found that DTCC and its registered clearing agency subsidiaries enjoy immunity from suit for exercising their authority under the Exchange Act. *Dexter*, 406 F. Supp. 2d at 264 (granting motion to dismiss claims against DTCC on immunity

grounds); *Hofman v. Fid. Brokerage Servs., LLC*, No. 2:23-CV-00881-MCS-PVC, 2023 WL 3872564, at *6 (C.D. Cal. May 8, 2023), *appeal dismissed*, No. 23-55494, 2023 WL 8447277 (9th Cir. Oct. 27, 2023) (dismissing claims without leave to amend against DTCC on immunity grounds); *Laureatus Grp., LLC v. U.S. Dep't of Treasury*, No. CV 22-2103 (RC), 2023 WL 5929412, at *7 (D.D.C. Sept. 12, 2023) (same for claims against DTCC and its subsidiary DTC).

Absent such immunity, SROs would not be able to exercise their powers under the Exchange Act without the fear that discretionary decisions may trigger endless litigation by anyone who disagreed with their decisions.

Here, the FAC alleges that DTCC was responsible for overseeing the "clearing and settlement of trades involving TRCH, MMAT, and MMTLP shares" and in that context failed to address "recurring settlement discrepancies, including those involving synthetic shares" and "naked short sales" leading up to and following FINRA's imposition of the trading halt, which purportedly caused retail investors to suffer significant financial harm. FAC ¶¶ 35, 85, 105, 106, 173.

The clearance and settlement of securities transactions is conduct by NSCC and DTC arising directly from the discharge of their duties under 15 U.S.C. § 78q-1 and the clearing agencies' SEC-approved rules. As such, the actions from which the harm purportedly stemmed, were actions NSCC and DTC took pursuant to their delegated authority under the Exchange Act, and NSCC and DTC are "absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC." *In re Series 7*, 548 F.3d at 114. *See also Hofman*, 2023 WL 3872564, at *7.[7]

---

[7] To the extent Plaintiff's claims rest on the premise that DTCC caused Plaintiff harm by no longer accepting trades in MMTLP shares due to the trading halt issued by FINRA, such claims fail because FINRA, as an SRO, is itself entitled to immunity from suit for its regulatory decisions. It therefore follows that DTCC cannot be held liable for acting in accordance with the trading halt. *See Hofman*, 2023 WL 3872564, at *7

## II.    Plaintiff Fails to State a Claim Against DTCC as a Matter of Law.

Even though the claims against DTCC should be dismissed with prejudice because DTCC is entitled to absolute immunity, Plaintiff has also failed to state a claim against DTCC under any of the Counts asserted against it.

### A.    *Plaintiff Fails to State a Securities Fraud Claim (Count I).*

Plaintiff's claim that DTCC violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b–5 should be dismissed because the FAC fails to allege any facts that support this claim, let alone facts with the required specificity to meet the heightened pleading requirements set forth in Rule 9(b) and the PSLRA. *See Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012) (citation omitted) ("The PSLRA expanded on the Rule 9(b) standard, requiring that 'securities fraud complaints specify each misleading statement; that they set forth the facts on which [a] belief that a statement is misleading was formed; and that they state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'").

To state a claim for relief under Section 10(b) and Rule 10b–5, a plaintiff must allege that the defendant "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (citation omitted). *See also In re Scholastic Corp. Securities*

─────────────────

("facilitating securities transactions and trading halts are exercises of quasi-governmental regulatory authority under the Exchange Act, so DTCC is entitled to absolute immunity from liability for the complained-of conduct"). Indeed, FINRA's regulatory decisions "would be meaningless unless a clearing agency such as [DTCC] carried out its directives." *Dexter*, 406 F. Supp. 2d at 264. "It would be illogical to clothe the NASD [FINRA's predecessor] with absolute immunity for its regulatory decisions, and then to impose liability on a clearing agent that simply carried out its functions in obedience to, and in express reliance on, those decisions." *Id.*

*Litigation,* 252 F.3d 63, 69–70 (2d Cir. 2001) ("[t]he complaint must identify the statements plaintiff asserts were fraudulent and why, in plaintiff's view, they were fraudulent, specifying who made them, and where and when they were made.").

Plaintiff's securities fraud claim for material misstatements or omissions fails at the outset, as the FAC does not contain any allegations of misstatements or omissions made by DTCC, not to mention the who, what, or where of any such statements or omissions. Instead, Plaintiff alleges that "Defendants, including the SEC, FINRA, DTCC, and John Doe Market Participants . . . disseminat[ed] . . . misleading information." FAC ¶ 145. Such naked assertions devoid of a factual basis do not meet the plausibility standard under Rule 12(b)(6), let alone the heightened standard under Rule 9(b) and the PSLRA. *See City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 390 (2d Cir. 2024) ("[p]laintiffs cannot rely on . . . 'naked assertions' absent 'further factual enhancement'") (quoting *Iqbal*, 556 U.S. at 678).

To the extent Plaintiff also seeks to bring a claim for market manipulation under Section 10(b), he must allege: (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). A manipulation claim must specify "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *Internet L. Lib., Inc. v. Southridge Cap. Mgmt., LLC*, 223 F. Supp. 2d 474, 486 (S.D.N.Y. 2002).

Plaintiff's manipulation claim also fails at the outset because the FAC does not specify what manipulative acts DTCC allegedly performed. Plaintiff's claim appears to be based on vague

allegations that DTCC neglected to address, facilitated, or failed to stop "manipulation tied to MMTLP shares," "synthetic share creation" and "naked short selling."[8]  *See* FAC ¶¶ 43, 85, 105, 140, 144, 173.  However, the FAC does not contain any specific details as to the time, place, person, or actions taken by DTCC that might support these allegations.

Indeed, courts have held that conclusory claims of naked short selling fail to state a claim for securities fraud manipulation.  *Harrington*, 585 F. Supp. 3d at 422 (rejecting as conclusory claims of naked short selling "[w]ithout any specific factual allegation that any Defendant failed to deliver shares following a short sale"); *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 425 (S.D.N.Y. 2010) (citation omitted) (holding that a "general allegation that naked short selling resulted in the creation of 'phantom shares'" is insufficient).

Moreover, Plaintiff fails to allege any facts showing the requisite scienter, reliance, and proximate cause for his misstatement and manipulation claims against DTCC.  To satisfy the scienter requirement, Plaintiff must allege facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness.  *ATSI Commc'ns*, 493 F.3d at 99.  Plaintiff does neither.  To satisfy the reliance and proximate cause requirements, Plaintiff must allege "transaction causation" by pleading that "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction," and "loss causation" by pleading a "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell*, 396 F.3d at 172 (citations omitted).  Plaintiff's non-specific claim that "Defendants'

---

[8] Contrary to Plaintiff's allegations, "short selling" (even "naked short selling") is not, by itself, manipulative or illegal.  *See Harrington Glob. Opportunity Fund, Ltd. V. CIBC World Mkts. Corp.*, 585 F. Supp. 3d 405, 422 (S.D.N.Y. 2022), *reconsideration denied*, 2022 WL 580787 (S.D.N.Y. Feb. 25, 2022) (citation omitted) ("short selling – even in high volumes – is not, by itself, manipulative.").

actions materially distorted the market for MMTLP shares, suppressed their true value, and caused significant financial harm to retail investors" is entirely insufficient to establish the requisite transaction or loss causation for Section 10(b) and Rule 10b-5 claims.  *See* FAC ¶ 146.

For the foregoing reasons Plaintiff's conclusory fraud allegations against DTCC are legally insufficient and should be dismissed with prejudice.

## B. *There is No Private Right of Action Under the Bank Secrecy Act (Count II).*

Plaintiff's claim under the Bank Secrecy Act, 31 U.S.C. § 5311 et seq., should be dismissed with prejudice for the simple reason that the Bank Secrecy Act does not authorize a private right action.  *Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 326–27 (D. Conn. 2008) (dismissing claims under Bank Secrecy Act because it does not authorize private right of action); *In re Agape Litig.*, 681 F. Supp. 2d 352, 360–61 (E.D.N.Y. 2010) ("because the Bank Secrecy Act does not create a private right of action, the Court can perceive no sound reason to recognize a duty of care that is predicated upon the statute's monitoring requirements").

## C. *Plaintiff Fails to State a Federal Antitrust Claim (Count V).*

Plaintiff brings an antitrust claim against DTCC under Sections 1 and 2 of the Sherman Act.  Section 1 of the Sherman Act forbids any "contract, combination . . . or conspiracy, in restraint of trade or commerce," 15 U.S.C. § 1, "by which Congress intended to prohibit 'only unreasonable restraints,'" *Watson Lab'ys, Inc.*, 101 F.4th 223, 234 (2d Cir. 2024) (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997)).  To withstand a motion to dismiss a conspiracy claim under Section 1 of the Sherman Act, a plaintiff must allege concerted action by two or more persons that unreasonably restrains interstate or foreign trade or commerce.  *See Granite Partners, LP v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275 (S.D.N.Y. 1988).   In particular, a plaintiff must allege enough facts to support an inference that a conspiracy existed, which can be done in one of two ways: (1) asserting "direct evidence that defendants entered into an agreement in

14

violation of antitrust laws," or (2) presenting "circumstantial facts supporting the *inference* that a conspiracy existed."  *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013) (emphasis in original).

Plaintiff's Section 1 conspiracy claim against DTCC appears to be premised on the bare, conclusory allegation that DTCC's "monopolistic control over clearing and settlement processes, combined with FINRA's dual role as regulator and operator of trading platforms, suppressed competition and distorted market dynamics."  FAC ¶ 153.  Plaintiff provides no facts, direct or circumstantial, to support his allegation of a conspiracy between DTCC and any of the other Defendants.  At most, Plaintiff alleges that on December 8, 2022, there was a phone call between DTCC and FINRA "to address unresolved issues related to the corporate action involving MMTLP shares" where "[l]egal representatives of Meta Materials and Next Bridge Hydrocarbons were excluded from this discussion, raising concerns about transparency and adherence to due process requirements under FINRA Rule 3110, which governs supervisory obligations."  FAC ¶ 54. Nowhere does Plaintiff allege that an agreement was reached on this phone call to violate antitrust laws, nor does Plaintiff provide any circumstantial facts supporting that inference.  As such, Plaintiff's Section 1 conspiracy claim against DTCC fails and must be dismissed with prejudice.

For similar reasons, the FAC fails to state a monopolization claim under Section 2 of the Sherman Act, which makes it an offense for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States."  15 U.S.C. § 2.  To prevail on a Section 2 claim for monopolization, a plaintiff must prove two elements: (i) "the possession of monopoly power in the relevant market" and (ii) "'the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic

accident.'" *Verizon Commc'ns Inc.* v. *Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (quoting *United States* v. *Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). "Monopoly power" under the Sherman Act is the "power to control prices or exclude competition." *See Success Sys., Inc. v. Excentus Corp.*, 439 F. Supp. 3d 31, 70 (D. Conn. 2020).

The extent of Plaintiff's allegations of "monopoly power" are the conclusory statements that DTCC "hold[s] a monopolistic position in the securities clearing and settlement industry" and that DTCC has "monopolistic control over clearing and settlement processes." FAC ¶¶ 36, 153. The FAC does not contain a single factual allegation in support thereof. As such, Plaintiff's Section 2 claim against DTCC completely lacks factual support and must be dismissed with prejudice.

Moreover, to the extent Plaintiff seeks monetary or injunctive relief under the Clayton Act for his antitrust claims, he must allege an antitrust injury. *Volmar Distribs., Inc. v. New York Post Co.*, 825 F. Supp. 1153, 1159 (S.D.N.Y. 1993). "Since the antitrust laws are intended to protect competition and not individual competitors . . . to recover under the Clayton Act private plaintiffs must demonstrate that the injuries they suffered were caused by acts that had a competition-reducing effect." *Id.* Plaintiff makes a single naked assertion that "[t]hese practices" -- the "suppress[ion of] competition and distorted market practices" -- "disproportionately harmed retail investors by inflating transaction costs, facilitating market manipulation, and creating systemic inefficiencies." FAC ¶¶ 153-54. However, Plaintiff does not allege how he was harmed. Nor does he allege any specific actions undertaken by DTCC that had a competition reducing effect, or how any such actions injured him. As a result, and in addition to the reasons discussed above, Plaintiff's antitrust claims against DTCC should be dismissed with prejudice. *Volmar*

16

*Distributors*, 825 F. Supp. at 1160-61 (dismissing antitrust claims because plaintiff's allegations of antitrust injury were "wholly conclusory" and "unsupported by any of the facts alleged").

Finally, as a policy matter, an antitrust claim premised on DTCC's clearance and settlement duties under the Exchange Act "is a direct attack on the federal scheme of providing a uniform system of settling and clearing transactions." *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 545 F. Supp. 2d 845, 852–53 (E.D. Ark. 2008), *aff'd*, 559 F.3d 772 (8th Cir. 2009) (describing and dismissing claims that DTCC, DTC, and NSCC violated Arkansas' antitrust laws). If Plaintiff prevailed on this claim, it would be impossible for DTCC to "facilitate Congress's goal of a uniform system." *Id.* at 853.  Therefore, this claim both "frustrates Congress's intent and is an impossibility." *Id.*

### D.  There is No Private Right of Action Under Section 17A of the Exchange Act to Bring a Claim for Failure to Maintain Records (Count X).

Plaintiff's claim that DTCC violated its "statutory obligation" under 15 U.S.C. § 78q-l(a)(1) by failing to maintain "accurate and transparent records" of transactions involving MMTLP shares (FAC ¶¶ 164-65) should be dismissed with prejudice because there is no private cause of action to compel or prevent actions by DTCC related to its regulatory authority.  *Sparta Surgical*, 159 F.3d at 1213 ("It is undisputed . . . that a party has no private right of action against an exchange for. . . actions taken to perform its self-regulatory duties under the [Exchange] Act."); *Bancorp Int'l Grp. v. Fin. Indus. Regul. Auth.*, No. 3:13-CV-00170-RCJ, 2014 WL 134282, at *3 (D. Nev. Jan. 10, 2014) (dismissing claims against SRO-FINRA because they "arise out of FINRA's performance of its self-regulatory duties").  In addition, Plaintiff alleges no facts to support his claim that DTCC failed to maintain accurate records of any kind.

### E.  Plaintiff Fails to State a Claim under the Connecticut Unfair Trade Practices Act ("CUTPA") (Count XI).

Plaintiff's claim against DTCC under CUTPA relies on the same deficient and conclusory allegations supporting his securities fraud (Count I) and antitrust claims (Count V).  For that reason alone, it should be dismissed.  *See N. Am. Energy Sys., LLC v. N. Eng. Energy Mgmt., Inc.*, 269 F. Supp. 2d 12, 18 (D. Conn. 2002) ("The court, having dismissed the antitrust claims, must also dismiss the CUTPA claim for failure to state a cause of action."); *CDC Techs., Inc. v. IDEXX Labs., Inc.*, 7 F. Supp. 2d 119, 132 (D. Conn. 1998), *aff'd*, 186 F.3d 74 (2d Cir. 1999) ("Claims of unfair trade practices fail if no underlying antitrust violation is found").

In addition, Plaintiff fails to plead essential elements of his CUTPA claim. To state a claim under CUTPA, Plaintiff must plead that he "(1) suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method of competition or an unfair or deceptive act in the conduct of any trade or commerce."  *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 100 (D. Conn.), *aff'd*, 666 F. App'x 84 (2d Cir. 2016); *see also* Conn. Gen. Stat. § 42-110b(a). Plaintiff attempts to satisfy the third element of his CUTPA claim by making three unsubstantiated and vague allegations.  First, that "Defendants . . . misrepresent[ed] or fail[ed] to disclose critical information about the tradability of MMTLP shares, including synthetic share creation and unresolved FTDs."  FAC ¶ 167.  However, Plaintiff does not say what information about MMTLP shares DTCC allegedly misrepresented or did not disclose.   Second, Plaintiff contends that "Defendants . . . [e]ngag[ed] in manipulative practices such as price suppression, sham trades, and unauthorized trading of non-tradable securities."  *Id.*  However, for the reasons discussed above (*supra* Section II.A), Plaintiff does not allege any facts to support allegations that DTCC engaged in manipulative practices.  Third, Plaintiff claims "Defendants. . . [f]ail[ed] to provide transparency regarding the U3 trading halt, unresolved short positions, and procedural irregularities."  FAC ¶

167.  Again, Plaintiff does not allege any non-conclusory facts that support this assertion against

DTCC.  Plaintiff also fails to allege how the alleged misrepresentation, manipulation, and lack of

transparency caused him to suffer an ascertainable loss of money or property.  As such, Plaintiff

fails to sufficiently plead the elements of his CUTPA claim against DTCC and it should be

dismissed with prejudice.

### F.  Plaintiff's Declaratory Judgment and Injunctive Relief Claims Fail.[9]

Plaintiff's claims for declaratory and injunctive relief against DTCC are legally defective

and should be dismissed with prejudice.

#### 1.  Declarations and Injunctive Relief Regarding Constitutionality and Enforcement of the PSLRA are Improper.

Plaintiff improperly seeks a declaration that the PSLRA is unconstitutional as applied in

this case and seeks an injunction prohibiting its enforcement in an effort to preempt the Court from

assessing his securities fraud claim under the PSLRA's heightened pleading standard, which for

the reasons discussed above Plaintiff fails to satisfy.  *See* FAC at 66.

Declaratory judgments and injunctions are remedies, not causes of action; they must be

supported by viable substantive causes of action.  *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382,

406–07 (S.D.N.Y. 2010) (finding plaintiffs were not entitled to a declaratory judgment or an

injunction to identify or remediate any violation of a New York statute because they did not plead

a viable claim under the statute); *Swinton v. Pullen*, No. 3:22-CV-290 (CSH), 2023 WL 2613539,

at *4 (D. Conn. Mar. 23, 2023) (finding motion for injunctive relief fatally defective because it

addressed matters outside the scope of the dispute framed in plaintiff's petition); *The Upper Deck*

---

[9] To be sure, absolute SRO immunity (*supra* Section I) also shields DTCC from Plaintiff's claims for declaratory and injunctive relief.  *See Cashmore v. FINRA*, No. 18-CV-1198S, 2020 WL 6566302, at *6 (W.D.N.Y. Nov. 9, 2020) (reviewing authorities and concluding that "[a]bsolute immunity . . . is not limited to damages claims" and covers declaratory and injunctive relief).

*Co., LLC v. Fed. Ins. Co.*, 358 F.3d 608, 615 (9th Cir. 2004) (explaining that relief must be supported by the allegations in the complaint otherwise no such relief is available). Here, Plaintiff has not alleged a cause of action concerning the PSRLA.[10] Nor could he, as he has not alleged a concrete injury fairly traceable to it. *Ne. Bancorp Inc. v. Woolf*, 576 F. Supp. 1225, 1226 (D. Conn. 1983), *aff'd*, 742 F.2d 1439 (2d Cir. 1984) (finding plaintiff did not have standing to seek declaratory judgment that provisions of Connecticut statute were unconstitutional or enjoin defendant from enforcing it because although plaintiffs alleged they would be injured by the law, they did not allege a concrete injury fairly traceable to the challenged statute).

Moreover, Plaintiff's attempt to evade a pleading standard he has not satisfied and cannot satisfy is not a situation in which declaratory relief is appropriate. The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).[11] Accordingly, a "live controversy is a prerequisite for declaratory . . . relief." *Obeda v. Conn. Bd. of Registration for Pro. Eng'rs & Land Surveyors*, 570 F. Supp. 1007, 1016 (D. Conn. 1983). This requirement furthers the DJA's goal "to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 66

---

[10] Although, in his "Prayer for Relief" Plaintiff follows his request for declaratory and injunctive relief with impermissible legal conclusions about the general constitutionality of the PSLRA, he does not bring a cause of action regarding the PSLRA's constitutionality as applied to him. *See* FAC ¶¶ 177-183.

[11] The case or controversy requirement under the DJA is identical to Article III's constitutional case or controversy requirement. *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023). Under Article III, federal courts can only rule on the validity of a statute "where rights, in themselves appropriate subjects of judicial cognizance, are being, or about to be, affected prejudicially by the application or enforcement of [the] statute." *State of Texas v. Interstate Com. Comm'n*, 258 U.S. 158, 162 (1922).

(2d Cir. 2012).  *See also Obeda*, 570 F. Supp. at 1016 (finding declaratory relief stating that a statute is unconstitutional as applied inappropriate where a plaintiff "ha[s] no dispute with the[] defendants over the statute's constitutionality," and even where a statute's constitutionality is in dispute, declaratory judgment is improper if it does not resolve any claims.).

Here, there is no "live controversy" over the application of the PSLRA's heightened pleading standard, as Plaintiff has not brought a cause of action asserting it is unconstitutional as applied to him.  Instead, Plaintiff brought a cause of action asserting Defendants engaged in securities fraud under the Exchange Act, and seemingly as an after-thought, asserts that his claim should not be subject to the PSLRA's heightened pleading standard.  As a result, Plaintiff does not seek a determination that would serve a useful purpose in clarifying and settling legal relations as there is no present controversy touching any legal relationship between DTCC and Plaintiff (none exists).

## 2. Declaratory and Injunctive Relief Regarding Criminal Conduct Are Improper.

Plaintiff also improperly seeks an order that the DOJ conduct a "full-scale investigation" into all Defendants, a declaration that the Defendants' actions, including market manipulation constitute criminal misconduct requiring federal enforcement, and an injunction compelling Defendants to release all records necessary for the DOJ's investigation.  *See* FAC at 74-75.

Like those discussed above (*supra* Section II.F.1), these claims for declaratory and injunctive relief are not supported by the allegations in the FAC and should therefore be dismissed with prejudice.  Moreover, Plaintiff's generalized and conclusory allegations that Defendants conduct "constitute[s] a pervasive pattern of criminal misconduct, regulatory failures, and statutory violations requiring immediate intervention by the [DOJ]" is entirely insufficient to establish an obligation on behalf of the DOJ to investigate or penalize.  FAC ¶ 201; *see Fedorova v. Foley*, No.

1:22-CV-991, 2023 WL 3484430, at *3 (W.D. Mich. May 16, 2023) (finding generalized allegations insufficient to establish obligation on behalf of DOJ to investigate or penalize and explaining that the "DOJ has no duty to investigate or punish allegations of wrongdoing").

Similarly, Plaintiff's request that the Court compel Defendants to release "all records necessary for the DOJ's investigation" is impermissibly vague and not tailored to any legal violations at issue. *See Society For Good Will To Retarded Children, Inc. v. Cuomo,* 737 F.2d 1239, 1251 (2d Cir. 1984) ("Injunctive relief should be narrowly tailored to fit the specific legal violations adjudged").

### III.    The Claims in the FAC Against DTCC Should be Dismissed with Prejudice Because Further Amendment Would Be Futile.

The claims in the FAC against DTCC should be dismissed with prejudice because any additional attempt to amend them would be futile. A *pro se* litigant must be given leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, "[w]here a proposed amendment would be futile, leave to amend need not be given." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011). *See also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (giving courts authority to dismiss claims based on "an indisputably meritless legal theory"). No amendment could plead around DTCC's immunity from a suit. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (affirming district court's dismissal of the plaintiff's claims with prejudice because they were barred by immunity and therefore could not be cured). Nor can amendment remedy the other fatal legal defects in Plaintiff's claims against DTCC. Plaintiff should not be permitted to keep DTCC entangled in speculative, vexatious litigation when his failure to plead factual allegations with the requisite specificity suggests that no such facts exist.

## <u>CONCLUSION</u>

For the forgoing reasons, the Court should grant DTCC's motion and dismiss Plaintiff's claims against DTCC with prejudice.


Dated: March 31, 2025                                      Respectfully submitted,

*/s/ Alfred U. Pavlis*                                      */s/ Margaret A. Dale*
Alfred U. Pavlis (ct08603)                             Margaret A. Dale (Bar No. 06257)
Eli Yampel (ct31813)                                       (*pro hac vice*)
FINN DIXON & HERLING LLP                      Amy Gordon (Bar No. 208541) (*pro*
Six Landmark Square                                        *hac vice*)
Stamford, CT 06901                                         PROSKAUER ROSE LLP
Tel: (203) 325-5000                                          Eleven Times Square New
Fax: (203) 325-5001                                         York, NY 10036
E-mail: apavlis@fdh.com                              Tel: (212) 969-3000
        eyampel@fdh.com                           Fax: (212) 969-2900
                                                                      mdale@proskauer.com
                                                                      agordon@proskauer.com


                                                                      *Counsel for Defendant The Depository Trust*
                                                                      *& Clearing Corporation*

## <u>CERTIFICATION</u>

I hereby certify that on March 31, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/s/ Alfred U. Pavlis
Alfred U. Pavlis (ct08603)
FINN DIXON & HERLING LLP
Six Landmark Square
Stamford, Connecticut 06901
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: apavlis@fdh.com