## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JASON TODD ROLO,

                              Plaintiff,

      v.

SECURITIES & EXCHANGE COMMISSION,
FINANCIAL INDUSTRY REGULATORY
AUTHORITY, DEPOSITORY TRUST &
CLEARING CORPORATION, and
JOHN DOE 1 – 100,
                              Defendants.

Case No. 3:24-cv-02053

## DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER STAYING DISCOVERY

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), by and through its undersigned counsel, submits this Memorandum of Law in Support of its Motion for a Protective Order Staying Discovery until this Court Decides FINRA's Motion to Dismiss. [ECF Nos. 46, 47]. FINRA further requests that the Court adjourn the April 4, 2025, Rule 26(f) meeting report deadline to allow for the Court to consider this motion.[1]  The other defendants also intend to seek a discovery stay pending the outcome of fully dispositive motions to dismiss they each intend to file.

Plaintiff Jason Rolo ("Plaintiff") has consented to the stay of discovery, subject to his right to file a motion in the event of any further developments that he believes would warrant vacating the stay.  Plaintiff's consent is also without prejudice to his right to later seek an extension of the

---

[1] While the Rule 26 deadlines would be encompassed by a stay of discovery, even if the Court is not inclined to grant FINRA's motion to stay, FINRA respectfully suggests that the Rule 26(f) meeting report deadline and other case management deadlines should be extended until at least 21 days after the May 15, 2025 deadline for Defendant Securities and Exchange Commission ("SEC") to respond to the First Amended Complaint.

DMS_US.370186192.4

current discovery deadline, should it become necessary. All other parties have given unconditional consent to a stay.

I.    **INTRODUCTION**

FINRA recently filed a motion to dismiss all claims that Plaintiff asserts against FINRA in the First Amended Complaint based on, among other things, (i) lack of personal jurisdiction over FINRA and (ii) FINRA's absolute immunity from claims challenging FINRA's regulatory decisions (the "Motion to Dismiss"). *See* [Motion to Dismiss, ECF No. 47, at pp. 10-16]. Now, FINRA moves this Court for a protective order staying all discovery pending this Court's decision on FINRA's Motion to Dismiss. FINRA's regulatory immunity protects it from the burdens of discovery, and there is a substantial chance that this Court does not have jurisdiction over FINRA in this action.

Plaintiff's First Amended Complaint ("Amended Complaint") purports to challenge the wisdom of FINRA's regulatory decision-making surrounding a security that traded on the over the counter ("OTC") market in 2021 and 2022. As FINRA details in its Motion to Dismiss [ECF No. 47], such allegations are barred by FINRA's regulatory immunity as a self-regulatory organization ("SRO") charged by Congress with regulating the national securities market under the SEC's supervision. And regulatory immunity extends beyond just immunity from liability—it protects regulators from the burden of conducting discovery.

Good cause also exists for the Court to stay all discovery under Rule 26(c) of the Federal Rules of Civil Procedure because (i) FINRA's Motion to Dismiss has a high likelihood of disposing of all of Plaintiff's claims against it in the Amended Complaint, (ii) the burden on FINRA should a stay not be imposed would be enormous, and (iii) the burden on Plaintiff should a stay be granted would be minimal. Further, this Court lacks personal jurisdiction over FINRA in this matter, which

provides an additional substantial basis to dismiss all of Plaintiff's claims against FINRA in the Amended Complaint.

Thus, the Court should stay all discovery until after it decides FINRA's Motion to Dismiss.[2]

## II.    **RELEVANT BACKGROUND**

Plaintiff initiated this action by filing a complaint on a December 30, 2024, which Plaintiff amended on January 14, 2025. [ECF Nos. 1, 13]. Plaintiff's Amended Complaint asserts the following nine causes of action against FINRA: Count I (Violation of the Exchange Act); Count II (Breach of Anti-Money Laundering Obligations under the Bank Secrecy Act); Count III (Violation of the Administrative Procedure Act); Count IV (Violation of the Appointments Clause and Nondelegation Doctrine); Count V (Antitrust Violations under the Clayton and Sherman Acts); Count VI (Negligence in Regulatory Oversight under the Exchange Act); Count VII (Breach of Duty of Fair Representation and Accountability under the Exchange Act); Count VIII (Control Person Liability under the Exchange Act); and Count XI (Violation of Connecticut Unfair Trade Practices Act). *See generally*, Amended Complaint ("Am. Compl.") [ECF No. 13].

---

[2] Though Plaintiff's allegations against FINRA largely center on perceived regulatory failures, he does make at least two conclusory and wholly unsupported allegations that FINRA engaged in securities fraud. *See* Am. Compl. [ECF No. 13], ¶ 145 ("Defendants, including . . . FINRA, . . . violated Section 10(b) of the [Exchange Act] and Rule 10b-5 by engaging in manipulative and deceptive practices, including synthetic share creation, naked short selling, and dissemination of misleading information."); ¶ 207 ("By engaging in market manipulation, concealing evidence, and obstructing regulatory processes, Defendants committed securities fraud and breached their fiduciary duties to uphold transparency, fairness, and investor protections."). Plaintiff also asserts causes of action under various Counts, several of which Plaintiff contends arise under the Exchange Act. *See, e.g.*, Count I (Violation of the Exchange Act); Count VI (Negligence in Regulatory Oversight under the Exchange Act); and Count VII (Breach of Duty of Fair Representation and Accountability under the Exchange Act). *See generally,* Am. Compl. [ECF No. 13].

Any discovery related to the above-referenced claims should be subject to the automatic stay provision in the Private Securities Litigation Reform Act of 1995 ("PSLRA") thereby precluding Plaintiff from engaging in any discovery related to such claims until the Court's decision on FINRA's Motion to Dismiss. *See* U.S.C. 78u-4(b)(3)(B); *see also, Gardner v. Major Auto. Cos.*, 2012 WL 1230135, at *4 (E.D.N.Y.) (noting that the automatic stay provision in the PSLRA applies where "the central claims asserted allege securities fraud and seek relief under the securities laws."); *Riggs v. Termeer*, 2003 WL 21345183, at *1 (S.D.N.Y. June 9, 2023) ("Because the central claims asserted allege securities fraud and seek relief under the securities laws, this case is subject to an automatic stay of discovery under the PSLRA pending resolution of the [pending motion to dismiss].").

Plaintiff's Amended Complaint focuses on FINRA's regulatory decision-making and, among other gripes, criticizes "FINRA's refusal to disclose Blue Sheets—critical records for tracking transactional activity," to retail investors like Plaintiff. *See* Am. Compl. ¶3; *see also, id.*, ¶ ¶6, 7, 69, 70, 96, 99, 143, 144(B.III), 172, 200(II.C), 204, 210(C) [ECF No. 13]. FINRA's examination and investigative teams can request detailed trading information from clearing firms with respect to trading of a specific security ("Electronic Blue Sheet Data"). *See* Affidavit of Sam Draddy, ("Draddy Aff."), ¶ 6, attached as Exhibit A to the Declaration of John P. Mitchell, Esq. in Support of Motion to Stay. FINRA does not make Electronic Blue Sheet Data publicly available, and it does not voluntarily disclose Electronic Blue Sheet Data to third parties except the SEC, other regulators, and law enforcement pursuant to specific regulatory or law enforcement requests. Draddy Aff., ¶ 15. Electronic Blue Sheet Data contains confidential personal, financial, and identifying information for individual and other investors, including names, social security numbers, addresses, and brokerage account numbers. Draddy Aff., ¶ 12. Thus, FINRA considers and treats Electronic Blue Sheet Data as highly sensitive and confidential and, accordingly, strictly limits access to the Electronic Blue Sheet Data to specified internal users with a regulatory purpose. Draddy Aff., ¶¶ 8, 12.

FINRA filed its Motion to Dismiss on March 31, 2025, asserting multiple defenses, including, among others, this Court's lack of personal jurisdiction over FINRA in this matter and FINRA's regulatory immunity, which bars every cause of action that Plaintiff asserts against FINRA in the Amended Complaint. [ECF Nos. 46, 47]. Co-defendant Depository Trust & Clearing Corporation ("DTCC") filed its own motion to dismiss on March 31, 2025 [ECF No. 48], and co-defendant SEC, whose response is not due until May 15, 2025, will move for complete dismissal as well.

FINRA now moves this Court for an Order staying all discovery, including the April 4, 2025 Rule 26 Meeting Report deadline, until after this Court decides FINRA's Motion to Dismiss.

## III.    ARGUMENT

FINRA asserts multiple substantial and independent bases supporting dismissal of the Amended Complaint in its Motion to Dismiss. Among them, (i) this Court's lack of personal jurisdiction over FINRA and (ii) FINRA's absolute immunity both support staying discovery in this action until after the Court decides FINRA's Motion to Dismiss. *See* [ECF No. 47, pp. 10-16].

### A.    FINRA's Regulatory Immunity Precludes Discovery.

An SRO's regulatory immunity shields it from the burdens of discovery. *See In re Facebook, Inc. IPO and Secs. and Derivative Litig.*, 986 F. Supp. 2d 428, 448 (S.D.N.Y. 2013) ("SRO immunity provides protection not only from liability, but also from the burdens of litigation, including discovery, and should be 'resolved at the earliest stage in litigation.'") (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Indeed, immunity provides protection "not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (cleaned up).  And the United States Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter*, 502 U.S. at 227 (citing *Harlow*, 457 U.S. at 818; *Davis v. Sherer*, 468 U.S. 183, 195 (1984); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Anderson v. Creighton*, 438 U.S. 635, 646 n. 6 (1978)).

Thus, immunity is a threshold issue, and discovery is inappropriate until after a court resolves a well-founded immunity defense. *See In re Facebook, Inc.*, 42 F. Supp. 3d 556, 558 (S.D.N.Y. 2014) (citing "general rule" that discovery should not proceed pending resolution of immunity considerations from *Harlow*); *see also Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir.

2018) (finding that immunity represents both a bar on liability and an "entitlement not to stand trial or face the burdens of litigation."); *NRA of Am. v. Cuomo*, 2022 U.S. Dist. LEXIS 8849, at *10-11 (N.D.N.Y. Jan. 19, 2022) ("Generally speaking, discovery should not be allowed pending the resolution of an immunity question.") (citing *Harlow v. Fitzgerald*, 457 U.S. at 818 ("Until [the] threshold immunity question is resolved, discovery should not be allowed.")).

Courts regularly stay discovery where defendants assert immunity defenses until after those defenses are decided. *See, e.g., W. Farms Assocs. v. State Traffic Comm'n of Conn.*, 1990 U.S. Dist. LEXIS 21073, at *7-8 (D. Conn. July 23, 1990) (granting motion to stay discovery pending court's decision on motion to dismiss asserting sovereign immunity defense); *Delgado v. NJ Transit Rail Operations, Inc.*, 329 F.R.D. 506, 508 (S.D.N.Y. 2019) (granting motion to stay discovery pending decision from the Third Circuit in a separate matter regarding defendant's immunity under the Federal Rail Safety Act); *see also North v. Smarsh*, 160 F. Supp. 3d 63, 87-88 (D.D.C. 2015) (granting FINRA's motion to dismiss and denying plaintiffs' request for limited discovery, in part, because "[n]o production of any documents . . . could change the fact that . . . FINRA is absolutely immune from suit.").

Here, FINRA, an SRO, filed the Motion to Dismiss, in part, because all of FINRA's alleged conduct relates directly (and explicitly) to decisions made while carrying out its regulatory duties for which FINRA is absolutely immune. *See* Am. Compl., ¶¶ 1 ("This action arises from a systemic and deliberate pattern of . . . ***regulatory negligence*** . . . ."), ¶ 3 ("FINRA's refusal to disclose Blue Sheets . . . exposes significant ***regulatory failures***."), ¶ 4 (referring to FINRA's alleged "***regulatory failures***."), ¶7 (alleging "a pervasive pattern of ***regulatory failures*** . . . have caused significant harm to retail investors."), ¶ 42 (containing allegations that "***regulatory inaction*** constituted a clear abdication of FINRA's responsibilities under Regulation SHO . . . ."), ¶ 48

(alleging that "FINRA failed to enforce the mandatory close-out provisions of Regulation SHO . . . [and that such] ***regulatory lapse*** . . . facilitat[ed] prolonged market manipulation."), ¶ 58 (alleging that the U3 trading halt FINRA placed on MMTLP "demonstrate[d] a disregard for the high standards of commercial honor and equitable principles required of FINRA in its ***regulatory capacity***."), ¶ 64 (alleging that FINRA's . . . ***regulatory missteps*** . . . contributed to market irregularities during the corporate transition."), ¶ 66 (allegations questioning "FINRA's ***regulatory decisions*** . . . ."), ¶ 91 (alleging that the U3 trading halt on MMTLP "reflects systemic deficiencies in FINRA's ***regulatory processes*** and its failure to uphold its obligations to protect investors.") (emphasis added) [ECF No. 13].

Like the parties asserting immunity defenses in the above-cited authority, FINRA has a well-founded immunity defense that would absolve it of any litigation-related burdens, including participating in discovery. Indeed, courts have specifically acknowledged that FINRA (formerly NASD) should not be subject to discovery pending a decision on FINRA's immunity defense. *See, e.g., Shah v. Nat'l Ass'n of Sec. Dealers*, 1999 WL 240342, at *4 (N.D. Ill. Apr. 9, 1999) ("Though this litigation is at the early stages, 'courts must resolve immunity defenses before trial, and when possible before discovery.'") (quoting the Seventh Circuit Court of Appeals in *Schlessinger v. Salimes*, 100 F.3d 519, 523 (7th Cir. 1996), which cited *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) and *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)); *see also North v. Smarsh*, 160 F. Supp. 3d 63, 87-88 (D.D.C. 2015) (granting FINRA's motion to dismiss and denying plaintiffs' request for limited discovery, in part, because "[n]o production of any documents . . . could change the fact that . . . FINRA is absolutely immune from suit.").

Accordingly, the Court should stay discovery pending its decision on FINRA's Motion to Dismiss.

**B.**     <u>**Good Cause Exists to Stay Discovery Pursuant to FRCP 26(c).**</u>

Even if FINRA's immunity did not insulate it from discovery burdens at this stage (it does), the Court should exercise its discretion and stay discovery pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. A court may issue a protective order under Rule 26(c) "for good cause . . . to protect a party or person from . . . undue burden or expense." Fed. R. Civ. P. 26(c); *see also ITT Corp. v. Travelers Cas. and Sur. Co.*, 2012 WL 2944357, at *2 (D. Conn. July 18, 2012) ("A request for a stay of discovery, pursuant to Rule 26(c), is committed to the sound discretion of the court based on a showing of good cause.") (cleaned up). Courts in the Second Circuit evaluate the following three factors in determining whether sufficient "good cause" exists to stay discovery pending resolution of a motion to dismiss: (i) the strength of the pending motion to dismiss; (ii) the breadth of discovery sought, and the burden imposed on the responding party; and (iii) the prejudice that would result to the non-responding party if a stay were issued. *See, e.g., ITT Corp.*, 2012 WL 2944357, at *2. Here, all three factors favor staying discovery until the Court decides FINRA's Motion to Dismiss.

The first factor weighs in favor of a stay where the pending dispositive motion presents "substantial grounds" for dismissal or otherwise "do[es] not appear to be without foundation in the law." *See ITT Corp.*, 2012 WL 2944357, at *3-4. Courts regularly stay discovery pending resolution of motions to dismiss asserting well-founded jurisdictional defenses. *See, e.g., Lu v. Cheer Holding, Inc.*, 2024 WL 1718821, at *2-3 (S.D.N.Y. Apr. 19, 2024) (staying discovery pending motion to dismiss asserting lack of personal jurisdiction defense); *Ruilova v. 443 Lexington Ave. Inc.*, 2020 WL 8920699, at *1 (S.D.N.Y. Mar. 20, 2020) (same); *Port Dock and Stone Corp. v. Oldcaster Northeast, Inc.*, 2006 WL 897996, at *1-2 (E.D.N.Y. Mar. 31, 2006) (same); *Vida Press v. Dotcom Liquidators, Ltd.*, 2022 U.S. Dist. LEXIS 211786, at *4 (E.D.N.Y. Nov. 22, 2022) (same). In fact, other than discovery necessary to decide jurisdictional issues, the

8

Second Circuit has held that "until [plaintiff] has shown a reasonable basis for assuming jurisdiction, [plaintiff] is not entitled to any other discovery." *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990).

Here, FINRA's Motion to Dismiss advances multiple independent bases for complete dismissal, including lack of personal jurisdiction. [ECF No. 47, at pp. 10-13]. Further, the Amended Complaint is devoid of any allegations even attempting to establish personal jurisdiction in this matter. *See generally*, Am. Compl. [ECF No. 13]. Thus, there are substantial grounds supporting FINRA's Motion to Dismiss, and, like the above-cited authorities, the first factor weighs heavily in favor of staying discovery in this matter pending the Court's decision on that Motion.

The second factor also weighs in favor of a stay because producing any of the discovery that Plaintiff is likely to seek if permitted would impose an undue burden on FINRA. Specifically, Plaintiff's Amended Complaint, like other MMTLP-related pleadings asserted against FINRA,[3] obsesses over obtaining Electronic Blue Sheet Data. *See* Am. Compl., ¶ ¶3, 6, 7, 69, 70, 96, 99, 143, 144(B.III), 172, 200(II.C), 204, 210(C) [ECF No. 13]. But collecting, redacting, and producing Electronic Blue Sheet Data imposes a significant burden upon FINRA. *See generally* Draddy Aff.  Moreover, this data would not help Plaintiff decipher any perceived fraud related to MMTLP because it does not (i) identify positions held in a specific security on a specific date by

---

[3] The following MMTLP-related cases were all dismissed with prejudice: *Hensley v. TD Ameritrade, Inc.,* No. 23-cv-5159, slip op. (W.D. Wash. Oct. 2, 2023); *Park v. Financial Industry Regulatory Authority, Inc.*, 2023 WL 11795601, at *3-5 (N.D. Ga. Sept. 25, 2023); *Hofman v. Fidelity Brokerage Servs., LLC*, 2023 WL 3872564, at *6-8 (C.D. Cal. May 8, 2023); *Tawil v. Financial Industry Regulatory Authority, Inc.*, 2023 WL 4353179, at *1-2 (N.D. Fla. May 24, 2023).

In addition, other retail investors' attempts to obtain pre-action discovery of Electronic Blue Sheet Data have failed. *See Khorassani v. Financial Industry Regulatory Authority, Inc.*, 2023 WL 4029701 (N.Y. Sup.Ct. N.Y. Cty. June 15, 2023); *see also, Steamroller, LLC v. OTC Markets Group, Inc.*, 2024 WL 3850536 (N.Y. Sup.Ct. N.Y. Cty. Aug. 15, 2024). Finally, the plaintiff in *Traudt v. Rubenstein*, D. Vt. No. 2:24-cv-782-cr (D. Vt. July 17, 2024) has also made numerous attempts at obtaining Electronic Blue Sheet Data, all of which have failed.

a specific person, nor (ii) contain information about whether or how a short position was covered or whether a short sale was "naked." Draddy Aff. ¶¶ 19-20.

Finally, the third factor also supports a stay because Plaintiff would not be prejudiced by a discovery stay pending the Court's decision on FINRA's Motion to Dismiss. This case is in its infancy and any burden to Plaintiff based on a delay in obtaining discovery at this stage would be minimal – any discovery Plaintiff may seek would still be available should the Court deny FINRA's Motion to Dismiss. *See, e.g., Amron v. 3M Minnesota Mining & Manufacturing Co.*, 2024 WL 26310, at *3 (E.D.N.Y. Jan. 24, 2024) (finding no undue prejudice would result where plaintiff's claims were not "inherently time sensitive" and the case was "still in its early stages."); *Cohen v. Saraya USA, Inc.*, 2024 WL 198405, at * 3 (E.D.N.Y. Jan. 18, 2024) (finding no undue prejudice would result where "a discovery schedule ha[d] not been set, discovery ha[d] not occurred, and depositions ha[d] not been taken," and evidence would be preserved pending decision on motion to dismiss).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should stay all discovery in this action pending the Court's decision on FINRA's Motion to Dismiss.

Dated:  April 1, 2025

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By: *John P. Mitchell*
John P. Mitchell, Esq. (admitted *pro hac vice*)
john.mitchell@faegredrinker.com
105 College Road East, Third Floor
P.O. Box 627
Princeton, New Jersey 08540

10

Brian M. Hayes, Esq. (D. Conn. Bar # 31801)
brian.hayes@faegredrinker.com
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000

*Attorneys for Defendant Financial Industry
Regulatory Authority, Inc.*

DMS_US.370186192.4