## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JASON TODD ROLO,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>SECURITIES & EXCHANGE COMMISSION, FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., DEPOSITORY TRUST & CLEARING CORPORATION, and JOHN DOE 1 – 100,<br>　　　　　　　　Defendants. | Case No. 3:24-cv-02053-VDO |

## DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

                                                      **Page**

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. ARGUMENT .............................................................................................................................. 1

    A. FINRA is Not Subject to Personal Jurisdiction ....................................................... 1

        1. Rolo Does Not Allege Any Conduct by FINRA in Connecticut ................. 1

        2. There Is No Basis for Ordering Jurisdictional Discovery ........................... 3

    B. FINRA's Regulatory Immunity Bars the FAC's Claims Against FINRA ............... 4

    C. Rolo Lacks Standing to Bring Constitutional Claims .............................................. 6

    D. Rolo's Other Arguments Do Not Support His Constitutional Claims .................... 7

    E. Rolo's Antitrust and CUTPA Claims Are Baseless ................................................. 8

    F. Rolo Is Not Entitled to Discovery to "Fish" for Further Support ........................... 9

III. CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**   Page(s)

*Alpine Securities Corp. v. FINRA*,
  121 F.4th 1314,1325 (D.C. Cir. 2024)......................................................................................8

*Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Grp., Inc.*,
  312 F. Supp. 2d 247 (D. Conn. 2004).......................................................................................1

*In re: Application of the Children's Inv. Fund Found. (UK)*,
  363 F. Supp. 3d 361 (S.D.N.Y. 2019)...................................................................................5, 9

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001).........................................................................................................5, 6, 7

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).................................................................................................................2

*Calder v. Jones*,
  465 U.S. 783 (1984).................................................................................................................2

*Carter v. Carter Coal Co.*,
  298 U.S. 238 (1936).................................................................................................................8

*Cort v. Ash*,
  422 U.S. 66 (1975)...................................................................................................................6

*Credit Suisse Sec. (USA) LLC v. Billing*,
  551 U.S. 264 (2007).................................................................................................................9

*Cuoco v. Moritsugu*,
  222 F.3d 99 (2d Cir. 2000).................................................................................................9, 10

*D.L. Cromwell Invs., Inc. v. NASD Reg., Inc.*, 279 F.3d 155 (2d Cir. 2002)..................................7

*DL Cap. Grp., LLC v. NASD*,
  409 F.3d 93 (2d Cir. 2005).......................................................................................................4

*In re Facebook, Inc. IPO and Secs. and Derivative Litig.*,
  986 F. Supp. 2d 428 (S.D.N.Y. 2013).......................................................................................9

*Free Enterprise Fund v. PCAOB*,
  561 U.S. 477 (2010).............................................................................................................7, 8

*Gundy v. U.S.*,
  139 S. Ct. 2116 (2019).............................................................................................................8

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ........................................................................................................... 2

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ............................................................................................. 5

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) .............................................................................................. 8

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984) ........................................................................................................... 2

*In re Magnetic Audiotape Antitrust Litig.*,
  334 F.3d 204 (2d Cir. 2003) .............................................................................................. 2

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ........................................................................................................... 7

*Oklahoma v. U.S.*,
  62 F.4th 221 (6th Cir. 2023) .............................................................................................. 8

*S. New England Distrib. Corp. v. Berkeley Fin. Corp.*,
  30 F.R.D. 43 (D. Conn. 1962) ........................................................................................... 2

*Sparta Surgical Corp. v. NASD*,
  159 F.3d 1209 (9th Cir. 1998) .................................................................................. 4, 5, 6, 7

*Standard Inv. Chartered, Inc. v. NASD*,
  637 F.3d 112 (2d Cir. 2011) .............................................................................................. 4

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 659 (2d Cir. 2013) .............................................................................................. 3

*Thomas v. Connecticut Dep't of Correction*,
  No. 3:14CV714 DJS, 2015 WL 3970833 (D. Conn. Jun. 30, 2015) ............................. 5, 9

*Toys 'R' Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003) .............................................................................................. 3

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
  444 U.S. 11 (1979) ............................................................................................................. 6

**Statutes, Rules & Regulations**

Conn. Gen. Stat. § 33.939(f) ...................................................................................................... 1, 2

Conn. Gen. Stat. § 42-110a(4) ....................................................................................................... 9

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ........................................................................................................... 2

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ............................................................................................. 5

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) .............................................................................................. 8

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984) ........................................................................................................... 2

*In re Magnetic Audiotape Antitrust Litig.*,
  334 F.3d 204 (2d Cir. 2003) .............................................................................................. 2

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ........................................................................................................... 7

*Oklahoma v. U.S.*,
  62 F.4th 221 (6th Cir. 2023) .............................................................................................. 8

*S. New England Distrib. Corp. v. Berkeley Fin. Corp.*,
  30 F.R.D. 43 (D. Conn. 1962) ........................................................................................... 2

*Sparta Surgical Corp. v. NASD*,
  159 F.3d 1209 (9th Cir. 1998) .................................................................................. 4, 5, 6, 7

*Standard Inv. Chartered, Inc. v. NASD*,
  637 F.3d 112 (2d Cir. 2011) .............................................................................................. 4

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 659 (2d Cir. 2013) .............................................................................................. 3

*Thomas v. Connecticut Dep't of Correction*,
  No. 3:14CV714 DJS, 2015 WL 3970833 (D. Conn. Jun. 30, 2015) ............................. 5, 9

*Toys 'R' Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003) .............................................................................................. 3

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
  444 U.S. 11 (1979) ............................................................................................................. 6

**Statutes, Rules & Regulations**

Conn. Gen. Stat. § 33.939(f) ...................................................................................................... 1, 2

Conn. Gen. Stat. § 42-110a(4) ....................................................................................................... 9

iv

Conn. Gen. Stat. § 42-110c ................................................................................................................9

Fed. R. Civ. P. 8 .................................................................................................................................7

FINRA Rule 6440 .....................................................................................................................5, 7, 8

I.  PRELIMINARY STATEMENT

Plaintiff Jason Todd Rolo's ("Rolo") opposition to Defendant Financial Industry Regulatory Authority, Inc's ("FINRA") Motion to Dismiss [ECF 46] and Memorandum of Law [ECF 47] (the "Motion") is rife with factual inaccuracies and conclusory legal arguments.

Most importantly, as a threshold matter, Rolo's FAC[1] does not contain any facts to support personal jurisdiction over FINRA. Rolo attempts to cure that defect in his opposition by making vague and conclusory statements about FINRA's activities and proposing an unnecessary fishing expedition. The allegations in the FAC make the Court's lack of jurisdiction clear: none of FINRA's alleged misconduct in this case occurred in the State of Connecticut, no alleged misconduct was intentionally aimed at the forum, and there are no allegations nor basis to allege requisite contacts to support jurisdiction over FINRA for Rolo's claims.

Separately, the FINRA conduct about which Rolo complains has been deemed to be "quintessentially regulatory" in nature and his claims against FINRA are precluded by regulatory immunity. Moreover, Rolo fails to counter his lack of any private right of action, and the fact that FINRA is not a state actor. As a result, all of Rolo's claims are subject to dismissal and cannot be cured. FINRA's Motion to Dismiss should be granted, with prejudice and without leave to amend.

II.  ARGUMENT

    A.  **FINRA is Not Subject to Personal Jurisdiction**

        1.  **Rolo Does Not Allege Any Conduct by FINRA in Connecticut**

Addressing FINRA's threshold personal jurisdiction argument (Pl.'s Opp. [ECF 56] p. 19), Rolo purports to rely on Conn. Gen. Stat. § 33.939(f) to argue that the Court has jurisdiction because FINRA's conduct allegedly caused financial injury in the state. However, for that statute to apply, the alleged conduct **must** have occurred "*in this state.*" *Am. Wholesalers Underwriting,*

---

[1] This reply uses acronyms that were defined in FINRA's Motion.

*Ltd. v. Am. Wholesale Ins. Grp., Inc.*, 312 F. Supp. 2d 247, 253–54 (D. Conn. 2004) ("[t]he construction of this provision advocated by plaintiff has been rejected by other courts in the District of Connecticut, and is also rejected by this court") (quoting, among other cases, *S. New England Distrib. Corp. v. Berkeley Fin. Corp.*, 30 F.R.D. 43, 47 (D. Conn. 1962) ("In the Connecticut statute, the emphasis is unmistakably upon the *place where* the tortious conduct occurred. It requires tortious conduct *in this state.*") (emphasis in original)). Here, the FAC does not allege any conduct occurred in Connecticut, and Conn. Gen. Stat. § 33.939(f) is therefore inapplicable.

Rolo otherwise relies on vague arguments and inapplicable case law to support jurisdiction. With just five sentences, Rolo claims vaguely that jurisdiction would "not offend traditional notions of fair play and substantial justice" because "FINRA has extensive national contacts, including with broker-dealers serving this District" and FINRA was "fully aware it would impact retail investors in every state." Pl.'s Opp. [ECF 56] § VI.B, p. 20 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). These conclusory statements do not establish (or even allege) that FINRA "purposefully has directed [its] activities at forum residents" in any way. *Burger King*, 471 U.S. at 477. Rolo admits as much, claiming only that FINRA's conduct allegedly was "aimed at a national investor base and was certain to affect individuals residing in Connecticut." Pl.'s Opp. [ECF 56] p. 20. This is a far cry from allegedly purposeful activity directed at state residents, which is the type of activity that supported personal jurisdiction in the cases Rolo cites. *See* Pl.'s Opp. [ECF 56] pp. 20-21.[2] As noted in FINRA's Motion

---

[2] Citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (finding personal jurisdiction based on the "intentional, and allegedly tortious, actions [libelous reporting directed at a California resident]…expressly aimed at California" and noting the defendant was "not charged with mere untargeted negligence"), *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984) ("regular circulation of magazines in the forum State is sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine") and *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003) (specific allegations of participation in meeting discussing price fixing directed at the forum state sufficient to support personal jurisdiction).

[ECF 47, p. 12], Rolo's claims are simply not ones that "arise[] out of or [are] related to [FINRA's] contacts with the forum." *See In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673-74 (2d Cir. 2013). Even assuming Rolo's allegations are true, FINRA's actions as alleged in the FAC were "untargeted" and do not support finding jurisdiction over it in this case.

### 2. There Is No Basis for Ordering Jurisdictional Discovery

Rolo also argues that he made a prima facie showing of jurisdiction, and jurisdictional discovery is appropriate based on his allegations. Pl.'s Opp. [ECF 56] pp. 20-21 (alleging he is a Connecticut resident, and "he suffered concrete injury within the State as a result of FINRA's discretionary halt" which "applied to all broker-dealers serving Connecticut, and the resulting market freeze injured investors like Plaintiff in this forum"). However, again, Rolo does not allege any tortious conduct by FINRA within or directed at Connecticut.

Moreover, the cases Rolo cites can easily be distinguished. For example, Rolo cites *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456-58 (3d Cir. 2003), where the plaintiff's request for jurisdictional discovery was "specific, non-frivolous, and a logical follow-up based on the information known to [plaintiff]" which included "specific contacts of the defendant to provide justification for jurisdictional discovery, including attendance at trade shows and purchases within the United States…." *Toys 'R' Us*, 318 F.3d at 456-58. The pleading of "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state'" is what warranted jurisdictional discovery in that case. *Id.* at 456 (citation omitted). Here, Rolo has not alleged any specific contacts that support the exercise of jurisdiction, and jurisdictional discovery would be nothing more than a fishing expedition.

Specifically, Rolo claims discovery into "communications between FINRA and Connecticut-based firms concerning MMTLP…" would be proper. Pl.'s Opp. [ECF 56] p. 21. However, Rolo provides no evidence that such communications exist, nor does Rolo explain how

3

such communications, even if they did exist, would give rise to jurisdiction over FINRA for Rolo's claims. Rolo also asserts that "the use of FINRA's TRACE and ORF systems by local broker-dealers" would be an appropriate area of inquiry. *Id.* A broker dealer's use of a FINRA system, however, would not constitute FINRA conduct that could support jurisdiction. Likewise, Rolo claims that discovery into "regulatory or surveillance activity directed at market participants in this District" might disclose facts to allow for jurisdiction over FINRA. *Id.* But this vague suggestion does not allege "with reasonable particularity" the existence of contacts between FINRA and the State of Connecticut. Accordingly, Rolo's request that the Court sanction a fishing expedition based on pure speculation should be rejected.

### B.    FINRA's Regulatory Immunity Bars the FAC's Claims Against FINRA

The crux and focal point of Rolo's opposition is that FINRA is not entitled to immunity because its conduct to halt trading of the MMTLP security was *ultra vires* and executed in bad faith. Pl.'s Opp. [ECF 56] pp. 2-6. However, the cases upon which Rolo relies actually support the application of immunity, not Rolo's argument against it. *See, e.g.*, *DL Cap. Grp., LLC v. NASD*, 409 F.3d 93, 98 (2d Cir. 2005) ("precedent, not to mention common sense, strongly militates against carving out a 'fraud' exception to SRO immunity") (citations omitted); *see also Standard Inv. Chartered, Inc. v. NASD*, 637 F.3d 112, 115-16 (2d Cir. 2011) (immunity applies where the action was "on its face, an exercise of the SRO's delegated regulatory functions" and the SRO is "thus entitled to absolute immunity").

Notably, Rolo relies heavily upon *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1214-15 (9th Cir. 1998). The *Sparta* court, however, rejected the plaintiff's claim that FINRA (then NASD) "was acting as a market facilitator" that did not qualify for immunity. *Id.* at 1214. The court noted FINRA's responsibility to monitor the market to protect the investing public, and specifically found "[w]hen it acts in this capacity to suspend trading, [FINRA] is performing a regulatory function

4

cloaked in immunity." *Id.* at 1215. Much like Rolo, "[a]ll of the damage Sparta claim[ed] flow[ed] from the trading suspension and temporary de-listing," and the court concluded "defendants are immune from Sparta's claims." *Id.* The *Sparta* court also rejected the plaintiff's argument for a "bad faith" exception to the immunity doctrine, noting "our circuit does not recognize such an exception." *Id.* (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980)). The *Sparta* court acknowledged that:

> The results of any immunity rule may be harsh. If we take Sparta's complaint at face value, which we must, defendants acted in a capricious, even tartuffian manner which caused Sparta enormous damage. Nonetheless, when Congress elected 'cooperative regulation' as the primary means of regulating the over-the-counter market, the consequence was that self-regulatory organizations had to enjoy freedom from civil liability when they acted in their regulatory capacity. [*Id.*]

Rolo also claims the "trading halt lacked any statutory basis or regulatory authorization." Pl.'s Opp. [ECF 56] p. 3. Rolo's argument, however, ignores the judicially noticeable facts FINRA raised in its motion including that Rule 6440 explicitly provides FINRA the regulatory authority to halt trading and that FINRA operates pursuant to SEC oversight. FINRA Motion [ECF 47] pp. 4-6. Because Rolo fails to address these points, he concedes them. *See In re: Application of the Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 368 (S.D.N.Y. 2019) (arguments not addressed in opposition brief are conceded). *See also Thomas v. Connecticut Dep't of Correction*, No. 3:14CV714 DJS, 2015 WL 3970833, at *3 (D. Conn. Jun. 30, 2015) (holding *pro se* plaintiff's claims abandoned "Because the plaintiff failed to rebut, or address in any way, the defendants' argument against those claims…."). Thus, FINRA's conduct in halting trading was "quintessentially regulatory" and Rolo's claims against FINRA are precluded by absolute immunity.[3]

---

[3] Rolo also argues "procedural transparency or neutral oversight" is lacking, Pl.'s Opp. [ECF 56] p. 5, citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001), for the proposition that a "vertically integrated structure, with no procedural transparency or neutral oversight, creates a textbook case of 'pervasive entwinement' warranting judicial scrutiny." "Pervasive entwinement" was used in *Brentwood* as a basis for finding that an interscholastic
*(Continued on next page)*

5

### C. Rolo Lacks Standing to Bring Constitutional Claims

Rolo misconstrues FINRA's standing arguments, which relate to his constitutional claims against FINRA. FINRA Motion [ECF 47] p. 24. Rather than address those arguments, including the irrefutable fact that FINRA is not a state actor, Rolo argues that he has standing to pursue Exchange Act claims.[4] Pl.'s Opp. [ECF 56] pp. 6-9. Rolo's arguments are irrelevant to whether he has standing to assert constitutional claims. For example, Rolo relies on *Sparta* to claim the court "recogniz[ed] standing where SRO conduct directly impacted market incomes." Pl.'s Opp. [ECF 56] p. 7. Such reliance is again misplaced because the *Sparta* court never addressed standing, and (as noted above) it rejected claims against FINRA (then NASD) on immunity grounds. *Sparta*, 159 F.3d at 1214-15.[5] Rolo's standing arguments focus entirely on his assertion that an alleged inability to trade the MMTLP security has resulted in his injury. Pl.'s Opp. [ECF 56] p. 8. However, as noted in FINRA's Motion, an allegation that a state actor's alleged interference resulted in lost property value does not rise to a constitutional deprivation of property rights. FINRA Motion [ECF 47] pp. 30-31. And as an initial matter, Rolo has not and cannot establish that FINRA is a state actor. FINRA Motion [ECF 47] pp. 26-27. Further, Rolo's reliance on the proffered loss in value of MMTLP is insufficient to establish a deprivation of a property interest as a matter of law.

---

athletic association was a state actor for purposes of a 14th Amendment claim. *Id*. at 291. That ruling has no application here, particularly where courts have consistently held that FINRA is not a state actor. FINRA Motion [ECF 47] p. 26.

[4] Rolo's Exchange Act claims are subject to dismissal for the numerous other reasons cited in FINRA's Motion.

[5] The other cases Rolo cites are equally non-responsive to FINRA's argument that he lacks standing to assert constitutional claims. *See, e.g.*, *Cort v. Ash*, 422 U.S. 66 (1975) (addressing private rights of action by a stockholder under Delaware law, in the context of a shareholder derivative claim); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) (addressing private rights of action). Indeed, Rolo does not refute, and thus concedes, there is no private right of action against FINRA under the securities laws. *See* FINRA Motion [ECF 47] pp. 17-19.

Rolo's remaining arguments on standing do not warrant further discussion. *See*, *e.g.*, Pl.'s Opp. [ECF 56] pp. 8-9, Sec. III.C (claiming the complaint states a plausible claim for relief and satisfies Rule 8) & III.D (arguing he presents a "novel, justiciable claim" with the false statement that "[n]o court has foreclosed judicial review of an SRO's discretionary market shutdown executed without SEC oversight, procedural safeguards, or formal rulemaking," which as stated above ignores FINRA Rule 6440, the SEC's oversight of FINRA, and the directly contrary holding in *Sparta*). None of Rolo's arguments can overcome the legal deficiencies in his claims. Rolo has not alleged facts to support standing to assert constitutional claims, and his claims fail as a matter of law.

### D.     Rolo's Other Arguments Do Not Support His Constitutional Claims

Rolo's other arguments in support of his constitutional claims are equally specious. Pl.'s Opp. [ECF 56] pp. 9-12. Rolo cannot maintain a due process claim, based on an alleged lack of notice and opportunity to be heard or any other basis (*id*. p. 10), because FINRA is not a state actor. FINRA Motion [ECF 47] pp. 26-27 (citing *D.L. Cromwell Invs., Inc. v. NASD Reg., Inc.*, 279 F.3d 155, 161 (2d Cir. 2002) and other cases). Rolo simply ignored FINRA's argument that it is not a state actor, and instead cited to inapplicable case law. Pl.'s Opp. [ECF 56] pp. 10-11 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (court addressed due process in administrative procedures established by the Secretary of Health, Education and Welfare—i.e., a state actor) and *Brentwood Acad.*, 531 U.S. at 296 (court found interscholastic athletic association was a state actor for purposes of a 14th Amendment claim)).

Relying on *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), Rolo also argues that FINRA as an organization is unconstitutional due to Appointments Clause violations. Rolo, however, misconstrues the Supreme Court's ruling, which explicitly distinguishes between "*private* self-regulatory organizations in the securities industry," like FINRA, from the PCAOB,

7

which, "[u]nlike the self-regulatory organizations," is a "*Government-created, Government-appointed entity.*" *See Free Enter. Fund*, 561 U.S. at 484-85. Rolo's reliance on *Alpine Securities Corp. v. FINRA*, 121 F.4th 1314,1325 (D.C. Cir. 2024), is similarly misplaced. That decision was "narrow and limited" to facts and circumstances that are not present in this case – the expulsion of a FINRA member firm in an expedited disciplinary proceeding. *Id.* at 1330.

Rolo's opposition also fails to address well-established case law that directly contradicts his arguments that FINRA violates the private nondelegation doctrine. *Compare* Pl.'s Opp. [ECF 56] pp. 11-12 to FINRA Motion [ECF 47] pp. 27-29 (citing, among other cases, *Oklahoma v. U.S.*, 62 F.4th 221, 229 (6th Cir. 2023) ("[i]n case after case" courts have found SROs like FINRA do not violate the nondelegation doctrine, because "the SEC's ultimate control over the rules and their enforcement makes the [SROs] permissible aides and advisors")). Instead, Rolo relies on inapplicable holdings in *Carter v. Carter Coal Co.*, 298 U.S. 238 (1936), and *Gundy v. U.S.*, 139 S. Ct. 2116 (2019), neither of which involved SROs and therefore do not bear on the Court's analysis of the issue.

Finally, Rolo's claims of structural conflicts and institutional bias (Pl.'s Opp. [ECF 56] p. 12) are based only on generalized assertions and do not support his constitutional claims. He also attempts to rely on *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022). Such reliance is misplaced because *Jarkesy* was "about the nature and extent of [constraints on SEC powers] in securities fraud cases in which the SEC seeks penalties." *Id.* at 449. That case is wholly irrelevant to FINRA's exercise of its regulatory functions in issuing a trading halt pursuant to FINRA Rule 6440.

E.   **Rolo's Antitrust and CUTPA Claims Are Baseless**

In his opposition, Rolo fails to address FINRA's legal arguments explaining why his antitrust and CUTPA claims should be dismissed. Instead, Rolo simply reiterates his grievances about FINRA's operations and structure, cites to alleged discrepancies in trading data, and

8

complains about the manner in which FINRA exercised its regulatory functions and issued a halt pursuant to SEC-approved rules. Pl.'s Opp. [ECF 56] pp. 12-19. Putting aside the numerous factual inaccuracies in Rolo's diatribe, none of his arguments address the legal deficiencies in his antitrust and CUTPA claims: (i) the alleged misconduct does not constitute restraint of trade, as noted in FINRA's Motion (FINRA Motion [ECF 47] pp. 20-21); (ii) the securities laws preclude application of antitrust laws where "the two are 'clearly incompatible'" (*see Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264, 275 (2007) & FINRA Motion [ECF 47] p. 21); and (iii) the CUTPA is completely inapplicable (*see* FINRA Motion [ECF 47] pp. 22-24 (noting none of FINRA's conduct falls within the definition of "trade or commerce" under the CUTPA (C.G.S. § 42-110a(4), and C.G.S. § 42-110c contains an exemption for regulatory conduct)). Rolo's failure to address FINRA's arguments means he conceded them. *See In re: Application of the Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d at 368; *Thomas*, 2015 WL 3970833, at *3.

### F. Rolo Is Not Entitled to Discovery to "Fish" for Further Support

Finally, Rolo argues that dismissal of his claims would be premature, and he should be permitted to engage in discovery for further facts because he "plausibly alleged" his claims. Pl.'s Opp. [ECF 56] pp. 22-23. As an initial matter, "SRO immunity provides protection not only from liability, but also from the burdens of litigation, including discovery." *In re Facebook, Inc. IPO and Secs. and Derivative Litig.*, 986 F. Supp. 2d 428, 448 (S.D.N.Y. 2013). Further, no amount of discovery will change the fact that each of Rolo's claims is subject to dismissal as a matter of law. Rolo completely misstates the Second Circuit's holding in *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000), claiming that "[t]he Second Circuit has made clear that a pro se complaint should not be dismissed without granting leave to amend where a liberal reading indicates that a valid claim might be stated." Pl.'s Opp. [ECF 56] p. 23. In fact, the *Cuoco* court denied leave to amend, noting that, much like the claims here, "[t]he problem with Cuoco's causes of action is substantive;

9

better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied." *Cuoco*, 222 F.3d at 112. Thus, even in a pro se case, discovery is not permitted where viable claims are not and cannot be asserted. Here, no amount of discovery will change the underlying legal deficiencies in Rolo's claims.

### III.   CONCLUSION

In an effort to overcome FINRA's complete legal defenses to Rolo's statutory, common law, and constitutional claims, Rolo points to superfluous, irrelevant facts and speculates about purported evidence in an effort to weave together a story that FINRA acted improperly. The purported evidence, however, does not overcome the fact that FINRA was acting in its regulatory capacity, pursuant to rules approved by the SEC. Even if the Court has jurisdiction, Rolo's claims are barred by regulatory immunity, and he cannot assert a private right of action against FINRA. For the reasons stated herein and in FINRA's Motion to Dismiss [ECF 47], this Court should dismiss the FAC with prejudice and without leave to amend.

Dated:  April 28, 2025

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By: /s/ John P. Mitchell

John P. Mitchell, Esq. (admitted *pro hac vice*)
John.mitchell@faegredrinker.com
105 College Road East, Third Floor
P.O. Box 627
Princeton, New Jersey 08540

Brian M. Hayes, Esq. (ct 31801)
brian.hayes@faegredrinker.com
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

10

11