**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JASON ROLO,<br><br>                Plaintiff,<br><br>v.<br><br>SECURITIES & EXCHANGE COMMISSION, FINANCIAL INDUSTRY REGULATORY AUTHORITY, DEPOSITORY TRUST & CLEARING CORPORATION, and JOHN DOE 1-100,<br>                Defendants. | Case No. 24-cv-02053-VDO<br><br>April 28, 2025 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT BY DEFENDANT THE DEPOSITORY
<u>TRUST & CLEARING CORPORATION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    DTCC is Immune From this Lawsuit........................................................................... 2

        A.    The Newly Alleged So-Called "Settlement Freeze" is Conduct in Furtherance of NSCC and DTC's Self-Regulatory Functions. ...................................................... 2

        B.    Plaintiff's Claims Against DTCC, Parent of NSCC and DTC, Fail. .............................. 6

    II.    Plaintiff Fails to State a Claim Against DTCC as a Matter of Law................................... 7

        A.    Plaintiff Abandons the Majority of His Claims Against DTCC. .................................... 7

        B.    Plaintiff's Antitrust Claim Fails as a Matter of Law. ...................................................... 7

        C.    Plaintiff's CUTPA Claim Fails as a Matter of Law........................................................ 9

        D.    Plaintiff's New Claims are Improper and Fail as a Matter of Law................................. 9

    III.    The FAC Should be Dismissed with Prejudice. ............................................................ 10

CONCLUSION............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*,
  2025 WL 901847 (D. Utah Mar. 25, 2025) ........................................................................8, 10

*Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*,
  361 F. Supp. 2d 210 (S.D.N.Y. 2005)........................................................................................6

*D'Alessio v. NYSE*,
  258 F.3d 93 (2d Cir. 2001)......................................................................................................5, 6

*Desiderio v. NASD*,
  191 F.3d 198 (2d Cir. 1999).....................................................................................................10

*Dexter v. DTCC*,
  406 F. Supp. 2d 260 (S.D.N.Y. 2005), *aff'd*, 219 F. App'x 91 (2d Cir. 2007)......................4, 5

*Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. R & C Transit, Inc.*,
  2018 WL 794572 (E.D.N.Y. Feb. 7, 2018)................................................................................7

*DL Cap. Grp., LLC v. Nasdaq Stock Mkt., Inc.*,
  409 F.3d 93 (2d Cir. 2005)......................................................................................................5, 6

*Epstein v. SEC*,
  416 F. App'x 142 (3d Cir. 2010) .............................................................................................10

*Flowers v. Conn. Light & Power Co.*,
  2021 WL 5564085 (2d Cir. Nov. 29, 2021).............................................................................10

*Galuska v. NYSE*,
  2000 WL 347851 (7th Cir. Apr. 3, 2000) ................................................................................10

*Goodman v. Port Auth. Of N.Y. and N.J.*,
  850 F. Supp. 2d 363 (S.D.N.Y. 2012)......................................................................................10

*Hofman v. Fid. Brokerage Servs., LLC*,
  2023 WL 3872564 (C.D. Cal. May 8, 2023),
  *appeal dismissed*, 2023 WL 8447277 (9th Cir. Oct. 27, 2023) .................................................4

*Hughes v. Dempsey-Tegeler & Co.*,
  534 F.2d 156 (9th Cir. 1976) .....................................................................................................7

*In re Colonial Ltd. P'ship Litig.*,
    854 F. Supp. 64 (D. Conn. 1994) ................................................................................... 4

*In re NYSE Specialists Securities Litigation*,
    503 F.3d 89 (2d Cir. 2007) ........................................................................................... 3

*In re Trilegiant Corp., Inc.*,
    2014 WL 1315846 (D. Conn. Mar. 28, 2014) .............................................................. 6

*Laureatus Grp., LLC v. United States Dep't of Treasury*,
    2023 WL 5929412 (D.D.C. Sept. 12, 2023) ................................................................ 4

*Naughton v. Gutcheon*,
    2022 WL 3646177 (D. Conn. Aug. 24, 2022) .............................................................. 7

*Scholastic, Inc. v. Stouffer*,
    124 F. Supp. 2d 836 (S.D.N.Y. 2000) ........................................................................... 4

*Silver v. NYSE*,
    373 U.S. 341 (1963) ..................................................................................................... 8

*Sparta Surgical Corp. v. NASD*,
    159 F.3d 1209 (9th Cir. 1998) ..................................................................................... 3

*Standard Investment Chartered, Inc. v. NASD*,
    637 F.3d 112 (2d Cir. 2011) ......................................................................................... 3

*Thomas v. Egan*,
    1 F. App'x 52 (2d Cir. 2001) ........................................................................................ 9

*Thurmand v. Univ. of Connecticut*,
    2019 WL 369279 (D. Conn. Jan. 30, 2019) ................................................................. 7

*Weissman v. NASD*,
    500 F.3d 1293 (11th Cir. 2007) .................................................................................... 5

*William Wrigley Jr. Co. v. Waters*,
    890 F.2d 594 (2d Cir. 1989) ......................................................................................... 6

**STATUTES AND FEDERAL RULES**

15 U.S.C. § 78s(b)(1) .............................................................................................................. 4

Conn. Gen. Stat. § 42-110b(a) ................................................................................................ 9

Fed. R. Civ. P. 9(b) ................................................................................................................. 7

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 1

DTCC[1] respectfully submits this reply memorandum of law in support of its Motion to Dismiss the FAC as against DTCC pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiff's opposition to the Motion (ECF 54) ("Opposition") fails to refute any of DTCC's authority compelling dismissal of all claims as against DTCC with prejudice.  Instead, Plaintiff abandons most of his claims against DTCC and improperly introduces new unsupported allegations and claims in a doomed attempt to convince this Court to disregard the well-settled SRO absolute immunity doctrine.  But these new allegations and claims illustrate precisely why Plaintiff should not be permitted to amend the FAC—an amendment would be futile.  No amendment can overcome the primary, insurmountable obstacle to Plaintiff's suit: DTCC is entitled to SRO absolute immunity because the underlying conduct of which Plaintiff complains—the clearance and settlement of securities transactions—are activities performed by NSCC and DTC in furtherance of their delegated regulatory authority pursuant to the Exchange Act.

Plaintiff does not dispute that an SRO is absolutely immune from suit for conduct consistent with its delegated regulatory authority.  Nor does Plaintiff dispute that clearance and settlement activities are within the scope of the regulatory functions delegated to registered clearing agencies such as NSCC and DTC.  Yet, through a pastiche of misquotes and new conclusory allegations, Plaintiff tries to circumvent the SRO absolute immunity doctrine by baldly asserting that immunity does not apply to "*ultra vires* conduct" and "DTCC's conduct meets that definition."  Opp. at 12.  Even if there were such an exception to SRO absolute immunity (there is

---

[1] Capitalized terms used but not defined herein have the meaning given to them in in DTCC's opening memorandum of law in support of its motion to dismiss (ECF 48) ("Motion to Dismiss" or "Motion").  Because it still remains unclear which entity Plaintiff intends to implicate by asserting claims against DTCC, references to "DTCC" refer to NSCC and DTC, unless context suggests otherwise.

not),[2] the newly alleged conduct—a suspension of settlement of trades in MMTLP shares (also characterized by Plaintiff as a "settlement freeze")—cannot be *ultra vires*, because clearance and settlement is conduct within the scope of NSCC and DTC's delegated regulatory authority.

Other than his doomed arguments about SRO absolute immunity, Plaintiff abandons his claims against DTCC for violation of the Exchange Act's regulations prohibiting securities fraud, violation of the Bank Secrecy Act, violation of Section 17A(a)(1) of the Exchange Act, and declaratory and injunctive relief. Plaintiff fails to address any of the authority compelling dismissal of his two remaining claims against DTCC for antitrust and CUTPA violations. Plaintiff also improperly asserts new baseless Exchange Act and constitutional claims against DTCC, which should not be countenanced but, in any event, fail as a matter of law.

For these reasons and the reasons set forth in DTCC's Motion to Dismiss, the Court should grant DTCC's Motion and dismiss the claims against DTCC with prejudice.

## ARGUMENT

### I. DTCC is Immune From this Lawsuit.[3]

#### A. The Newly Alleged So-Called "Settlement Freeze" is Conduct in Furtherance of NSCC and DTC's Self-Regulatory Functions.

Plaintiff does not contest that an SRO is absolutely immune from suit when performing the regulatory functions delegated to it by the SEC. Opp. at 3-4. Instead, Plaintiff argues that DTCC is not entitled to immunity because the newly alleged "discretionary" act of imposing a "settlement freeze" was unauthorized and therefore *ultra vires* of its SRO authority. *Id.* at 3-4, 11-13, 17.

As an initial matter, Plaintiff's *ultra vires* argument is not supported by the case law cited

---

[2] DTCC is not aware of any application of *ultra vires* law to SRO authority, nor has Plaintiff cited to any such law.

[3] DTCC is interpreting references to DTCC in the Opposition to be directed at NSCC and/or DTC, except where Plaintiff makes clear that he is referring to the holding company.

in the Opposition. For example, Plaintiff misquotes *In re NYSE Specialists Securities Litigation*, 503 F.3d 89 (2d Cir. 2007) (Opp. at 7, 12) in support of his argument that a failure to file a Form 19b-4[4] can render SRO conduct unlawful so as to defeat absolute immunity, but the court did not mention a Form 19b-4 and noted that even in cases where SROs might have abused their regulatory power (e.g., by violating rules they were supposed to enforce), the "SROs were entitled to absolute immunity because they were acting within the scope of powers granted to them." *In re NYSE*, 503 F.3d at 98. Similarly, Plaintiff misquotes *Standard Investment Chartered, Inc. v. NASD*, 637 F.3d 112 (2d Cir. 2011) (Opp. at 12) for the proposition that "[i]mmunity does not extend to ultra vires acts," but the case says nothing about "ultra vires acts" and instead reaffirms SRO "absolute immunity" from private damages suits in connection with their SRO functions. *Standard*, 637 F.3d at 115-16. Plaintiff's quotations from *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209 (9th Cir. 1998), which he claims support his *ultra vires* argument, are also inaccurate. Opp. at 3, 4, 7, 13, 21. The *Sparta* court did not, as Plaintiff claims, hold that the absence of SEC oversight is fatal to SRO absolute immunity. Rather, it distinguished SRO actions taken under "the aegis of the Exchange Act's delegated authority," which qualify for absolute immunity, from "private business," which it held does not. *Sparta*, 159 F.3d at 1214. In doing so, the *Sparta* court found there to be "few functions more quintessentially regulatory than suspension of trading." *Id.*[5]

      Plaintiff's legally baseless *ultra vires* argument is also improperly premised on allegations raised for the first time in the Opposition. In particular, he now claims that DTCC implemented a "discretionary freeze" on the settlement of MMTLP shares, which he contends was not authorized

---

[4] *See infra* n.6.

[5] These are not the only misleading citations and incorrect quotations in the Opposition. In fact, *none* of the case quotations in the Opposition are accurate, and in many instances the case cited does not support the point at all.

and therefore *ultra vires*.⁶  Opp. at 4, 5.  None of these allegations appear in the FAC (nor are they supported by allegations in the FAC),⁷ and Plaintiff cannot properly rely on allegations in his Opposition if they are not alleged in his complaint.  *See Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 851 n.16 (S.D.N.Y. 2000) (parties are not entitled to assert new facts in submissions on a motion to dismiss); *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 79 (D. Conn. 1994) ("[a]llegations made outside of the complaint are not properly before the court on a motion to dismiss.").

Even if the new allegations were properly pled, a "settlement freeze" cannot, logically, be considered *ultra vires*.  Clearance and settlement activities are part and parcel of NSCC's and DTC's functions as registered clearing agencies for which they are immune from liability.  Courts considering challenges to similar conduct have reached the same conclusion.  *See Hofman v. Fid. Brokerage Servs., LLC*, 2023 WL 3872564, at *7 (C.D. Cal. May 8, 2023), *appeal dismissed*, 2023 WL 8447277 (9th Cir. Oct. 27, 2023) (DTCC entitled to absolute immunity because "facilitating securities transactions and trading halts are exercises of quasi-governmental regulatory authority under the Exchange Act"); *Laureatus Grp., LLC v. United States Dep't of Treasury*, 2023 WL 5929412, at *6–8 (D.D.C. Sept. 12, 2023) (DTCC and DTC entitled to absolute immunity for implementation of a government "freeze order"); *Dexter v. DTCC*, 406 F. Supp. 2d 260, 265

---

⁶ Plaintiff's claim that the purported "freeze" was not authorized appears to be based, at least in part, on another new allegation that DTCC "fail[ed] to file a Form 19b-4."  A Form 19b-4 is the form that all SROs are required to use for their filings of proposed rule changes pursuant to Section 19(b)(1) of the Exchange Act. 15 U.S.C. § 78s(b)(1) ("[e]ach [SRO] shall file with the [SEC], in accordance with such rules as the [SEC] may prescribe, copies of any proposed rule or any proposed change in, addition to, or deletion from the rules of such [SRO]…").  Other than a conclusory and unsupported statement in the Opposition (at 7) that a Form 19b-4 is "a procedural requirement for any change that materially affects settlement," Plaintiff has not alleged any facts (in his FAC or Opposition) that suggest that any actions DTCC took or failed to take were inconsistent with DTC's or NSCC's rules or required a rule change.

⁷ Plaintiff's allegations in the FAC against DTCC concerned "unresolved failures-to deliver," "settlement discrepancies," "synthetic shares," and "naked short selling" involving MMTLP.  *See* FAC ¶¶ 26, 43, 85, 105, 140, 173.  DTCC addressed these allegations in its Motion, but these allegations are not mentioned at all in the Opposition.

(S.D.N.Y. 2005), *aff'd*, 219 F. App'x 91 (2d Cir. 2007) (DTCC and DTC absolutely immune from claims based on allegedly improper distributions).

In determining whether an SRO is entitled to absolute immunity, courts "look not at the manner in which [the plaintiff] casts his claim against the [SRO]…but rather to the alleged misconduct of the [SRO] as detailed in the complaint." *D'Alessio v. NYSE,* 258 F.3d 93, 105-106 (2d Cir. 2001). *See also Weissman v. NASD,* 500 F.3d 1293, 1297 (11th Cir. 2007) (explaining that courts look "to the objective nature and function of the activity for which the SRO seeks to claim immunity").[8] Therefore, regardless of whether Plaintiff characterizes the alleged "settlement freeze" (or any of the actions alleged in the FAC) as unjustified or unauthorized, because they arose from NSCC and DTC's clearance and settlement duties, they are subject to SRO immunity. Mot at 3-5 & n.7. Even "assuming arguendo that the [SRO's] conduct was incorrect and unlawful, it is nevertheless protected." *Dexter*, 406 F. Supp. 2d at 263. Courts have consistently held that alleging that an SRO performed its statutory duties incorrectly or in bad faith does not circumvent absolute immunity. *See, e.g.*, *Weissman*, 500 F.3d at 1297-99*; DL Cap. Grp., LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 98 (2d Cir. 2005) ("[A]llegations of bad faith, malice, and even fraud . . . cannot, except in the most unusual of circumstances, overcome absolute immunity"); *D'Alessio*, 258 F.3d at 106 (NYSE's alleged "misconduct" fell within scope of "quasi-governmental powers delegated to the NYSE pursuant to the Exchange Act" and, therefore, absolute immunity precluded plaintiff from recovering damages in connection with his claims). Otherwise, a plaintiff could simply invent a claim of fraud or other misconduct and defeat what is supposed to be absolute

---

[8] Plaintiff contends that *Weissman* stands for the proposition that "immunity is unavailable for actions outside the scope of delegated regulatory authority." Opp. at 3; *see also id.* at 13. Not only does the case not say that, but unlike the alleged conduct at issue in this case, the activity (i.e., advertisements that promoted the sale of a particular stock) underlying the claims at issue in *Weissman* "serve[d] no regulatory function whatsoever" and was deemed "private business activity" in furtherance of NASDAQ's own interests as a private entity. *Weissman*, 500 F.3d at 1297-99.

5

immunity. *DL Cap. Grp.,* 409 F. 3d at 99. That is precisely what Plaintiff attempts to do here by inventing a claim that DTCC enacted a "settlement freeze" and then saying it did so without authority. If such perfunctory and erroneous allegations could defeat absolute immunity, "the [SRO's] exercise of its quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits" like Plaintiff's. *Id*. (*citing D'Alessio,* 258 F.3d at 105).

### B. *Plaintiff's Claims Against DTCC, Parent of NSCC and DTC, Fail.*

Plaintiff's inconsistent and circular arguments against DTCC's absolute immunity fail at the outset. On the one hand, Plaintiff says that he is asserting his claims against DTCC (as opposed to its clearing agency subsidiaries), which is "not an SRO" and does not itself clear or settle any transactions and therefore is not immune from suit. Opp. at 2-3, 13. If Plaintiff's claims are against DTCC in this non-operational capacity, they fail as a matter of law because, as Plaintiff admits, DTCC (the holding company) has not engaged in any conduct relating to the clearance and settlement of MMTLP shares. Opp. at 1-2; *see also* Mot. at 1 n.1. On the other hand, Plaintiff says his claims against DTCC are premised on (i) DTCC acting "through its clearing agency subsidiaries" (Opp. at 1; *see also id.* at 2, 14, 19-20), (ii) veil piercing (*id.* at 14-18),[9] and (iii) DTCC's purported "control" of NSCC and DTC (*id.*), in which case his claims fail because, as explained in DTCC's Motion (at 8-10) and above, NSCC and DTC are absolutely immune from

---

[9] Plaintiff's new request that the Court pierce the corporate veil and hold DTCC liable for the protected actions of its SRO subsidiaries is nonsensical. There is no evidence whatsoever to justify the "extraordinary remedy" of piercing the corporate veil. *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.,* 361 F. Supp. 2d 210, 217 (S.D.N.Y. 2005). To overcome the strong presumption against veil piercing, courts require corporations to have engaged in serious misconduct. *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989) (citations omitted) (explaining that the corporate veil will be pierced only when it can be demonstrated that the "[corporate] form has been used to achieve fraud, or when the corporation has been so dominated by an individual ... and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego."). No such allegations are included in the FAC and Plaintiff's new allegations (Opp. at 14-16) are entirely insufficient to claim financial dominance for purposes of piercing the corporate veil. *In re Trilegiant Corp., Inc.*, 2014 WL 1315846, at *5 (D. Conn. Mar. 28, 2014) (finding allegations about parent corporation's conduct insufficient to survive a motion to dismiss where facts did not show domination or "day-to-day control" necessary to disregard the corporate form).

suit when they act in furtherance of their regulatory functions.

## II. Plaintiff Fails to State a Claim Against DTCC as a Matter of Law.

### A. Plaintiff Abandons the Majority of His Claims Against DTCC.

"Courts in [the Second Circuit] have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them." *Thurmand v. Univ. of Connecticut*, 2019 WL 369279, at *3 (D. Conn. Jan. 30, 2019). *See also Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. R & C Transit, Inc.*, 2018 WL 794572, at *4 (E.D.N.Y. Feb. 7, 2018) (citing cases dismissing claims due to abandonment in opposition to a motion to dismiss); *Naughton v. Gutcheon*, 2022 WL 3646177, at *10 n.37 (D. Conn. Aug. 24, 2022) (dismissing *pro se* plaintiff's substantive due process and retaliation claims because plaintiff did not address them in her opposition to defendants' motion).

In his Opposition, Plaintiff does not address DTCC's Motion with regard to his Securities Fraud Claim, Bank Secrecy Act Claim, Failure to Maintain Records Under 15 U.S.C. § 78ql(a)(1) Claim, and Declaratory and Injunctive Relief Claims.[10] As such, these claims should be deemed abandoned and should be dismissed with prejudice for the reasons DTCC set forth in its Motion.

### B. Plaintiff's Antitrust Claim Fails as a Matter of Law.

As a preliminary matter, Plaintiff's conclusory allegations that the SEC did not authorize the alleged conduct at issue (*see, e.g.*, Opp. at 3-4, 6-7, 12-13) are insufficient to overcome immunity and subject DTCC to antitrust laws. *Hughes v. Dempsey-Tegeler & Co.*, 534 F.2d 156,

---

[10] In particular, Plaintiff fails to address any of DTCC's arguments as to why the FAC fails to plead the necessary elements of a securities fraud claim under Section 10(b) of the Exchange Act and Rule 10b–5 with specificity, particularity, and plausibility. *See* Mot. at 11-14. Plaintiff neither acknowledges nor disputes that this claim is subject to heightened pleading standards under Rule 9(b) and the PSLRA. Indeed, Plaintiff does not even mention this claim in his Opposition. Similarly, Plaintiff fails to address DTCC's argument that there is no private right of action under Section 17A of the Exchange Act and the Bank Secrecy Act. *Id.* at 17, 14. Plaintiff does not mention or try to justify either of these claims in his Opposition. Finally, Plaintiff also fails to mention his improper declaratory and injunctive relief claims, let alone address DTCC's arguments as to why they are legally baseless. *Id.* at 19-21.

172 (9th Cir. 1976) ("Implied immunity is the proper analysis where it appears that Congress intended for certain matters to be decided within the regulatory system established by the securities laws rather than to be subjected to the full force of the antitrust laws."); *see also* ECF 47 at 21.[11]

Moreover, Plaintiff fails to address DTCC's arguments describing how the FAC fails to plead the necessary elements of an antitrust claim under the Sherman and Clayton Acts. *See* Mot. at 14-17. Instead, Plaintiff attempts to replead his Sherman Act claim based on his new allegations that DTCC imposed a "settlement freeze" on MMTLP shares. Opp. at 9-10. But his refashioned claim and new allegations do not save his antitrust claim.

With respect to his Section 1 claim, Plaintiff alleges that FINRA and DTCC executed a trading and settlement halt on MMTLP shares, respectively, after they "held a private coordination call concerning the MMTLP corporate action" in violation of Section 1 of the Sherman Act. Opp. at 1-2. 13. First, simply describing a call as a "coordination call" does not make it one. Second, as discussed above (*supra* at 3-4), Plaintiff's new allegations that DTCC imposed a "settlement freeze" are not properly before this Court. Third, even if DTCC had enacted a "settlement freeze," Plaintiff's allegations that DTCC coordinated with FINRA to do so are contradicted by his own allegations that DTCC "unilaterally" decided to "freeze" settlement. *See* Opp. at 4. Fourth, Plaintiff still fails to allege any agreement among the Defendants to violate antitrust laws or that any of the actions DTCC took were for the purpose of *unreasonably* retraining trade or competition in any way. *See* Mot. at 14, 16. Nor does Plaintiff's new and erroneous allegations that DTCC

---

[11] Plaintiff's reliance on *Silver v. NYSE*, 373 U.S. 341 (1963) (Opp. at 3, 7, 13) is inapposite. In *Silver*, the Supreme Court held that antitrust laws applied to the New York Stock Exchange's ("NYSE") enforcement of one of its rules because the SEC lacked jurisdiction to review the NYSE's enforcement of that rule. *Silver v. NYSE*, 373 U.S. at 358-61. In so holding, the Supreme Court noted that if the SEC had jurisdiction a "different case would arise." *Id.* at n.12. Here, Plaintiff does not claim that the SEC lacked jurisdiction to review NSCC's enforcement of its rules, nor could he, as NSCC and DTC are subject to SEC regulation and oversight with respect to the promulgation and enforcement of their rules. *Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*, 2025 WL 901847, at *6 (D. Utah Mar. 25, 2025).

executed a "settlement freeze" support his claim of "monopoly power" under Section 2 of the Sherman Act.  In addition, Plaintiff still has not alleged an antitrust injury that can be remedied pursuant to the Clayton Act.  As such, for these reasons and the ones in DTCC's Motion (at 14-16), Plaintiff's antitrust claims lack factual support and must be dismissed with prejudice.

### C.  *Plaintiff's CUTPA Claim Fails as a Matter of Law.*

Rather than respond to DTCC's arguments as to why the allegations in the FAC failed to satisfy CUTPA's three-part test, Plaintiff improperly asserts new allegations (*see supra* at 3-4), which he incorrectly claims satisfy this test.  Plaintiff now claims that DTCC's "settlement freeze—absent notice, justification, or regulatory compliance—qualifies as [conduct that violates CUTPA]." Opp. at 11.  Plaintiff offers no factual support for his conclusory allegations that the purported "freeze" was without notice, justification, or regulatory compliance, and, in any event, such conduct does not constitute an "unfair…method[] of competition" or "unfair…in the conduct of any trade of commerce" for purposes of CUTPA.  Conn. Gen. Stat. § 42-110b(a).

Plaintiff also cites the wrong three-part test for establishing a CUTPA violation.  *See* Opp. at 10.  The three criteria to which he refers are those for establishing a practice is "unfair" for purposes of CUTPA.  In order to establish a violation of CUTPA, however, Plaintiff also needs to allege facts that support a claim that the alleged unfair conduct caused him to suffer ascertainable loss of money or property, which he fails to do.  *See* Mot. at 18.  For these reasons and those in DTCC's Motion, Plaintiff's CUTPA claim should be dismissed with prejudice.

### D.  *Plaintiff's New Claims are Improper and Fail as a Matter of Law.*

Plaintiff improperly raises new constitutional and Exchange Act claims in his Opposition. *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim.").  But even if these claims were properly pled, they fail as a matter of law and should be dismissed with prejudice.  First, to

9

the extent Plaintiff is attempting to assert a new Exchange Act claim alleging that DTCC failed to seek SEC approval for its purported "settlement freeze" via a Form 19b-4 filing, this claim fails for the same reasons his Section 17A claim fails—there is no private right of action to compel or prevent actions by DTCC related to its regulatory authority.  *See* Mot. at 17.  Second, Plaintiff's new constitutional claims (Opp. at 5-6, 13-14) also fail because DTCC and its subsidiaries are private corporations (FAC ¶ 14) not subject to the Constitution's structural provisions or due process requirements.  *See Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010) (NASD is a private actor not subject to constitutional due process claim); *Galuska v. NYSE*, 2000 WL 347851, at *2 (7th Cir. Apr. 3, 2000) ("NYSE is not a governmental actor subject to the Constitution's mandates."); *Desiderio v. NASD*, 191 F.3d 198, 206 (2d Cir. 1999) (NASD is a private entity, not a government actor subject to constitutional claims); *Alpine*, 2025 WL 901847, at *6 (NSCC is not a government entity subject to Constitution's separate of powers doctrine).

### III.     The FAC Should be Dismissed with Prejudice.

As discussed above, Plaintiff improperly attempts to amend his defective pleading by asserting new allegations and claims against DTCC in his Opposition, but parties cannot use briefs to amend defective pleadings.  *See, e.g.*, *Goodman v. Port Auth. Of N.Y. and N.J.*, 850 F. Supp. 2d 363, 380 (S.D.N.Y. 2012).  And even if Plaintiff sought leave to amend the FAC to include these new allegations and claims, such amendment would be futile because they suffer from all the same fatal defects as the FAC.  As a result, the Court should dismiss the FAC with prejudice. *See Flowers v. Conn. Light & Power Co.*, 2021 WL 5564085, at *2 (2d Cir. Nov. 29, 2021) (proper to deny leave to amend to a pro se complaint where the amendment would be futile, fails to state a claim, or fails to cure prior pleading deficiencies).

### CONCLUSION

The Court should grant DTCC's Motion and dismiss Plaintiff's claims with prejudice.

<div style="display: flex;">

Dated: April 28, 2025

*/s/ Alfred U. Pavlis*
Alfred U. Pavlis (ct08603)
Eli Yampel (ct31813)
FINN DIXON & HERLING LLP
Six Landmark Square
Stamford, CT 06901
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: apavlis@fdh.com
           eyampel@fdh.com

Respectfully submitted,

*/s/ Margaret A. Dale*
Margaret A. Dale (Bar No. 06257)
(*pro hac vice*)
Amy Gordon (Bar No. 208541) (*pro hac vice*)
PROSKAUER ROSE LLP
Eleven Times Square New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
mdale@proskauer.com
agordon@proskauer.com

*Counsel for Defendant The Depository Trust & Clearing Corporation*

</div>

11

## **CERTIFICATION**

I hereby certify that on April 28, 2025 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

<div style="text-align:right">

/s/ Alfred U. Pavlis
Alfred U. Pavlis (ct08603)
FINN DIXON & HERLING LLP
Six Landmark Square
Stamford, Connecticut 06901
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: apavlis@fdh.com

</div>