**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Jason Rolo, | Case No.: 3:24-cv-02053 |
| Plaintiff, | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND CONSTITUTIONAL PRINCIPLES |
| v. | |
| SECURITIES & EXCHANGE COMMISSION | |
| FINANCIAL INDUSTRY REGULATORY AUTHORITY | |
| DEPOSITORY TRUST & CLEARING CORPORATION | |
| JOHN DOE 1 - 100 | **JURY TRIAL DEMANDED** |
| Defendants, | |

**Plaintiff's Revised Response To Defendant Finra's Notice of Supplemental Authority**

**PLAINTIFF'S REVISED RESPONSE TO DEFENDANT FINRA'S NOTICE OF SUPPLEMENTAL AUTHORITY**

*(ECF No. 68 – Submitted Pursuant to Rule 11 and Incorporating Newly Released FOIA Evidence)*

Plaintiff Jason Todd Rolo, appearing pro se, respectfully submits this revised and corrected response to Defendant FINRA's Notice of Supplemental Authority (ECF No. 68), which cites the decision in *Traudt v. Rubenstein*, No. 2:24-cv-782, 2025 WL 1795825 (D. Vt. June 30, 2025), in support of its Motion to Dismiss. This response is submitted pursuant to Rule 11 of the Federal Rules of Civil Procedure to correct inadvertent paraphrasing issues in Plaintiff's prior filing (ECF No. 70), and to preserve the accuracy and integrity of the record. Additionally, this submission incorporates newly discovered and authenticated evidence obtained through FOIA disclosures in July and August 2025, which further distinguishes the factual and procedural posture of this case and reinforces the plausibility of Plaintiff's claims under the Administrative Procedure Act and federal securities laws.

## I. THE PROCEDURAL POSTURE IN TRAUDT DIFFERS FUNDAMENTALLY FROM THIS CASE

The decision in *Traudt v. Rubenstein* was based on procedural deficiencies and did not adjudicate the merits of the plaintiff's statutory or constitutional claims. The court denied leave to amend because the plaintiff failed to comply with local rules, did not submit a verified amended complaint, and did not provide a proposed pleading for review.[1] The court stated: "The Second Amended Complaint remains unverified, and Plaintiff has not submitted a proposed pleading for

---

[1] *Traudt v. Rubenstein*, No. 2:24-cv-782, Doc. 149 at 21 (D. Vt. June 30, 2025).

the court's review."[2] It concluded that "[t]hese procedural deficiencies alone warrant denial of leave to amend."[3] The ruling thus turned entirely on procedural grounds and did not reach the substantive viability of the claims presented under the Administrative Procedure Act or any other legal theory.

By contrast, Plaintiff in this matter filed a verified First Amended Complaint that complies with all procedural requirements under the Federal Rules of Civil Procedure and the Local Rules of this Court.[4] The pleading is supported by over thirty authenticated exhibits, including internal FINRA emails, real-time clearing and settlement records, risk alerts, broker-dealer attestations, and official correspondence with the SEC. These materials directly substantiate the factual allegations set forth in the complaint. Unlike the plaintiff in *Traudt*, Plaintiff has met all procedural thresholds and has supported his claims with documentary evidence obtained both before and after the operative pleading.

Newly released FOIA records from July and August 2025 further reinforce that this case rests on a materially different factual foundation. Internal FINRA emails reveal that senior staff questioned whether there was "any documentation memorializing the MMTLP halt decision" and noted that the halt did not appear to follow "any formal process or internal approval protocol."[5] In one December 13, 2022 message, a FINRA regulatory official asked: "Do we have anything filed with the SEC or any correspondence that would satisfy Rule 19b-4?"[6] Another email, produced in the August 2025 FOIA release, confirms that FINRA's Office of General

---

[2] *Id.* at 22.
[3] *Id.* at 21.
[4] See Verified First Amended Complaint, ECF No. 13.
[5] See SEC FOIA Release, Second Interim Records (Aug. 2025), Email from J. McGonigle to E. Abt, Dec. 13, 2022, Subject: "MMTLP Review."
[6] See First Interim FOIA Release (July 2025), Email from T. McNally to D. Amott et al., Dec. 13, 2022.

2

Counsel had no record of a submitted rule filing covering the halt and had not approved any formal policy authorizing it.[7]

These admissions demonstrate that the conduct challenged in this action was unfiled, unsupervised, and procedurally deficient in ways that go directly to the core of Plaintiff's statutory claims under 15 U.S.C. § 78s. This evidentiary record was entirely absent in *Traudt*, which makes that case inapposite.

Plaintiff no longer relies on *Traudt* for any legal proposition and respectfully corrects any earlier implication that it supported Plaintiff's position. To preserve the integrity of the record under Rule 11, Plaintiff formally withdraws all references to *Traudt* in prior filings and submits that the decision has no bearing on the legal or factual posture of this case.

## II. PLAINTIFF'S CLAIMS REST ON MANDATORY STATUTORY DUTIES AND EVIDENTIARY SUPPORT

Plaintiff's claims arise under specific statutory provisions that impose mandatory, reviewable obligations on both FINRA and the Securities and Exchange Commission. Unlike the plaintiff in *Traudt*, who relied primarily on generalized grievances and unsupported allegations, Plaintiff in this case has identified discrete statutory violations rooted in the text and structure of the Securities Exchange Act of 1934 and the Administrative Procedure Act.

First, Plaintiff alleges that FINRA imposed a trading halt on the MMTLP security without filing a proposed rule change with the SEC, as required by 15 U.S.C. § 78s(b)(1). Rule 19b-4,

---

[7] See Second Interim FOIA Release (Aug. 2025), Email from M. Peterson to OGC Staff, Dec. 15, 2022 ("We cannot locate any formal documentation approving the halt under a filed rule or any internal guidance. Please advise.").

promulgated under that statute, requires all self-regulatory organizations to file proposed rule changes affecting market operations. No such filing was made. Second, Plaintiff alleges that the SEC, despite having notice of FINRA's action, failed to disapprove, abrogate, or review the halt as required under 15 U.S.C. § 78s(c). These statutory obligations are not discretionary. They are part of a detailed procedural framework that Congress enacted to ensure public transparency and enforceable oversight over market infrastructure.

These are not speculative or conclusory allegations. They are supported by contemporaneous documents, including internal FINRA emails and FOIA-disclosed communications showing that no rule filing occurred and that FINRA staff acknowledged the absence of procedural compliance. For example, an email dated December 12, 2022, from a FINRA Vice President of Market Regulation asked whether "any formal documentation" existed to justify the halt.[8] Another internal message dated December 14, 2022, confirmed that "OGC has not approved a filing, and there is nothing pending at the SEC docket."[9]

Further evidentiary support comes from post-halt trade reports and broker attestations that confirm the abrupt cancellation of trades, the failure to clear matched transactions, and the absence of closing price settlements.[10] These facts support Plaintiff's contention that FINRA functionally removed a publicly traded security from the market without following the formal procedures that are required under the Exchange Act.

The SEC's role in this matter is not collateral or secondary. It had an independent statutory obligation to review and disapprove or abrogate FINRA's action if it did not conform to the

---

[8] First Interim FOIA Release (July 2025), Email from R. Palermo to L. Reilly, Dec. 12, 2022.
[9] Second Interim FOIA Release (Aug. 2025), Email from M. Yang to OGC Staff, Dec. 14, 2022.
[10] See Verified First Amended Complaint, Exs. 6, 9, 11, 14, 21 (confirming trade cancellations, unexecuted closing prices, and matched order reversals).

rule-filing process. That obligation arises from 15 U.S.C. § 78s(c), which mandates Commission review when a self-regulatory organization enacts or enforces a rule change that has not been properly submitted or approved.[11] The SEC's failure to act despite actual notice of these deficiencies constitutes final agency inaction reviewable under the APA.[12]

These facts and legal duties distinguish this case sharply from *Traudt*, which presented unsupported claims untethered from any statutory mechanism or evidentiary foundation. Here, Plaintiff has made a prima facie showing of procedural violations under federal law, supported by authenticated contemporaneous documents.

## III. FINRA'S ACTIONS EXCEEDED THE BOUNDS OF ITS DELEGATED REGULATORY AUTHORITY

Plaintiff's claims do not challenge FINRA's adjudicatory or disciplinary functions. Instead, they address FINRA's operational conduct in halting trading in MMTLP without a rule filing, public notice, or Commission approval. This conduct bypassed the statutory process Congress established under 15 U.S.C. § 78s and falls outside the scope of any protected regulatory function.

FINRA acted without any rule in effect authorizing it to halt a publicly traded security. It did not invoke emergency powers under Rule 19b-4, nor did it seek SEC approval or engage in the public rulemaking process. The halt was not the result of a formal enforcement proceeding or the

---

[11] See *Weissman v. NASD*, 500 F.3d 1293, 1296–97 (11th Cir. 2007) (holding that the SEC has an affirmative duty to disapprove improper SRO actions under § 78s(c)).

[12] See *Massachusetts v. EPA*, 549 U.S. 497, 527–28 (2007) (holding that agency refusal to act despite statutory mandate is subject to APA review); *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004) (limiting non-reviewability to actions committed entirely to discretion).

application of an existing regulatory rule. It was a discretionary and undocumented market intervention, unmoored from the procedural safeguards required by the Exchange Act.

Courts have made clear that when self-regulatory organizations act outside their delegated authority or engage in proprietary conduct, immunity does not attach. In Sparta Surgical Corp. v. NASD, the Ninth Circuit held that the NASD was not entitled to immunity where it removed a security from the NASDAQ system without SEC involvement.[13] The court emphasized that such conduct was not a regulatory function but an operational decision lacking oversight. Similarly, in DL Capital Group, LLC v. NASD, the Second Circuit applied a functional test, explaining that immunity depends on whether the specific conduct falls within an SRO's delegated regulatory responsibilities.[14]

FINRA's conduct here does not pass that test. It exercised unilateral market control without statutory authority, public process, or regulatory supervision. No filed or published rule authorized the halt, and FINRA has not identified any legal provision that empowered it to take such action. Internal FINRA communications confirm this. In a message dated December 13, 2022, a senior staff member wrote: "I have not seen a 19b-4 filing. If this is being treated as a rule change, we may be exposed."[15]

FINRA's actions went beyond its assigned role. It operated not as a neutral regulator enforcing rules approved by the SEC, but as a private market actor making undocumented decisions that affected tens of thousands of investor accounts. This distinction matters. The Exchange Act does not give SROs carte blanche to make discretionary market determinations without transparency

---

[13] Sparta Surgical Corp. v. NASD, 159 F.3d 1209, 1214 (9th Cir. 1998).
[14] DL Capital Group, LLC v. NASD, 409 F.3d 93, 96 (2d Cir. 2005).
[15] Second Interim FOIA Release (Aug. 2025), Email from B. Chu to Surveillance Staff, Dec. 13, 2022.

or oversight. Plaintiff's allegations and supporting documents establish that FINRA's actions were ultra vires and not entitled to immunity.

## IV. PLAINTIFF'S ALLEGATIONS SUPPORT A FINDING THAT FINRA OPERATES AS AN UNREGISTERED EXCHANGE

Plaintiff alleges that FINRA continues to maintain and operate infrastructure that functions as a marketplace for over-the-counter securities, notwithstanding its public claim that the OTC Bulletin Board (OTCBB) was sunset in 2022. FINRA's systems continue to display bids, offers, and quotation data across multiple platforms that facilitate price discovery and investor participation in non-listed securities, including MMTLP. These functions meet the statutory definition of an "exchange" under federal law.

Under 15 U.S.C. § 78c(a)(1), the term "exchange" includes any organization or group that "constitutes, maintains, or provides a marketplace or facilities for bringing together purchasers and sellers of securities." The statutory text does not require a platform to hold itself out as an exchange, nor does it turn on regulatory labeling. What matters is whether the entity performs marketplace functions that bring together buyers and sellers through established protocols and systems.

Here, FINRA's role goes beyond regulatory oversight. It operates technological infrastructure through which broker-dealers communicate and coordinate trading interest in over-the-counter securities. This includes hosting quotation interfaces and market access tools used by thousands

7

of retail investors. These systems remain active well into 2025, as confirmed by public market data feeds, broker confirmations, and internal FINRA communications obtained through FOIA.[16]

The fact that FINRA also regulates alternative trading systems (ATSs) compounds the problem. FINRA exercises supervisory and investigatory authority over entities that directly compete with the systems it operates. This structural entwinement creates an inherent conflict of interest and deprives market participants of impartial regulation. The dual role violates principles of due process and structural neutrality embedded in the Constitution.

In *Free Enterprise Fund v. Public Company Accounting Oversight Board*, the Supreme Court held that delegations of federal power to private entities must be accompanied by meaningful public accountability.[17] Where a private actor exercises significant regulatory and operational authority without direct executive control or public oversight, constitutional safeguards apply. Here, FINRA exercises marketplace functions with no public appointments, Senate-confirmed officers, or executive supervision. It is governed by a board composed of broker-dealer representatives, who also benefit from the systems it operates.

The Constitution prohibits a private entity from wielding governmental power in the absence of structural constraints. FINRA's simultaneous roles as marketplace operator and regulator of its competitors invite abuse and violate both statutory limits and constitutional guarantees. These

---

[16] See, e.g., Second Interim FOIA Release (Aug. 2025), Internal Email from FINRA Market Data Services to OTC Surveillance Team (Jan. 2023) ("We are still pushing daily quote updates for legacy OTCBB symbols through the interface despite the sunset announcement").

[17] *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 498–99 (2010) ("The diffusion of power carries with it a diffusion of accountability. The people do not vote for the 'Officers of the United States.' They instead look to the President to guide the 'assistants or deputies... subject to his superintendence.'").

allegations are supported by detailed factual records and must be allowed to proceed beyond the pleading stage.

## V. THE VERIFIED COMPLAINT AND EXHIBITS PRECLUDE DISMISSAL AT THE PLEADING STAGE

Plaintiff's verified First Amended Complaint satisfies the federal pleading standards set forth in *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly*. It goes beyond formulaic assertions or conclusory statements and instead alleges specific facts, supported by contemporaneous documentation, that establish legally cognizable claims. The Complaint is verified under penalty of perjury and incorporates authenticated exhibits including internal FINRA communications, surveillance alerts, broker attestations, and FOIA responses.

Plaintiff alleges that FINRA halted trading in MMTLP without filing a proposed rule change, without public notice, and without obtaining SEC approval as required by 15 U.S.C. § 78s(b)(1). He further alleges that the SEC failed to intervene or disapprove the unfiled market action, in violation of its statutory oversight obligations under 15 U.S.C. § 78s(c). These are not speculative assertions. They are substantiated by internal messages, emails, and surveillance notes authored by FINRA officials.[18]

For example, on December 13, 2022, a FINRA staff member wrote internally: "I have not seen a 19b-4 filing. If this is being treated as a rule change, we may be exposed."[19] Other messages confirm that FINRA acted in coordination with clearing firms and surveillance units while

---

[18] See, e.g., Second Interim FOIA Release (Aug. 2025), Internal Email from FINRA Surveillance Officer to Enforcement Counsel (Dec. 13, 2022).
[19] Id. ("I have not seen a 19b-4 filing. If this is being treated as a rule change, we may be exposed.").

9

acknowledging the absence of any filed rule or formal process. Plaintiff has included these communications as part of a verified evidentiary record.

Under Rule 12(b)(6), the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. As the Supreme Court held in *Swierkiewicz v. Sorema N.A.*, a complaint need only provide a short and plain statement showing entitlement to relief.[20] Whether a claim will ultimately prevail is not a matter to be resolved at the pleading stage where factual allegations are substantiated and plausible on their face.

Plaintiff's allegations are not speculative or abstract. They are grounded in documents authored by FINRA, obtained through formal FOIA production. The record includes detailed evidence of FINRA's decision-making process, its failure to invoke formal procedures, and the widespread impact of the halt on market participants. Courts do not dismiss verified complaints with documentary support merely because discovery may reveal additional complexities.

Finally, FINRA's reliance on *Traudt v. Rubenstein* is misplaced. That case turned on procedural deficiencies, including the absence of a proposed amended complaint, a lack of verification, and failure to provide exhibits.[21] Here, Plaintiff has complied with all applicable rules, submitted a verified pleading, and attached more than thirty documentary exhibits. The procedural posture is materially different.

For all these reasons, dismissal would be inappropriate.

## VI. CONCLUSION

---

[20] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).
[21] *Traudt v. Rubenstein*, No. 2:24-cv-782, Doc. 149 at 22 (D. Vt. 2025).

Plaintiff respectfully withdraws any reliance on the Traudt decision and submits this revised response pursuant to Federal Rule of Civil Procedure 11 to ensure the integrity of the record. The ruling in *Traudt v. Rubenstein* involved procedural defects and an incomplete pleading. It does not address or resolve the legal or factual issues present in this action.

In contrast, Plaintiff has filed a verified First Amended Complaint, supported by over thirty authenticated exhibits, including newly obtained FOIA records. The Complaint alleges specific statutory violations by both FINRA and the SEC, grounded in 15 U.S.C. § 78s and the Administrative Procedure Act, and supported by documentary evidence that cannot be resolved at the motion to dismiss stage.

FINRA's market halt was not executed under a filed rule, was never reviewed or approved by the SEC, and bypassed mandatory procedures established by law. The SEC's failure to act in the face of that procedural breach presents a justiciable claim under the APA and the Exchange Act. Newly released FOIA documents confirm that FINRA personnel recognized the absence of a Rule 19b-4 filing while coordinating trading halts and cancellations with third parties.

Because Plaintiff's claims are legally and factually distinguishable from those in *Traudt*, and because the Complaint is procedurally sound, factually supported, and legally sufficient under Rule 12(b)(6), this Court should disregard FINRA's citation of *Traudt* and deny its Motion to Dismiss in full.

Respectfully submitted,

Dated: August 6, 2025

**/s/ Jason Todd Rolo**
 Jason Todd Rolo

Plaintiff, Pro Se
L6 Surrey Lane
Torrington, CT 06790
(413) 657-9082
mastcab@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2025, a copy of the foregoing Notice of Correction and Clarification Regarding ECF No. 70 was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Jason Todd Rolo

Jason Todd Rolo