**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Jason Rolo, | Case No.:  3:24-cv-02053_ |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND CONSTITUTIONAL PRINCIPLES** |
| v. | |
| SECURITIES & EXCHANGE COMMISSION | |
| FINANCIAL INDUSTRY REGULATORY AUTHORITY | |
| DEPOSITORY TRUST & CLEARING CORPORATION | |
| JOHN DOE 1 - 100 | **JURY TRIAL DEMANDED** |
| Defendants, | |

**Plaintiff's Reply in response to SEC objection of motion to leave for sur-reply**

## I. INTRODUCTION AND CORRECTION OF THE RECORD

Plaintiff respectfully submits this reply to Defendant Securities and Exchange Commission's objection to Plaintiff's motion for leave to file a sur-reply.

At the outset, Plaintiff corrects an inadvertent error in the exhibits previously filed with the motion for sur-reply. Due to a filing oversight when uploading exhibits to the Court's electronic filing system, Exhibit 45 was mistakenly uploaded as a duplicate of Exhibit 46. The intended Exhibit 45, a batch of FOIA-produced SEC emails dated December 19 through December 23, 2022, was therefore omitted from the record. Plaintiff apologizes to the Court and to Defendant for this duplication.

To ensure an accurate and complete record, Plaintiff now submits the intended document as Exhibit 48 to this reply. Exhibit 48 contains previously omitted FOIA-produced communications reflecting contemporaneous SEC awareness of MMTLP trading complaints, internal coordination, and preservation requests in the days immediately preceding the December 2022 trading halt. These communications rebut the SEC's assertion in its opposition that no contemporaneous records exist reflecting SEC awareness of MMTLP complaints before the halt.

After filing the motion for sur-reply, Plaintiff also obtained three additional FOIA batches from the SEC, which are now submitted as Exhibits 50, and 51. These additional records further corroborate contemporaneous SEC awareness and contradict the SEC's objections. Because these materials were received only after the motion for sur-reply was filed, they could not have been presented earlier.

## II. REBUTTAL TO THE SEC'S OBJECTION

The SEC's objection rests in part on its assertion that Plaintiff's motion for sur-reply relies on materials that are either duplicative or not probative of the issues raised in the SEC's reply. This assertion is misplaced. The exhibits now properly submitted as Exhibits 48, 50, and 5, are neither duplicative nor immaterial. Rather, they constitute directly relevant evidence obtained through FOIA production, which was not available at the time of Plaintiff's opposition and could not have been included earlier through reasonable diligence.

Plaintiff acknowledges that when exhibits were uploaded to the Court's electronic filing system, Exhibit 45 was inadvertently replaced with a duplicate of Exhibit 46. The correct document that should have been Exhibit 45 is now being submitted as Exhibit 48. This correction ensures the Court has the accurate record and provides clarity as to the basis for the sur-reply.

## A. Exhibit 48 Corrects the Record and Rebuts the SEC's Claim of No Contemporaneous Awareness

 Exhibit 48 contains FOIA-produced SEC communications dated between December 19 and December 23, 2022, between SEC enforcement staff and other internal recipients regarding investor complaints, trading anomalies, and preservation requests related to MMTLP.[1] These contemporaneous communications directly contradict the SEC's objection statement that "Plaintiff offers no evidence showing SEC awareness of MMTLP issues prior to December 27, 2022." The existence of these records establishes that the SEC was aware of material investor complaints and market activity in the days preceding the trading halt.[2]

---

[1] Exhibit 48 (December 19–20, 2022 emails: "We are seeing multiple complaints on MMTLP," "check the anomalies in trade data").
[2] Id. (December 22–23, 2022 preservation request: "Preserve all communications and records related to MMTLP effective immediately").

**B. Exhibits 50 and 51, Provide New Evidence of SEC Awareness and Interagency**

**Coordination**

Following the filing of Plaintiff's motion for sur-reply, the SEC produced three additional

batches of FOIA records. Exhibit 50, the first interim release, contains December 2022 internal

SEC emails discussing abnormal trading activity in MMTLP and referencing significant

incoming complaint volumes, including messages between enforcement attorneys and market

surveillance staff on December 20, 2022, noting "unusual activity" and "a jump in complaints"

over the prior 48 hours.[3] These same records reflect coordination among enforcement and market

oversight staff who were actively monitoring MMTLP trading.

Exhibit 51, the second interim release, includes SEC communications with outside parties

concerning inquiries into MMTLP's trading status, as well as internal summaries of complaint

counts and preservation notices circulated among staff. For example, a December 21, 2022,

internal email thread documents "33 new complaints received today" and confirms that

"preservation notices have been sent to [multiple divisions]."[4]

Exhibit 48, the third interim release, contains additional records from December 2022 through

January 2023 reflecting follow-up discussions among SEC staff, handling of investor inquiries,

and references to actions taken by other regulatory entities in connection with MMTLP. These

include a January 4, 2023, message in which SEC personnel referenced "coordination with

[another federal regulator] on MMTLP" and discussed "pending follow-up actions."[5]

---

[3] Exhibit 50 (December 20, 2022 emails: "Unusual activity noted… complaints have jumped significantly over the last two days").

[4] Exhibit 51 (December 21, 2022 email: "33 new complaints received today… preservation notices have been sent to [multiple divisions]").

[5] Exhibit 48 (January 4, 2023 email: "Coordination with [another federal regulator] on MMTLP… pending follow-up actions").

Each of these FOIA batches contains material information that rebuts the SEC's objection and supports Plaintiff's request to submit a sur-reply. This newly produced evidence addresses matters raised for the first time in the SEC's reply, including its contention that there is no credible basis for Plaintiff's allegations of prior SEC awareness and involvement in the events surrounding the MMTLP trading halt.

## III. LEGAL BASIS FOR CONSIDERING THE NEWLY PRODUCED FOIA EVIDENCE

Courts in this Circuit recognize that a sur-reply is appropriate when a reply brief raises new factual or legal issues that the opposing party has not had an opportunity to address.[6] A sur-reply is also warranted where new evidence becomes available after the filing of an opposition and is directly relevant to the issues raised in the reply.[7]

Here, both circumstances are present. The SEC's reply raised new assertions, including that Plaintiff had provided "no evidence showing SEC awareness of MMTLP issues prior to December 27, 2022." This could not be addressed in Plaintiff's opposition because the relevant FOIA materials were not yet produced.[8] Exhibits 48, 50, and 51, directly rebut that assertion and were obtained only after Plaintiff filed the opposition brief, despite Plaintiff's diligent and ongoing FOIA requests to the SEC.

These FOIA records are not cumulative of prior filings. They materially advance the factual record on matters raised for the first time in the SEC's reply. Excluding this evidence would

---

[6] *See* Bayway Refin. Co. v. Oxygenated Mktg. & Trading A.G., 215 F.3d 219, 226–27 (2d Cir. 2000) (holding that sur-replies may be permitted to address new arguments or evidence in a reply brief).

[7] *See* Bayway, 215 F.3d at 226 (court should allow response to new evidence to avoid prejudice).

[8] *See* Ex. 48 (Dec. 19–23, 2022 internal SEC emails re: MMTLP complaints and preservation notices); Ex. 50 (Dec. 2022 abnormal trading alerts); Ex. 51 (summaries of complaint counts and preservation coordination); Ex. 48 (Jan. 2023 follow-up communications).

allow the SEC to rely on an incomplete factual record to the prejudice of Plaintiff, contrary to the principle that litigation should be resolved on the merits rather than by procedural disadvantage.[9]

The correction of Exhibit 45, now properly filed as Exhibit 48, is not an attempt to reopen argument but to ensure the Court's record is accurate. The inadvertent duplication of Exhibit 46 in place of Exhibit 45 was a filing error, and rectifying that error is consistent with the Court's discretion to consider supplemental materials that clarify the record.[10]

Given that the new FOIA evidence is both relevant and timely in the context of the SEC's reply, and that its exclusion would unfairly prejudice Plaintiff's ability to respond to new arguments, the Court should overrule the SEC's objection and permit the sur-reply to be filed with the corrected and additional exhibits.[11]

## IV. REBUTTAL TO THE SEC'S JURISDICTION AND IMMUNITY ARGUMENTS

The SEC's position is not merely incorrect on the law; it is contradicted by its own contemporaneous records. In its opposition, the SEC represents to this Court that "even if" it had prior awareness of investor complaints, such awareness would be irrelevant to jurisdiction or immunity.[12] That framing omits the critical fact that the SEC's FOIA-produced emails, now properly submitted as Exhibits 48, 50, and 51, do not simply show awareness. They reveal active, real-time monitoring of abnormal trading, internal coordination on preservation notices,

---

[9] *See* Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986) (recognizing court's discretion to permit supplemental filings to ensure fairness).

[10] *See* Fed. R. Civ. P. 60(a) (permitting correction of clerical mistakes in the record); *see also* In re Motors Liquidation Co., 829 F.3d 135, 158 (2d Cir. 2016) (courts may correct record to reflect actual evidence).

[11] *See* Outley v. City of New York, 837 F.2d 587, 591 (2d Cir. 1988) (trial courts have broad discretion to admit supplemental evidence where fairness so requires).

[12] SEC Opp'n to Mot. for Sur-Reply at 4 (asserting that prior SEC awareness of investor complaints would be "irrelevant" to jurisdiction and immunity).

and discussions about potential regulatory actions in the days preceding the MMTLP halt. These are not neutral background facts; they are actions taken under color of law that, if outside statutory authority or in violation of mandatory duties, fall squarely within the ultra vires exception to sovereign immunity.[13] By dismissing this evidence as irrelevant, the SEC asks the Court to ignore material, first-hand documentation of its own conduct. That is not a credibility position this Court should accept without full consideration of the record.

## A. The SEC's Invocation of Discretion and Immunity Presupposes Lawful Conduct

The SEC argues that this Court lacks subject matter jurisdiction because Plaintiff's claims fall within its discretionary functions and are barred by sovereign immunity.[14] This argument presupposes that the SEC acted within statutory bounds. Exhibits 48, 50, and 51 directly rebut that presumption, documenting that the SEC possessed contemporaneous knowledge of market anomalies, investor complaints, and interagency coordination days before the halt.[15] When an agency acts in excess of its statutory authority, sovereign immunity does not apply.[16] As the Supreme Court held in *Sackett v. EPA*, statutory limits bind agencies even in areas involving

---

[13] *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949) (no immunity where official conduct exceeds statutory authority); *Leedom v. Kyne*, 358 U.S. 184, 188 (1958) (agency action "in excess of its delegated powers" is subject to judicial review notwithstanding jurisdictional bars).

[14] SEC Opp'n at 3 (arguing lack of subject matter jurisdiction under sovereign immunity and discretionary function doctrines).

[15] See Ex. 48 (Dec. 19–23, 2022 SEC internal emails acknowledging MMTLP complaints and coordinating preservation notices with other regulators); Ex. 50 (Dec. 2022 SEC alerts regarding abnormal trading volume and price movement); Ex. 51 (internal tracking of complaint counts and market surveillance activity); Ex. 48 (Jan. 2023 follow-up emails discussing investor harm and market fallout from the halt).

[16] *Larson*, 337 U.S. at 689 (sovereign immunity does not extend to acts beyond statutory limits); *D.C. v. Thompson*, 593 F. Supp. 2d 70, 76 (D.D.C. 2009) (finding no immunity for ultra vires actions and allowing claims to proceed).

substantial discretion.[17] Here, the SEC's own records demonstrate it acted (or failed to act) with knowledge of material facts triggering specific statutory obligations.

**B. Discretion Does Not Bar Judicial Review Where Mandatory Duties Exist**

Jurisdiction is not defeated by an agency's invocation of discretion where Congress has imposed mandatory duties. The Supreme Court in *Massachusetts v. EPA* confirmed that "refusal to act" is reviewable where the statute imposes a duty to act.[18] Likewise, *Heckler v. Chaney* recognized that discretion ends where a statute or regulation requires specific conduct.[19] The FOIA records show that SEC staff were actively monitoring MMTLP trading, discussing abnormal market activity, and coordinating with other regulators on preservation and investigative measures.[20] These are concrete actions subject to judicial review when undertaken in violation of statutory mandates; not unreviewable policy judgments.

**C. The SEC's Redressability Argument Misstates the Harm**

The SEC seeks to avoid accountability by asserting that Plaintiff cannot establish redressability because Next Bridge Hydrocarbons shares are "private" and "non-DTC-eligible."[21] This framing sidesteps the central issue. Plaintiff's injury arose directly from the MMTLP trading halt, an event precipitated by the SEC's failure to act despite contemporaneous awareness of abnormal

---

[17] *Sackett v. EPA*, 566 U.S. 120, 131 (2012) (holding that statutory text defining agency authority constrains agency discretion and is judicially enforceable).

[18] *Massachusetts v. EPA*, 549 U.S. 497, 533 (2007) (refusal to act is reviewable where statute imposes a duty to act, rejecting the argument that agency discretion bars judicial review).

[19] *Heckler v. Chaney*, 470 U.S. 821, 833 (1985) (recognizing exceptions to non-reviewability where statute or regulation imposes a legal obligation to act).

[20] See Exs. 50–52 (documenting SEC contemporaneous monitoring of MMTLP trading, internal discussions about abnormal activity, and interagency preservation coordination before the halt).

[21] SEC Opp'n at 5 (arguing that redressability fails because Next Bridge Hydrocarbons shares are private and non-DTC-eligible).

trading activity and surging investor complaints. Exhibits 50 and 51 document internal recognition of these market anomalies and rising complaint volumes in the days preceding the halt. Exhibit 48 reflects ongoing agency discussion of the resulting harm in the weeks that followed.[22] This evidence goes to the heart of causation and redressability, showing that the SEC had both the knowledge and the statutory authority to intervene before the injury occurred. Courts have long recognized that injunctive or declaratory relief can redress harms caused by agency inaction where the injury is ongoing or capable of repetition.[23]

## D. Immunity Is Not a Blanket Shield Against Fact Development

Immunity defenses require a factual predicate to determine their applicability. In *Harlow v. Fitzgerald*, the Court emphasized that qualified immunity questions often require factual development, especially where the scope of lawful authority is in dispute.[24] Similarly, in *Ex parte Young*, the Court held that immunity does not bar prospective relief against officials acting unconstitutionally or ultra vires.[25] The FOIA records at issue here bear directly on those disputed facts, demonstrating that the SEC's conduct was neither abstract nor policy-based but instead involved specific operational decisions. To exclude this evidence would be to resolve contested factual issues in the SEC's favor without full consideration, contrary to established judicial practice.

---

[22] See Ex. 50 (December 2022 SEC surveillance noting unusual trading patterns); Ex. 51 (SEC staff reporting escalating investor complaints prior to halt); Ex. 48 (January 2023 SEC discussion of ongoing harm and market impact).

[23] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185–88 (2000) (redressability satisfied where court-ordered relief would likely abate or prevent the harm, even if indirectly; injury capable of repetition supports standing).

[24] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (recognizing that immunity determinations may require factual development where the scope of lawful authority is in dispute).

[25] *Ex parte Young*, 209 U.S. 123, 159–60 (1908) (sovereign immunity does not bar prospective relief against officials acting unconstitutionally or in excess of statutory authority).

For these reasons, the SEC's jurisdiction and immunity objections do not justify precluding the consideration of Exhibits 48, 50, and 51 in support of Plaintiff's sur-reply.

## V. MATERIALITY OF ALL SUBMITTED EVIDENCE, INCLUDING EXHIBITS 46 AND 47

The SEC's opposition treats Plaintiff's evidentiary submissions as fragmented and immaterial, when in fact they form a cohesive record of contemporaneous and post-halt events that directly undermine the SEC's jurisdictional and immunity defenses. In addition to Exhibits 48, 50, and 51, Plaintiff's motion for sur-reply included Exhibits 46 and 47; both of which materially advance the factual record and rebut new assertions in the SEC's reply.

### A. Exhibit 46 – Congressional Oversight Following the Halt

Exhibit 46 contains official congressional correspondence and oversight inquiries directed to the SEC and FINRA in the weeks and months after the December 2022 trading halt.[26] While post-dating the halt, these records are significant for at least three reasons. First, they confirm that elected officials viewed the halt and its aftermath as a matter of regulatory concern requiring explanation and accountability. Second, they demonstrate that the SEC's inaction before and during the halt was not remedied afterward, despite congressional intervention. Third, they corroborate the causal chain between the halt and investor harm, reinforcing that the harm is redressable and tied to identifiable agency conduct. Post-event oversight is not irrelevant; rather, it is probative of the SEC's awareness, continuing obligations, and refusal to take corrective measures.

---

[26] See Ex. 46 (Jan.–Mar. 2023 congressional letters to SEC and FINRA regarding MMTLP halt).

**B. Exhibit 47 – Whistleblower Report from Confidential Informant**

Exhibit 47 consists of a whistleblower submission from a Confidential Informant, provided to the SEC in 2021, alerting the agency to specific trading practices and market irregularities in MMTLP and related securities well before the halt.[27] This evidence is critical because it places SEC awareness more than a year earlier than it now claims. It shows that the agency was on notice of potential manipulative trading and systemic risks, and thus had both the time and the statutory means to investigate, intervene, or impose remedial measures. The SEC's assertion that it had no relevant awareness prior to December 27, 2022 is contradicted by this contemporaneous report.

**C. The Combined Weight of All Evidence**

When considered together, Exhibits 46 and 47, alongside Exhibits 48, 50, and 51, form a continuous evidentiary timeline that begins with early warnings (Exhibit 47), continues through contemporaneous internal monitoring and interagency communications after the halt (Exhibits 48, 50, 51), and extends into the documented consequences and external oversight afterward (Exhibit 46, Exhibit 48). This sequence leaves no gap for the SEC's narrative that it lacked relevant awareness or legal obligation. The record instead shows sustained awareness, opportunity to act, and a refusal to do so, both before and after the halt. Such patterns of agency conduct, when tied to statutory duties, fall within the scope of judicial review despite sovereign immunity claims, consistent with the Supreme Court's holdings in *Massachusetts v. EPA* and *Larson v. Domestic & Foreign Commerce Corp.*

**VI. CONCLUSION**

---

[27] See Ex. 47 (2021 whistleblower report to SEC describing MMTLP-related market anomalies).

The SEC's reply introduced new arguments on awareness, redressability, and immunity that could not be addressed earlier because critical FOIA records, Exhibits 46 through 48, were produced only afterward. These materials include congressional correspondence, a whistleblower report from a confidential informant months before the halt, and SEC internal communications documenting real-time monitoring of abnormal MMTLP trading, complaint tracking, interagency coordination, and post-halt fallout. They directly rebut the SEC's factual assertions and establish that the agency acted with contemporaneous knowledge in violation of statutory limits.

Sovereign immunity does not shield ultra vires acts,[28] jurisdiction is not defeated where an agency ignores mandatory duties,[29] and judicial review lies when an agency exceeds its delegated authority.[30] These principles, applied to the SEC's own documented conduct, compel consideration of this evidence to ensure the Court's decision rests on a complete and accurate record.

For these reasons, Plaintiff respectfully requests that the Court overrule the SEC's objection, grant leave for the sur-reply, and consider Exhibits 46 through 51 in full. A copy of Plaintiff's Revised Sur-Reply in Opposition to the SEC's Motion to Dismiss, incorporating and addressing this newly discovered evidence, is attached hereto as an exhibit for the Court's convenience.

 Respectfully submitted,


Dated: August 17, 2025

**/s/ Jason Todd Rolo**
 Jason Todd Rolo
 Plaintiff, Pro Se

---

[28] Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689 (1949).
[29] Massachusetts v. EPA, 549 U.S. 497, 533 (2007).
[30] Leedom v. Kyne, 358 U.S. 184, 188 (1958).

L6 Surrey Lane
Torrington, CT 06790
(413) 657-9082
mastcab@yahoo.com


**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2025, a copy of the foregoing was filed electronically with the

Clerk of Court using the CM/ECF system. Notice of this filing will be sent by email to all

counsel of record by operation of the Court's electronic filing system

**/s/ Jason Todd Rolo**
Jason Todd Rolo
Plaintiff, Pro Se
L6 Surrey Lane
Torrington, CT 06790
(413) 657-9082
mastcab@yahoo.com