UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JASON TODD ROLO,

Plaintiff,

-against-

SECURITIES AND EXCHANGE COMMISSION, *et al.*,

Defendants.

**MEMORANDUM & ORDER**

3:24-CV-2053 (VDO)

**VERNON D. OLIVER**, United States District Judge:

Jason Todd Rolo ("Plaintiff"), proceeding *pro se*, commenced this action for losses he allegedly suffered due to alleged misconduct related to a trading halt of shares against the following parties: **(1)** the Securities and Exchange Commission ("SEC" or "Commission"); **(2)** Financial Industry Regulatory Authority, Inc. ("FINRA"), **(3)** the Depository Trust & Clearing Corporation ("DTCC"), and **(4)** unidentified market participants.[1] Now before the Court are FINRA's motion to dismiss under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure,[2] DTCC's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure,[3] and the Commission's motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[4]

---

[1] First Amended Complaint, ECF No. 13.

[2] ECF No. 46.

[3] ECF No. 48.

[4] ECF No. 63.

After careful consideration of the record, the Court finds that the matter is appropriate for a decision without a hearing. For the reasons stated herein, the motions to dismiss are **granted** and Plaintiff's Amended Complaint is dismissed in its entirety.

## I. BACKGROUND

Plaintiff brings this action to address alleged systemic failures within the United States's financial markets.[5] Specifically, the claims center on alleged trading irregularities, governance failures, and statutory breaches associated with Meta Materials, Inc.'s Series A Preferred Shares (MMTLP) and their transition to Next Bridge Hydrocarbons (NBH).[6]

In June 2021, Torchlight Energy Resources, Inc. finalized a reverse takeover transaction with MetaMaterials Inc.[7] Also in June 2021, Torchlight distributed a Series A dividend to all shareholders of record, and the Series A Preferred Shares were re-designated as Meta Materials Torchlight Preferred (MMTLP) shares in brokerage accounts.[8] The MMTLP shares were structured to represent ownership interests in the assets of Torchlight Energy Resources, Inc. and were not intended for public trading.[9] Nonetheless, in October 2021, there was unauthorized public trading of MMTLP shares on the Over-the-Counter ("OTC") market,[10] which resulted in the facilitation of market manipulation due to lack of oversight.[11]

[5] ECF No. 13 at 48 ¶ 136.

[6] *Id.* at 2 ¶ 1.

[7] *Id.* at 8–9.

[8] *Id.* at 12 ¶ 30.

[9] *Id.*

[10] *Id.* at 15 ¶ 38.

[11] *Id.* at 15–17.

On December 9, 2022, FINRA imposed a permanent trading halt of MMTLP shares, which effectively froze shareholder investments and blocked Plaintiff's planned transactions.[12] Days later, the MMTLP shares transitioned to NBH shares.[13] Plaintiff alleges that FINRA overreached in halting trading without statutory authority or due process protections, and that the SEC and DTCC share responsibility for the failure to address the alleged manipulation tied to MMTLP shares.[14]

Plaintiff's Amended Complaint asserts the following claims: (1) Violation of the Securities Exchange Act of 1934, (2) Breach of Anti-Money Laundering Obligations Under the Bank Secrecy Act, (3) Violation of the Administrative Procedure Act, (4) Violation of Constitutional Principles (Appointments Clause and Nondelegation Doctrine), (5) Antitrust Violations Under the Sherman and Clayton Acts, (6) Negligence, (7) Breach of Duty of Fair Representation and Accountability, (8) Control Person Liability Under Section 20(a) of the Securities Exchange Act, (9) Fraud by Broker-Dealers Under Section 15(c)(2) of the Securities Exchange Act, (10) Failure to Maintain Accurate Records, and (11) Violation of the Connecticut Unfair Trade Practices Act.[15]

## II. <u>LEGAL STANDARD</u>

### A. Motion To Dismiss Under Rule 12(b)(1)

A party may move to dismiss a complaint for "lack of subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may

---

[12] *Id.* at 22.

[13] *Id.* at 48 ¶ 136.

[14] *Id.* at 49–50.

[15] *Id.* at 57–61.

be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When the Rule 12(b)(1) motion is facial, "*i.e.*, one 'based solely on the allegations of the complaint or the complaint and exhibits attached to it,' plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*, 822 F.3d at 57). The pleading must "show[] by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). In ruling on a jurisdictional challenge to the complaint, "a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Id.* at 554.

**B. Motion to Dismiss Under Rule 12(b)(2)**

A party may move to dismiss a complaint for "lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994)). "A prima facie case of personal jurisdiction requires nonconclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Ferrara v. Munro*, 585 B.R. 269, 281 (D. Conn. 2018) (quoting *Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed. App'x. 16, 19 (2d Cir. 2015) (internal citations omitted). "This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Chloé v. Queen Bee of Beverly Hills*, 616 F.3d 158, 163 (2d Cir. 2010)).

**C. Motion To Dismiss Under Rule 12(b)(6)**

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal citation omitted). "[T]he court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief." *Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 83 (D. Conn. 2020).

Documents filed *pro se* must be liberally construed and interpreted "to make 'the strongest arguments that they suggest.'" *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Even in a *pro se* case, however, 'although a court

must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal citation and quotation marks omitted).

## III. DISCUSSION

### A. FINRA's Motion to Dismiss (ECF No. 46)

As explained below, the Court concludes that FINRA's motion to dismiss for lack of personal jurisdiction and failure to state a claim must be granted.

#### 1. Personal Jurisdiction

As Plaintiff does not allege the basis for the Court to exercise personal jurisdiction over FINRA, the Court will first analysis whether FINRA is subject to general personal jurisdiction in Connecticut and, if not, then evaluate whether FINRA is subject to specific personal jurisdiction.

Plaintiff has not shown that FINRA is subject to general personal jurisdiction in Connecticut. "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 n.6 (2d Cir. 2013) (quoting *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Here, Plaintiff simply

alleges that FINRA is headquartered in Washington, DC.[16] There is, rightly, no argument that FINRA is subject to general jurisdiction in Connecticut.

On the other hand, specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Licci*, 732 F.3d at 169 n.6 (cleaned up). There is a two-step analysis to determine whether a court has specific personal jurisdiction: "First, the court must determine if the state's long-arm statute reaches the foreign corporation. Second, if the statute does reach the corporation, then the court must decide whether that exercise of jurisdiction offends due process." *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995) (citations omitted).

Plaintiff has not shown that FINRA is subject to specific jurisdiction in Connecticut. Connecticut's long-arm statute provides for personal jurisdiction over foreign corporations, like FINRA, only in the case of: (1) a contract made in Connecticut or to be performed in Connecticut; (2) business solicited in Connecticut; (3) the production, manufacture or distribution of goods with the reasonable expectation that such goods will be used in Connecticut; or (4) tortious conduct in Connecticut. *See* Conn. Gen. Stat. § 33-929(f). None of FINRA's alleged conduct falls into any of these categories because the claims arise out of FINRA's performance of its regulatory functions generally. Indeed, Plaintiff does not allege any conduct that occurred in Connecticut and thus, Plaintiff fails to show that Connecticut's long-arm statute reaches FINRA.

---

[16] ECF No. 13 at 7 ¶ 13.

**2. Failure to State a Claim**

Alternatively, even if Plaintiff showed that FINRA was subject to personal jurisdiction, all claims must be dismissed for failure to state a claim. Specifically, the Court finds that FINRA's absolute immunity on the basis of its status as a self-regulatory organization ("SRO") bars all claims.

"There is no question that an SRO and its officers are entitled to absolute immunity when they are, in effect, "acting under the aegis" of their regulatory duties." *DL Cap. Grp., LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 97 (2d Cir. 2005). Put another way, an SRO "may be entitled to immunity from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions." *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001). Here, FINRA is alleged to be an SRO headquartered in the District of Columbia.[17] All of Plaintiff's claims against FINRA arise from its regulatory activities and,[18] consequently, these direct challenges to FINRA's performance of its regulatory functions are barred by absolute immunity.

**B. DTCC's Motion to Dismiss (ECF No. 48)**

The Court concludes that DTCC's motion to dismiss for failure to state a claim must be granted.

DTCC moves to dismiss Plaintiff's First Amended Complaint on the grounds of absolute immunity and failure to plausibly state a claim. DTCC is entitled to immunity from

[17] ECF No. 13 at 7 ¶ 13.

[18] *Id.* ¶ 136 (Rolo alleging that the trading halt FINRA imposed on December 9, 2022, is "[a]t the center of this case"); ¶¶ 203-205 (discussing "regulatory failures"); ¶ 49 (discussing "regulatory lapses"); ¶¶ 1, 136 (discussing "regulatory negligence"), ¶¶ 101, 125 (discussing "regulatory deficiencies"); ¶ 64 (discussing "regulatory missteps").

suit in cases, like here, where it is alleged to have exercised its authority under the Exchange Act. *E.g.*, *Dexter v. Depository Tr. & Clearing Corp.*, 406 F. Supp. 2d 260, 264 (S.D.N.Y. 2005) (dismissing claims against DTCC on immunity grounds).

Here, Plaintiff's claims against DTCC arise from its alleged "critical responsibilities of clearing and settling trades" involving MMTLP and other Meta Materials related securities.[19] Plaintiff alleges that DTCC failed to address "recurring settlement discrepancies, including those involving synthetic shares" and "naked short sales" related to FINRA's imposition of the trading halt, which purportedly caused retail investors to suffer financial harm.[20] Considering these allegations, there is no reason in this case to conclude that DTCC is not entitled to absolute immunity. Much like the claims against FINRA, the claims against DTCC are barred by absolute immunity.

**C. SEC's Motion to Dismiss (ECF No. 63)**

As discussed below, because the Court concludes that the Commission's motion to dismiss for lack subject-matter jurisdiction must be granted, it does not reach the issue of whether Plaintiff failed to state a claim.

**1. Standing**

The Commission challenges Plaintiff's standing to bring his claims on four grounds. The Commission argues, first, that Plaintiff cannot show that the Commission caused any alleged injuries. Second, the Commission argues that Plaintiff's claims cannot be redressed by this lawsuit. Third, the Commission argues that Plaintiff lacks standing to bring any claims to

---

[19] *Id.* ¶¶ 85, 105.

[20] *Id.* ¶¶ 35, 85, 105, 106, 173.

compel the Commission to enforce laws. Fourth, the Commission argues that the APA does not provide jurisdiction over Plaintiff's programmatic challenges to the Commission's enforcement and regulatory programs.

Article III of the United States Constitution requires a plaintiff to have standing to invoke federal jurisdiction. *Doody v. Bank of Am., N.A.*, 709 F. Supp. 3d 71, 78 (D. Conn. 2024). Whether a plaintiff has standing is a threshold inquiry, and a plaintiff bears the burden to show the following: "(i) that [the plaintiff] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Plaintiff has failed to sufficiently plead causation. The causal connection element of standing, including the requirement that a plaintiff's injury be fairly traceable to a challenged action of a defendant does not create an onerous standard. *Carter*, 822 F.3d at 55. It is a lower standard than proximate causation, such that a defendant's conduct that indirectly injures a plaintiff after intervening conduct by another person may suffice. *Id.* Here, Plaintiff claims that despite being aware of various irregularities, the Commission "failed to address clear evidence of manipulation."[21] But any connection between the alleged inaction of the Commission and Plaintiff's alleged monetary harm is merely speculative.

---

[21] ECF No. 13 at 59 ¶ 155.

Next, Plaintiff has failed to allege how those economic injury would redressed by the lawsuit. Any declaratory or injunctive relief as to the Commission would have no impact on Plaintiff's economic injuries and would not remedy the past wrong. Moreover, as explained below, Plaintiff's alleged economic injuries are barred by sovereign immunity. *See, e.g.*, *Kapoor v. Sec. of U.S. Dep't Labor*, No. 19-CV-438 (VLB), 2020 WL 13546645, at *3 (D. Conn. Feb. 25, 2020) (refusing to reopen dismissal for lack of standing where sovereign immunity blocked monetary recovery and injunctive relief would not redress plaintiff's claims).

**2. Sovereign Immunity**

Alternatively, even if Plaintiff showed that he has standing to pursue any claims against the Commission, the Court concludes that Plaintiff's claims are barred by sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (same). Because this immunity is "jurisdictional in nature," a plaintiff must show that its claims fall under a valid exception to meet "the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Absent evidence of such a waiver, a court must dismiss a claim for lack of subject matter jurisdiction. *See, e.g.*, *Tabor v. United States*, No. 22-CV-795, 2024 WL 4335601, at *6 (D. Conn. Sept. 27, 2024). Here, Plaintiff has failed to identify any statute that purported sovereign immunity over his claims. And for the reasons stated in the Commission's well-reasoned memorandum, certain statutes

that waive sovereign immunity sovereign immunity, including the Federal Tort Claims Act and the APA, are inapplicable to Plaintiff's claims.[22]

## IV. CONCLUSION

For the reasons stated above, Defendants' motions to dismiss, ECF Nos. 46, 48, and 63, are **granted**. All claims are dismissed without prejudice and all other pending motions are denied as moot.

Considering Plaintiff's *pro se* status, the Court will grant an opportunity to amend the complaint. Plaintiff may file a second amended complaint on or before **March 30, 2026**. The filing of an amended complaint completely replaces the initial complaint and thus, Plaintiff may not merely incorporate by reference the allegations or exhibits of any prior complaint. Any amended complaint should clearly state any separate claims or causes of action as well as any requested relief. Beyond this opportunity for Plaintiff to timely file an amended complaint if he wishes, the Court will not allow Plaintiff to file further amendments to the complaint absent a showing of good cause for not previously alleging such amendments. After filing the second amended complaint, Plaintiff is on notice that he may not file another document purporting to amend the complaint without leave of court. Failure to comply with this directive may result in documents being stricken from the record.

**SO ORDERED.**

Hartford, Connecticut
March 9, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

[22] ECF No. 63-2 at 29–33; ECF No. 67 at 4–5.