**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Jason Rolo, | Case No.:  _3:24-cv-02053_ |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND CONSTITUTIONAL PRINCIPLES** |
| v. | |
| SECURITIES & EXCHANGE COMMISSION | |
| FINANCIAL INDUSTRY REGULATORY AUTHORITY | |
| DEPOSITORY TRUST & CLEARING CORPORATION | |
| JOHN DOE 1 - 100 | **JURY TRIAL DEMANDED** |
| Defendants, | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT SECURITIES AND EXCHANGE COMMISSION'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................1

ARGUMENT.........................................................................2

I.   THE COMMISSION MISREADS COUNT III — THE CLAIM IS SPECIFIC,
     NOT GENERALIZED.....................................................................2

II.  PLAINTIFF HAS ARTICLE III STANDING — THE SEC'S OWN REGULATORY
     FRAMEWORK CONFIRMS IT...............................................................3

     A.  The Injury Is Real, Personal, and Ongoing Right Now......................................3

     B.  The Notice of Effectiveness Made the Transaction Legally Operative
         on Terms Whose Settlement Consequences Were Foreseeable from the
         Face of the S-1.....................................................................4

             II.B.1.  The Transaction's Own Terms Made Harm
         Foreseeable............................4
             II.B.2.  FINRA's Own Rules 6440 and 6490 Confirm
         Foreseeability.......................5
             II.B.3.  Count III Does Not Depend on SEC Foresight of the Exact
         Halt...............5
             II.B.4.  Alliance for Hippocratic Medicine Is Structurally
         Distinguishable...........6
             II.B.5.  The Commission Has Not Repudiated the Framework —
                 The Injury Is Live....................................................6

         C.  A Declaration Would Meaningfully Redress an Injury That Persists
         Today.............7

III. PLAINTIFF IS AMONG THE INVESTORS SECTION 17A WAS DESIGNED TO
     PROTECT.................9

IV.  THE APA CLAIM IS LEGALLY SOUND AND FACTUALLY
     SPECIFIC....................................9

     A.  The Notice of Effectiveness Is Textbook Final Agency Action.......................9

B.  The SEC Had Discretion to Refuse or Condition Acceleration — That Discretion, Exercised Without Considering §17A, Is the APA Claim..................10

C.  Calling It a 'Securities Act Action' Does Not Make the Exchange Act Disappear....................................................................................12

D.  Disclosing a Legal Problem Is Not the Same as Solving One.........................13

IV.D.1.  Disclosure and Structural Lawfulness Are Distinct Inquiries...............13
IV.D.2.  The APA Asks What the Agency Considered, Not What Was Disclosed..........14
IV.D.3.  The Commission's Own Comment Process Forecloses the Ministerial Label....15

E.  The Absence of the Administrative Record Makes Merits Dismissal Premature.......15

V.    SOVEREIGN IMMUNITY CANNOT SHIELD REVIEWABLE AGENCY ACTION.............................16

VI.   THE COMMISSION'S REQUEST FOR DISMISSAL WITH PREJUDICE EXCEEDS WHAT THE LAW ALLOWS..............................................................................17

CONCLUSION..............................................................................17

**TABLE OF AUTHORITIES**

**Cases**

Ashcroft v. Iqbal, 556 U.S. 662 (2009)....................................................................................3

Baur v. Veneman, 352 F.3d 625 (2d Cir. 2003)........................................................................4

Bennett v. Spear, 520 U.S. 154 (1997)....................................................................................10

Bowen v. Massachusetts, 487 U.S. 879 (1988).......................................................................16

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971).................................15

Clarke v. Securities Industry Ass'n, 479 U.S. 388 (1987).........................................................9

Clapper v. Amnesty Int'l USA, 568 U.S. 398 (2013).................................................................4

Dep't of Commerce v. New York, 588 U.S. 752 (2019)...........................................................4, 6

Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1 (2020)..................3, 15, 17

FDA v. Alliance for Hippocratic Medicine, 602 U.S. 367 (2024)...........................................*passim*

Foman v. Davis, 371 U.S. 178 (1962)......................................................................................17

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167 (2000)..................................4

FTC v. Standard Oil Co. of California, 449 U.S. 232 (1980)...................................................10

Frozen Food Express v. United States, 351 U.S. 40 (1956).....................................................10

Haines v. Kerner, 404 U.S. 519 (1972)...................................................................................1, 3

Larson v. Valente, 456 U.S. 228 (1982).....................................................................................9

Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC,
    797 F.3d 160 (2d Cir. 2015)................................................................................................17

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).............................................................4, 8

Massachusetts v. EPA, 549 U.S. 497 (2007)...........................................................................7, 8

Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,
    567 U.S. 209 (2012)...............................................................................................................9

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007).......................................................8

Michigan v. EPA, 576 U.S. 743 (2015)....................................................................................13

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983)..........11, 12, 14, 15, 17

Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004)..........................................10

Sackett v. EPA, 598 U.S. 651 (2023).......................................................................................10

Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185 (2d Cir. 2008)........................................1, 3

Spokeo, Inc. v. Robins, 578 U.S. 330 (2016)..............................................................................3

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)......................................................8

Susan B. Anthony List v. Driehaus, 573 U.S. 149 (2014)............................................................4

Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv., 586 U.S. 9 (2018)..................................3, 9, 10

**Statutes**

5 U.S.C. §§ 702, 704, 706 (Administrative Procedure Act)................................................passim

15 U.S.C. § 77e (Securities Act § 5)...........................................................................................10

15 U.S.C. § 77w (Securities Act § 24)....................................................................................13, 17

15 U.S.C. § 78q-1 (Exchange Act § 17A)................................................................................9, 12

15 U.S.C. § 78s(b) (Exchange Act § 19(b))...............................................................................12

**Regulations and Rules**

17 C.F.R. § 200.30-1....................................................................................................................10

17 C.F.R. § 201.431(e)..................................................................................................................10

17 C.F.R. § 230.461 (acceleration of effectiveness).......................................................1, 11, 16, 17

17 C.F.R. § 240.17ad-22(e)(1)........................................................................................................1

FINRA Rule 6440...........................................................................................................................5

FINRA Rule 6490...........................................................................................................................5

**PRELIMINARY STATEMENT**

The Securities and Exchange Commission asks this Court to dismiss Count III of the Second Amended Complaint ("SAC") with prejudice. This Court must read the SAC as a pro se pleading, construed liberally to raise the strongest arguments it suggests. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Read fairly, Count III presents serious and legally grounded questions that the Commission's motion does not adequately answer.

Count III does not challenge the Commission's enforcement discretion or failure to investigate third parties. It challenges a specific, identified, legally operative agency action — the November 18, 2022 Notice of Effectiveness, issued through the Commission's discretionary acceleration process under 17 C.F.R. § 230.461 — that gave legal force to a transaction structure whose own disclosed terms placed settlement mechanics, entitlement consequences, and end-of-life trading at the center of the event, while identifying no clear, transparent, or enforceable rule-based mechanism for the foreseeable problems that would arise when MMTLP was deleted and its replacement exited the DTC ecosystem. SAC ¶¶ 103-109.

Plaintiff Jason Todd Rolo is among the investors Section 17A of the Exchange Act was designed to protect: a retail market participant whose securities position was stranded outside the national clearance-and-settlement system by a framework lacking the "well-founded, clear, transparent, and enforceable legal basis" that 17 C.F.R. § 240.17ad-22(e)(1) requires. His broker confirmed in writing that his resulting NBH position cannot be transferred electronically through ACATS or DTC, would remain stranded if his account were transferred, and is not eligible for certificate or

1

alternative transfer. SAC ¶ 67; Ex. 19. That injury is concrete, ongoing, and fairly traceable to the framework the Notice of Effectiveness put into legal operation. The motion should be denied.

## ARGUMENT

## I.   THE COMMISSION MISREADS COUNT III — THE CLAIM IS SPECIFIC, NOT GENERALIZED.

This Court dismissed the First Amended Complaint against the SEC because "any connection between the alleged inaction of the Commission and Plaintiff's alleged monetary harm is merely speculative" and because any relief "would not remedy the past wrong." ECF No. 98 at 9. The Court also found that Plaintiff "failed to identify any statute" waiving sovereign immunity. *Id.* at 10. The SAC was drafted to cure each of those specific findings directly.

The FAC alleged that the Commission "failed to address clear evidence of manipulation" — precisely the generalized inaction theory the Court rejected. The SAC does not repeat that theory. Instead, SAC ¶ 103 limits Count III to "reviewable final agency action, or other reviewable discrete agency action, by which the SEC approved, accepted, maintained, or otherwise gave legal effect to the specific transaction-and-settlement framework applied to the MMTLP/Next Bridge event." SAC ¶ 105 identifies the November 18, 2022 Notice of Effectiveness as "one concrete candidate" for that reviewable action. SAC ¶¶ 101-102 expressly state that Count III "does not seek money damages" and "does not seek an order compelling any investigation, enforcement action, or criminal referral." And SAC ¶¶ 67, 108-109 allege an ongoing present injury — not a past wrong — confirmed in writing by Plaintiff's broker. The SAC was drafted to address the deficiencies identified in the Court's prior ruling. The Commission's motion does not meaningfully engage those changes.

2

The Commission converts that carefully bounded claim into the same generalized-inaction theory this Court dismissed at the FAC stage — a theory the SAC explicitly disclaims at SAC ¶¶ 103-104. That is not a permissible Rule 12 argument. The Court must accept the SAC's well-pled factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Plaintiff proceeds pro se, the pleading must also be construed liberally to raise the strongest arguments it suggests. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). The Court may not substitute a defendant's recharacterization of the claim for the claim actually pled. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19-20 (2020). The APA carries a strong presumption of judicial review. *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 26 (2018). The Commission has not overcome it,

## II.   PLAINTIFF HAS ARTICLE III STANDING — THE SEC'S OWN REGULATORY FRAMEWORK CONFIRMS IT.

### A.   The Injury Is Real, Personal, and Ongoing Right Now.

Plaintiff's injury satisfies every element of *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). It is *concrete*: Plaintiff holds a securities interest locked outside ordinary DTC-based trading and transfer channels, confirmed in writing by his own broker. SAC ¶¶ 63, 67; Ex. 19. It is *particularized*: the harm attaches specifically to Plaintiff's 1,675-share position and the resulting NBH interest that cannot be traded, transferred electronically, or moved through ordinary settlement channels. SAC ¶ 10. It is *ongoing*: the position remains non-transferable and non-tradeable as of the date of this filing — a present, daily constraint on Plaintiff's property rights, not a past harm fully resolved. SAC ¶¶ 108-109.

The Commission frames the injury as stemming exclusively from FINRA's December 9 halt. That framing presupposes the answer to the causation question and is not a proper basis for dismissal. The correct inquiry is whether the challenged agency action is a legally operative link in the chain that produced the harm — not whether it was the sole cause. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000). The Notice of Effectiveness is exactly that link: without it, the NBH spin-off could not have lawfully proceeded, and Plaintiff would never have held an untradeable NBH position. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

## B.   The Notice of Effectiveness Made the Transaction Legally Operative on Terms Whose Settlement Consequences Were Foreseeable from the Face of the S-1.

The Commission demands proximate causation when Article III requires only that an injury be fairly traceable to the challenged action. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The Supreme Court has explained that traceability requires "no more than de facto causality" and is satisfied where the injury follows from the predictable effect of government action on the decisions of third parties. *Dep't of Commerce v. New York*, 588 U.S. 752, 768-69 (2019). The Second Circuit applies the same standard. *Baur v. Veneman*, 352 F.3d 625, 631-32 (2d Cir. 2003). It is plausibly satisfied here.

### II.B.1.   The Transaction's Own Terms Made Harm Foreseeable.

The Notice of Effectiveness gave legal force to specific, disclosed transaction terms: no DTC eligibility for NBH shares, no public market for NBH shares, and immediate cancellation of MMTLP preferred shares upon completion. SAC ¶¶ 45-46; Ex. 9. Those were the operational core of the transaction. They plausibly made it foreseeable that broker-dealers, FINRA, and

4

clearing infrastructure would face unresolved delivery, entitlement, and settlement problems as the event played out. The Notice of Effectiveness, by making operative a transaction structure that disabled the ordinary DTC-based settlement mechanism at the moment of cancellation, is a legally operative and necessary link in the causal chain that produced Plaintiff's injury.

### II.B.2.  FINRA's Own Rules 6440 and 6490 Confirm Foreseeability.

FINRA Rule 6490 expressly lists "significant uncertainty in the settlement and clearance process" as a deficiency factor for corporate actions. FINRA Rule 6440 expressly authorizes an extraordinary-event halt where there is "significant uncertainty in the settlement and clearance process." FINRA's own MMTLP FAQ confirmed the halt was issued in part because trades might not settle in an orderly manner due to the coming cancellation of MMTLP shares, the loss of MMTLP's DTC eligibility, and the anticipated non-DTC-eligibility of NBH. SAC Ex. 6. This is the point the Commission does not answer.

Those rules were in place when the Commission issued the Notice of Effectiveness. Their existence confirms that the settlement and clearance problems Plaintiff alleges were not unforeseeable contingencies — they were the specific conditions FINRA's governing rules were designed to address. That argument is difficult to reconcile with FINRA's own rule framework, which identified exactly those conditions as grounds for regulatory concern. That is enough to plausibly satisfy traceability at this stage.

### II.B.3.  Count III Does Not Depend on SEC Foresight of the Exact Halt.

The Commission will argue that it had no reason to know on November 18, 2022 that FINRA would later revise the Daily List entry or impose a halt. Count III does not depend on pleading that the SEC foresaw FINRA's exact December conduct. It depends on the SEC having made

5

legally operative a transaction structure whose own disclosed terms — non-DTC-eligible replacement shares, immediate cancellation of the underlying security, no public market — made settlement and entitlement dislocation foreseeable for any holder whose position could not be resolved before deletion. The foreseeability runs to the structure of the transaction, not to the precise date or mechanism of any particular downstream event. That is the correct causal theory under *Dep't of Commerce v. New York*, 588 U.S. 752, 768-69 (2019), and it is the theory the SAC pleads.

### II.B.4.   Alliance for Hippocratic Medicine Is Structurally Distinguishable.

In *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 383-84 (2024), the Court denied standing because the doctors' injury required a chain of legally uncompelled third-party choices: a patient's independent decision to take mifepristone, independent complications requiring emergency care, and an independent decision to seek care at those specific practices. The government action required none of those steps. Here, the Notice of Effectiveness required implementation of specific disclosed transaction terms by FINRA, broker-dealers, and clearing agencies. Once effective, those terms governed what those actors were required to implement. That is not speculation about voluntary third-party choices; it is the required implementation of transaction terms the Commission itself put into legal force. *Alliance* does not reach that scenario.

### II.B.5.   The Commission Has Not Repudiated the Framework — The Injury Is Live.

The Commission has taken no action to disavow or repudiate the framework the Notice of Effectiveness put into legal operation. FIF's September and October 2023 notice to SEC Trading and Markets personnel of unrecoverable lent shares, certificate shortfalls, and unresolved

6

customer-entitlement problems confirms that Plaintiff's injury is ongoing and that the framework continued to produce present legal consequences well after November 2022. SAC ¶¶ 59-60; Ex. 17. Later Next Bridge filings continued to reflect that the shares were not publicly traded and not eligible for electronic transfer through DTC or any other established clearing corporation, while Plaintiff's position remained stranded. SAC ¶ 64; Ex. 21. The challenged framework did not exhaust its operative effect on the date of the Notice of Effectiveness. The injury is live.

## C.  A Declaration Would Meaningfully Redress an Injury That Persists Today.

This Court's prior ruling found that any relief "would have no impact on Plaintiff's economic injuries and would not remedy the past wrong." ECF No. 98 at 9. That finding rested on the FAC's framing of the injury as a completed past event — the December 2022 halt and deletion. The SAC presents a fundamentally different injury: an ongoing present constraint on Plaintiff's property rights that persists as of the date of this filing. That is not the same claim the Court rejected.

Plaintiff's broker confirmed in writing — after the events of December 2022 — that his NBH position cannot be transferred electronically through ACATS or DTC, would remain stranded if his account were transferred, and is not eligible for certificate or alternative transfer. SAC ¶ 67; Ex. 19. That confirmation is not a description of a past wrong. It is a present-tense statement of a continuing legal constraint. The injury the SAC seeks to redress is not the halt or the deletion — it is the ongoing confinement of Plaintiff's position outside ordinary market channels under a legal framework that continues to have operative effect today.

The Commission applies an impossibly demanding redressability standard. Article III requires only that a favorable ruling would "reduce, mitigate, or otherwise redress the injury in

7

meaningful part." *Massachusetts v. EPA*, 549 U.S. 497, 525-26 (2007). The Commission will argue that a ruling for Plaintiff would not make NBH DTC-eligible, would not restore MMTLP, and would not unwind the transactions that have already occurred. That is correct — and it is irrelevant. Plaintiff does not ask this Court to restore the pre-2022 status quo, guarantee DTC eligibility, or reverse completed corporate events. He asks for a declaration that the Commission acted contrary to law in making legally operative a transaction structure that lacked the rule-based foundation required by the Exchange Act, and for prospective equitable relief addressing the continuing legal consequences of that framework on his present position. *Massachusetts v. EPA* holds that even partial, forward-looking redress satisfies Article III. Complete restoration is not required. *Id.*

Plaintiff's NBH position remains locked outside ordinary DTC-based trading and transfer channels today. The challenged agency action continues to supply the operative legal framework under which that structure persists. A declaration that the Commission acted contrary to law — together with prospective equitable relief addressing the continuing legal consequences of that framework — would alter the legal basis currently burdening Plaintiff's position. That is precisely the nature of prospective APA relief that *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), confirms is appropriate where the underlying dispute is "real and substantial" and the harm persists under the challenged legal framework.

The Commission's reliance on *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), is inapposite. *Steel Co.* involved claims for disclosure of already-filed reports — a harm fully resolved before suit. Plaintiff's injury persists today. As a supplemental basis, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992), holds that a plaintiff accorded a procedural right to protect concrete interests may assert that right without meeting all the normal standards for

8

redressability. The requirements of Section 17A and Rule 17Ad-22(e)(1) that clearing activity rest on a lawful, enforceable foundation are protections designed to prevent exactly what happened here. *Larson v. Valente*, 456 U.S. 228, 243-44 n.15 (1982).

## III.  PLAINTIFF IS AMONG THE INVESTORS SECTION 17A WAS DESIGNED TO PROTECT.

Under the APA, a plaintiff must fall within the "zone of interests" protected by the statute invoked. *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 396 (1987). The Supreme Court has described this test as "not demanding": it excludes only plaintiffs whose interests are "so marginally related to or inconsistent with the purposes" of the statute that Congress could not reasonably have intended to permit suit. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012). Section 17A was enacted to protect investors and the public interest by ensuring that clearance and settlement operates on a prompt, accurate, and lawfully grounded basis. 15 U.S.C. § 78q-1. Plaintiff is a retail investor whose securities position was stranded outside the national clearance-and-settlement system. He is among the investors Section 17A was designed to safeguard — not a bystander, not a competitor, not a market professional with independent resources. The zone-of-interests test is satisfied, and the strong presumption of judicial review, *Weyerhaeuser*, 586 U.S. at 26, reinforces that it should not be applied as a barrier to a meritorious claim by the type of investor the statute was enacted to protect.

## IV.  THE APA CLAIM IS LEGALLY SOUND AND FACTUALLY SPECIFIC.

### A.  The Notice of Effectiveness Is Textbook Final Agency Action.

9

The Notice of Effectiveness satisfies both prongs of *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). First, it consummated the Commission's review process — the legally operative endpoint of months of staff comment letters and successive registration amendments. SAC ¶ 45. Second, it determined rights and obligations and caused immediate legal consequences to flow: absent it, Section 5(a) of the Securities Act, 15 U.S.C. § 77e, would have barred the NBH spin-off entirely.

The Commission's argument that staff effectiveness determinations are routine does not defeat finality. Even routine agency orders are reviewable when they have "immediate and practical impact" on the rights of the challenging party. *Frozen Food Express v. United States*, 351 U.S. 40, 44 (1956). The Notice of Effectiveness removed the Section 5(a) barrier to a specific transaction with specific disclosed terms — that is immediate and direct legal consequence, not a preliminary step. *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 239-40 (1980). Delegation to staff under 17 C.F.R. § 200.30-1 does not strip the action of finality; delegated determinations are "deemed the action of the Commission." 17 C.F.R. § 201.431(e). *Sackett v. EPA*, 598 U.S. 651, 678-79 (2023); *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). The strong presumption of judicial review counsels against reading finality narrowly where a concrete government act produced documented, ongoing harm. *Weyerhaeuser*, 586 U.S. at 26.

**B.  The SEC Had Discretion to Refuse or Condition Acceleration — That Discretion, Exercised Without Considering §17A, Is the APA Claim.**

The Commission's central defense to the arbitrary-and-capricious claim is that the Notice of Effectiveness was purely ministerial. That argument fails on the face of the Commission's own regulations — and its defeat is important, because it reframes the entire case.

Under 17 C.F.R. § 230.461, an issuer may request acceleration of the effective date of a registration statement. The Commission — and by delegation, its staff — has express discretion to grant or deny that request, and to condition acceleration on additional information or other terms it deems appropriate. NBH requested that its registration statement become effective on November 18, 2022. Commission staff granted that request. That grant was not automatic: it required the exercise of staff judgment about whether to make the transaction operative on those disclosed terms.

When an agency exercises discretion — even delegated discretion — it must do so in accordance with relevant statutory and regulatory requirements. *Motor Vehicle Manufacturers Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). Staff had discretion to grant, deny, or condition the acceleration request. The SAC plausibly alleges that in exercising that discretion, staff failed to consider whether the transaction structure complied with the Exchange Act's clearance-and-settlement requirements — the single most important question for a spin-off whose own S-1 disclosed that MMTLP would cease to be DTC-eligible and its replacement would not be DTC-eligible at all.

More precisely: the Commission spent months reviewing the NBH registration statement through multiple rounds of comment letters. Its staff apparently never asked the one question most consequential to the investors most directly affected — what rule governs fail obligations, unresolved short positions, and customer entitlements at the moment the underlying security is cancelled and the replacement is removed from the DTC ecosystem entirely? That is the *State Farm* failure-to-consider claim at its sharpest: not that the Commission failed to predict the future, but that it conducted an extended substantive review — which it now invokes to claim regularity — and still failed to address the factor most directly relevant to investor protection. An

11

agency that invokes its own review process to establish regularity assumes the corresponding obligation under *State Farm* to show it considered the relevant factors. 463 U.S. at 43.

## C.  Calling It a 'Securities Act Action' Does Not Make the Exchange Act Disappear.

The Commission argues that Exchange Act Sections 17A and 19 are "facially inapplicable" because the Notice of Effectiveness arises under Securities Act Section 8(a). SEC Br. at 13. That argument conflates the procedural vehicle for the agency action with the legal framework governing the consequences the action put into effect — and it fundamentally misapprehends the scope of APA review.

Plaintiff does not contend that Sections 17A and 19(b) govern the act of issuing a notice of effectiveness in the abstract. He contends that the transaction structure the Commission's discretionary acceleration decision gave operative legal force to — a spin-off that exited the DTC ecosystem, cancelled the underlying security, and provided no identified rule-based reconciliation mechanism for unresolved obligations — was contrary to the statutory and regulatory framework governing clearance and settlement. The APA's standard, 5 U.S.C. § 706(2)(A) and (C), applies to all reviewable final agency action. An agency cannot insulate consequential conduct from APA review by exercising it through a procedural vehicle governed by a different statutory section.

Section 17A, 15 U.S.C. § 78q-1, requires the national clearance-and-settlement system to promote prompt and accurate settlement and protect investors. Rule 17Ad-22(e)(1) requires that each material aspect of clearing-agency activity rest on a "well-founded, clear, transparent, and enforceable legal basis." Section 19(b), 15 U.S.C. § 78s(b), requires SROs to file rule changes before imposing new rule-like standards. The SAC plausibly alleges the Commission gave

12

operative legal effect to a transaction structure that lacked those protections. SAC ¶¶ 88-96, 106. Additionally, under *Michigan v. EPA*, 576 U.S. 743, 750-52 (2015), when an agency exercises authority affecting parties' rights, it must consider all relevant statutory factors — failure to do so is also in excess of statutory authority under § 706(2)(C). The Commission's motion does not address this prong.

**D.   Disclosing a Legal Problem Is Not the Same as Solving One.**

The Commission's most persistent argument is that it cannot have acted arbitrarily or capriciously because the S-1 disclosed that NBH shares would not be DTC-eligible. This argument fails for three independent reasons.

### IV.D.1.   Disclosure and Structural Lawfulness Are Distinct Inquiries.

Securities Act § 24, 15 U.S.C. § 77w, expressly provides that effectiveness is not a finding that the Commission has "passed upon the merits of, or given approval to, such security." If effectiveness carries no implied approval of the transaction's merits, it equally carries no finding that the transaction's settlement structure complies with the Exchange Act. The Commission cannot invoke § 77w to limit its approval liability, arguing effectiveness is ministerial with no merits review, while simultaneously invoking the S-1 disclosures to defeat the arbitrary-and-capricious claim on the ground that the structure was disclosed and therefore lawful. Those positions are logically inconsistent.

The inconsistency runs deeper still. The Commission is not a passive recipient of NBH's S-1 disclosures. Through multiple rounds of comment letters between July and November 2022, Commission staff actively reviewed the NBH registration statement — including the disclosures about DTC ineligibility, the cancellation of MMTLP shares, and the absence of a public market

13

for NBH. Staff reviewed those disclosures and said nothing about the absence of any rule-based mechanism for resolving fail obligations, unresolved short positions, and customer entitlements at the moment of cancellation. Having affirmatively reviewed and accepted those disclosures through a substantive comment process, the Commission cannot now argue that the disclosures themselves insulate its decision from APA review. The Commission's active engagement with the S-1 disclosures is not a defense to the arbitrary-and-capricious claim — it is part of the claim. Staff looked at the settlement structure, said nothing, and accelerated the transaction. That is the failure *State Farm* prohibits.

To be precise about what Plaintiff is and is not claiming: Plaintiff does not claim the SEC had to guarantee the economics or merits of NBH, evaluate whether it was a sound investment, or ensure that MMTLP holders received fair value. Those are issuer responsibilities, and the open-disclosure regime Congress established is designed to address them. Plaintiff claims something entirely different: that the SEC could not lawfully make operative a settlement-sensitive transaction structure — one that would remove the underlying security from the DTC ecosystem and cancel it on a date certain — while identifying no rule-based mechanism governing the foreseeable clearance, entitlement, and transfer consequences for holders whose positions could not be resolved before that date. That is not a request for merit regulation. It is a claim that the Commission's discretionary acceleration decision failed to consider the Exchange Act's clearance-and-settlement requirements. Those are different claims, and the Commission's brief collapses them.

### IV.D.2.   The APA Asks What the Agency Considered, Not What Was Disclosed.

Under *State Farm*, the APA asks what the agency considered, not merely what was disclosed. 463 U.S. at 43. Disclosing non-DTC-eligibility does not establish that the Commission

14

considered whether there was a lawful, enforceable rule-based mechanism governing the clearance-and-settlement consequences at the moment of cancellation. Under *Dep't of Homeland Sec. v. Regents*, 591 U.S. 1, 30-34 (2020), agency action is also arbitrary and capricious when the agency fails to consider the reliance interests of those most directly affected — here, investors who held MMTLP and had a concrete reliance interest in access to an ordinary quoted market before the security ceased to exist, made uniquely significant by the transaction's own disclosed terms. The Commission made the transaction effective without any identified consideration of what would happen to those investors.

### IV.D.3.   The Commission's Own Comment Process Forecloses the Ministerial Label.

An agency that conducts substantive multi-month review cannot simultaneously claim ministerial authority to escape arbitrary-and-capricious scrutiny of that same review. If the process was substantive enough to warrant a presumption of regularity, it was substantive enough to have required considering whether the settlement structure complied with the Exchange Act. The SAC plausibly alleges that the Commission did not address that question. That omission is precisely what *State Farm* prohibits. 463 U.S. at 43.

### E.   The Absence of the Administrative Record Makes Merits Dismissal Premature.

Judicial review of arbitrary-and-capricious agency action is conducted on the administrative record before the agency when it made its decision. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Without that record, a court cannot assess what factors the agency considered or failed to consider — which is precisely the inquiry *State Farm* requires. 463 U.S. at 43.

15

The Commission has produced no administrative record. At the Rule 12 stage, the absence of the administrative record makes it premature to reject Plaintiff's arbitrary-and-capricious theory on the merits — the Court cannot find an agency's reasoning adequate without examining the record of what that reasoning actually was. If the administrative record reflected that Commission staff considered and addressed the clearance-and-settlement implications of a transaction whose disclosed terms placed settlement mechanics at the center of the event, the Commission could have said so and produced it. Its silence on this point is consistent with, and supports the plausibility of, Plaintiff's claim that the relevant factor was never considered. The appropriate response to that gap, if the Court finds it significant, is production of the administrative record — not dismissal with prejudice.

## V.    SOVEREIGN IMMUNITY CANNOT SHIELD REVIEWABLE AGENCY ACTION.

This Court's prior ruling dismissed the SEC count on sovereign immunity because Plaintiff "failed to identify any statute" waiving immunity. ECF No. 98 at 10. The SAC cures that deficiency directly and explicitly.

The APA expressly waives federal sovereign immunity for actions "seeking relief other than money damages" where a person "suffer[s] legal wrong because of agency action." 5 U.S.C. § 702. SAC ¶¶ 101-102 identify § 702 and § 704 by name as the waiver provisions on which Count III rests. The Supreme Court confirmed in *Bowen v. Massachusetts*, 487 U.S. 879, 891-92 (1988), that this waiver is broad, applies to suits for prospective equitable and declaratory relief, and should not be narrowed beyond what Congress expressly provided. Count III seeks exclusively non-monetary, prospective relief tied to the Notice of Effectiveness, issued through the Commission's discretionary acceleration process under 17 C.F.R. § 230.461. The FAC failed

16

to identify a waiver statute. The SAC identifies §§ 702 and 704 explicitly. The SAC addresses the deficiency on which the prior sovereign-immunity ruling rested.

## VI.  THE COMMISSION'S REQUEST FOR DISMISSAL WITH PREJUDICE EXCEEDS WHAT THE LAW ALLOWS.

Dismissal with prejudice requires more than disagreement with Plaintiff's present theory. Under Rule 15, denial of further leave is ordinarily justified only by reasons such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190-91 (2d Cir. 2015). None is present here. Plaintiff amended promptly in response to the Court's prior order, materially narrowed Count III, and tied it to a specific reviewable agency action and an ongoing present injury. The Commission has not shown futility. At minimum, its request for dismissal with prejudice should be denied.

### CONCLUSION

The Commission's motion to dismiss Count III should be denied. Read as it must be — as a pro se pleading construed to raise its strongest arguments — Count III presents a legally grounded, factually specific, and ongoing claim. Plaintiff has Article III standing: a concrete, particularized, and ongoing injury fairly traceable to the Commission's Notice of Effectiveness under Second Circuit and Supreme Court precedent, meaningfully redressable by prospective equitable relief. He falls squarely within Section 17A's zone of interests. His APA claim is sound: the Notice of Effectiveness is reviewable final agency action; the Commission's discretionary acceleration authority under § 230.461 destroys the ministerial defense; the arbitrary-and-capricious claim is sharpened — not defeated — by the Commission's own extended review process and its failure

17

to identify any filed-rule mechanism governing the settlement consequences of the transaction it made effective; the disclosure defense fails both logically under § 77w and substantively under *State Farm*; the reliance-interests claim is independently supported by *Regents*; and the absence of the administrative record makes merits dismissal premature. Sovereign immunity is waived. With-prejudice dismissal does not meet the *Loreley* standard.

A retail investor whose securities position was stranded outside the DTC ecosystem by a transaction the Commission made legally operative — and who has a written confirmation from his own broker that his position cannot be transferred, cannot be moved, and would remain behind if he transferred his account — stands before this Court asking whether the framework that produced that result had a lawful foundation. The APA gives him the right to that answer. The motion should be denied.

Respectfully submitted,

Dated: May 4, 2026

**/s/ Jason Todd Rolo**

Jason Todd Rolo
L6 Surrey Ln
Torrington, CT 06790
413-657-9082
mastcab@yahoo.com
Plaintiff, Pro Se

18

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2026, I filed the foregoing Memorandum of Law in Opposition to the SEC's Motion to Dismiss the Second Amended Complaint electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by e-mail to all counsel of record by operation of the Court's electronic filing system.

**/s/ Jason Todd Rolo**
Jason Todd Rolo
Plaintiff, Pro Se

19