**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF CONNECTICUT**

Jason Rolo,

                            Plaintiff,

    v.

SECURITIES & EXCHANGE COMMISSION

FINANCIAL INDUSTRY REGULATORY AUTHORITY

DEPOSITORY TRUST & CLEARING CORPORATION

JOHN DOE 1 - 100

                            Defendants,

Case No.:  3:24-cv-02053

**PLAINTIFF JASON ROLO'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT FINRA'S MOTION TO DISMISS
COUNT I OF THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 2

ARGUMENT ..................................................................................................................... 4

I.   FINRA'S IMMUNITY ARGUMENT IS CIRCULAR AND FAILS AT THE THRESHOLD
………….................................................................................................................... 4

   A.  The Functional Inquiry Requires Identifying the Specific Act, Not the General Topic... 5

   B.  The "No Exceptions" Rule Does Not Apply to Threshold Authority Challenges ……... 7

   C.  FINRA's Equitable-Relief Cases Do Not Resolve the Threshold Question ..................... 9

   D.  FINRA's Own Concessions Confirm the Filed-Rule Limit ........................................... 10

II.   SECTION 27 OF THE EXCHANGE ACT SUPPLIES PERSONAL JURISDICTION
.................................................................................................................................. 12

III.   SUBJECT-MATTER JURISDICTION EXISTS UNDER 28 U.S.C. § 1331 AND §
78AA(A) ……………………………………………………………………………… 15

IV.  PLAINTIFF HAS CONCRETE ARTICLE III STANDING ................................................ 16

   A.  Injury in Fact ....................................................................................................... 16

   B.  Traceability .......................................................................................................... 18

   C.  Redressability ....................................................................................................... 19

V.   THE ABSENCE OF A PRIVATE DAMAGES REMEDY DOES NOT BAR
DECLARATORY RELIEF ……………………………………………………………… 21

VI.  LAW OF THE CASE DOES NOT BAR COUNT I ............................................................. 23

VII.  COUNT I STATES A PLAUSIBLE CLAIM FOR DECLARATORY RELIEF ............................................................................................................................... 24

VIII.  THE OTHER MMTLP DISMISSAL CASES FINRA CITES DO NOT CONTROL COUNT I ........................................................................................................ 25

IX.  DISMISSAL WITH PREJUDICE IS UNWARRANTED ................................................................................................................................... 25

CONCLUSION ............................................................................................................. 26

**TABLE OF AUTHORITIES**

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011) ...................................... 15

*Arizona v. California*, 460 U.S. 605 (1983) ................................................. 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................... 25

*Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023) ...................................... 22

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 25

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) ...................................... 19

*Cashmore v. FINRA*, No. 18-CV-1198S, 2020 WL 6566302 (W.D.N.Y. Nov. 9, 2020) .............. 9

*Correspondent Servs. Corp. v. First Equities Corp.*, 442 F.3d 767 (2d Cir. 2006) .................... 15

*D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93 (2d Cir. 2001) ...................................... 4, 5

*Desiderio v. NASD*, 191 F.3d 198 (2d Cir. 1999) ...................................... 21

*DL Cap. Grp. LLC v. NASDAQ Stock Mkt., Inc.*, 409 F.3d 93 (2d Cir. 2005) .......................... 4, 8

*Feins v. AMEX*, 81 F.3d 1215 (2d Cir. 1996) ...................................... 21, 22

*Foman v. Davis*, 371 U.S. 178 (1962) ...................................... 26

*Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010) ...................................... 22

*Free Holdings, Inc. v. McCoy*, No. 23-644, 2024 WL 177447 (2d Cir. Jan. 17, 2024) ..........….. 17

*Gallagher v. FINRA, Inc.*, No. 21-13605, 2022 WL 1815594 (11th Cir. June 3, 2022) ............. 10

*Galette v. New Jersey Transit Corp.*, 607 U.S. ___, No. 24-1021 (Mar. 4, 2026) ...................... 11

*Haines v. Kerner*, 404 U.S. 519 (1972) ...................................... 27

*Hensley v. TD Ameritrade, Inc.*, No. 23-cv-05159, 2023 WL 12068975 (W.D. Wash. Oct. 2, 2023) …………………………………………………………………………………... 25

*Hofman v. Fidelity Brokerage Servs., LLC*, No. 23-cv-00881, 2023 WL 3872564 (C.D. Cal. 2023) ……………………………………………………………………………………….. 9

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428 (S.D.N.Y. 2013) …... 10

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) ........................................... 5, 9

*In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110 (D.C. Cir. 2008) ............ 5

*Kelly v. FINRA*, No. 25-cv-01195, 2025 WL 2962788 (D. Nev. Oct. 16, 2025) ....................... 25

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) ......................................... 20

*Leedom v. Kyne*, 358 U.S. 184 (1958) ..................................................................... 22

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015) ...................................................................................................... 26

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................. 16

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ................................................................ 20

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374 (2016) ....................... 13

*Park v. FINRA*, No. 23-CV-69, 2023 WL 11795601 (N.D. Ga. Sep. 25, 2023) ........................ 25

*Pee Pee Pop Trust v. FINRA*, No. 19-cv-00240, 2019 WL 4723788 (D. Nev. Sep. 26, 2019) ..... 9

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ........................................................ 20

*SEC v. Sloan*, 436 U.S. 103 (1978) ................................................................... 10, 11

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) ........................................ 27

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950) ................................................ 15

*Standard Inv. Chartered, Inc. v. NASD*, 637 F.3d 112 (2d Cir. 2011) ............................... 5, 22, 26

*Tawil v. FINRA*, No. 22-cv-440, 2023 WL 4353179 (N.D. Fla. May 24, 2023) ........................ 25

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ....................................................... 18

*Traudt v. Rubenstein*, No. 24-cv-782, 2025 WL 1795825 (D. Vt. June 30, 2025) ..................... 25

*Weissman v. NASD, Inc.*, 500 F.3d 1293 (11th Cir. 2007) ............................................. 5

*Xu v. FINRA*, 503 F. App'x 7 (2d Cir. 2012) ................................................... 8

**Statutes and Rules**

15 U.S.C. § 78aa(a) (Exchange Act § 27) ............................................................ passim

15 U.S.C. § 78s(b) (Exchange Act § 19(b)) ......................................................... passim

15 U.S.C. § 78s(c), (h) (Exchange Act § 19(c), (h)) ................................................. 22

15 U.S.C. § 78s(g)(1) (Exchange Act § 19(g)(1)) ................................................... passim

15 U.S.C. § 78u(d) (Exchange Act § 21(d)) .......................................................... 22

17 C.F.R. § 240.19b-4 (SEC Rule 19b-4) ........................................................... 16, 24

28 U.S.C. § 1331 ................................................................................ 15, 25

28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act) ............................................... passim

Fed. R. Civ. P. 15 .................................................................................. 26

Fed. R. Civ. P. 4(k)(1)(C) ......................................................................... 2, 13

FINRA Rule 6440 .................................................................................. passim

FINRA Rule 6490 .................................................................................. passim

## PRELIMINARY STATEMENT

FINRA moves to dismiss Count I of the Second Amended Complaint ("SAC") because its conduct was "regulatory in nature." This Court dismissed the First Amended Complaint against FINRA on immunity grounds after finding that "[a]ll of Plaintiff's claims against FINRA arise from its regulatory activities and, consequently, these direct challenges to FINRA's performance of its regulatory functions are barred by absolute immunity." ECF No. 98 at 8. The SAC was drafted to cure each of those findings directly.

The FAC challenged FINRA's regulatory conduct broadly across nine causes of action, claiming FINRA was negligent, unlawful, and fraudulent in managing the MMTLP halt. The SAC does not repeat that theory. Count I limits the challenge to a single, specific, federal question: did FINRA exceed the authority conferred by Rule 6440, Rule 6490, and Section 19 of the Exchange Act when it (1) revised operative corporate-action language on December 8, 2022, outside Rule 6490's deficiency, notice, and appeal framework, without issuer authorization, and after excluding issuer counsel from the operative FINRA-DTCC call, and (2) imposed a December 9, 2022 halt that FINRA's own notice stated would end concurrent with symbol deletion, eliminating the final quoted market window without resumed trading before legally effective cancellation of the underlying shares? SAC ¶¶ 73-83.

FINRA's answer to that question is to repeat the word "regulatory." But that word is the conclusion FINRA must earn, not a premise the Court must accept. SRO immunity protects functions performed *within delegated authority*. It does not protect conduct that falls outside the boundaries of the delegation. If it did, the filed-rule framework Section 19 establishes would be unenforceable against the SROs it governs.

1

The SAC also cures the personal-jurisdiction defect the Court identified. The FAC pleaded no basis for this Court to exercise personal jurisdiction over FINRA. The SAC expressly pleads Exchange Act § 27, 15 U.S.C. § 78aa(a), and Fed. R. Civ. P. 4(k)(1)(C) as the jurisdictional basis. SAC ¶ 16. The Court's prior analysis did not reach that theory because it was not before the Court. It is now.

Plaintiff Jason Todd Rolo held 1,675 shares of MMTLP when the halt was imposed. He could not transact during the final market period preceding deletion and cancellation. His broker, Robinhood, later confirmed in writing that the resulting contra position cannot be transferred electronically through ACATS or DTC, would remain behind if the account were transferred, and is not eligible for certificate or alternative transfer. SAC ¶ 63; Ex. 19. That injury is concrete, personal, and ongoing. Each of FINRA's dismissal arguments depends on the same premise: that the challenged conduct was within FINRA's delegated authority. Count I contests that premise. FINRA cannot obtain dismissal by assuming the very authority the SAC alleges it exceeded. The motion should be denied.

## FACTUAL BACKGROUND

The following facts come from the SAC and are taken as true on a motion to dismiss.

FINRA published a corporate-action Daily List notice for MMTLP on December 6, 2022, governing dates, entitlements, and settlement processing. SAC ¶ 48. On December 8, 2022, at approximately 1:11:45 p.m. Eastern Time, FINRA published a revised Daily List notice without issuer authorization and after a FINRA-DTCC call from which Meta Materials and Next Bridge counsel were excluded. SAC ¶¶ 49, 75, Ex. 4 ¶ 9. The judicial-notice exhibits FINRA itself submitted confirm the specific changes: the December 6 notice (FINRA Ex. B) stated MMTLP

2

shares would be *canceled* effective 12/13/22 and referenced the "12/12/22 Record Date." The December 8 revised notice (FINRA Ex. C) changed "canceled" to *deleted* and removed "Record Date" entirely. At the pleading stage, those changes cannot be dismissed as merely cosmetic. They changed the operative market-facing characterization of what would happen to the shares and removed entitlement language material to settlement processing. OTC Markets placed a Caveat Emptor designation on MMTLP that same day at approximately 3:01 p.m., citing "public-interest concern and confusion regarding dates and entitlements associated with FINRA's December 6 notice and its December 8 revision." SAC ¶ 50, Ex. 13.

Before the market opened on December 9, 2022, FINRA imposed an extraordinary-event halt under Rule 6440. FINRA's own halt notice (FINRA Ex. D) states: "The trading and quoting halt will end concurrent with the deletion of the symbol effective Tuesday, December 13, 2022." Trading never resumed. The final quoted market window was eliminated entirely before legally effective cancellation of the underlying shares. Broker-dealer communications confirm the market expected December 9 and December 12 as the operative final trading window: TD Ameritrade told customers to route closing sell orders normally, and TradeZero instructed clients to liquidate all short-equity positions by 4:00 p.m. on December 9. SAC ¶ 53, Ex. 16. The halt eliminated that window entirely.

FOIA-produced materials show that before the December 9 halt, FINRA personnel informed SEC personnel that FINRA's Fraud team was examining MMAT and MMTLP from a fraud and manipulation angle while bluesheeting both securities. SAC ¶ 51, Ex. 14. MMTLP was on FINRA's OTC Threshold Securities List during the period immediately preceding the corporate action and halt, reflecting persistent fail conditions. SAC ¶ 43, Ex. 6.

3

Plaintiff held 1,675 shares of MMTLP when the halt was imposed. SAC ¶¶ 7, 62, 81. He could not transact. Robinhood later confirmed in writing that his resulting contra position cannot be transferred electronically through ACATS or DTC, would remain behind if the account were transferred, and is not eligible for certificate or alternative transfer. SAC ¶ 63, Ex. 19. In September and October 2023, the Financial Information Forum informed SEC Trading and Markets personnel of concrete operational failures: shares on loan could not be recovered because of the prior halt, lending broker-dealers could not obtain equivalent entitlements for customers, and reconciliation problems persisted. SAC ¶¶ 59-60, Ex. 17. TradeStation stated in December 2023 that the physical certificate it received excluded lent shares and that it could not honor some customer requests to register ownership. SAC Ex. 20. The injury is not historical. It is ongoing.

## ARGUMENT

## I. FINRA'S IMMUNITY ARGUMENT IS CIRCULAR AND FAILS AT THE THRESHOLD

FINRA opens its motion with this proposition: "An SRO such as FINRA is immune from suit when the conduct it is alleged to have engaged in is regulatory in nature." Motion at 14 (citing *DL Cap. Grp. LLC v. NASDAQ Stock Mkt., Inc.*, 409 F.3d 93, 97 (2d Cir. 2005); *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001)). That is correct as far as it goes. It does not resolve this case because it buries the central question inside the premise.

The question is not whether FINRA is generally immune for regulatory activity. The question is whether the *specific* conduct challenged here was within the filed-rule authority that makes conduct regulatory in the first place. FINRA calls the conduct regulatory and then cites

4

the rule that immunizes regulatory conduct. That is circular. It is not legal analysis. Count I alleges FINRA stepped *outside* the filed-rule framework that supplies the immunity. The Court must not accept FINRA's label as the answer to the question FINRA's label assumes.

**A. The Functional Inquiry Requires Identifying the Specific Act, Not the General Topic**

The Second Circuit requires a *functional* inquiry, not a categorical one. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 96 (2d Cir. 2007) (courts "look to the nature of the function performed"). Absolute immunity "is rare and exceptional, must be examined case by case, and must be established by the party asserting it." *Standard Inv. Chartered, Inc. v. NASD*, 637 F.3d 112, 115 (2d Cir. 2011). *D'Alessio* requires immunity to be "within the scope" of the SRO's regulatory authority. 258 F.3d at 105. *Weissman v. NASD, Inc.*, 500 F.3d 1293, 1296 (11th Cir. 2007), requires the SRO to be performing its "statutorily delegated" functions. *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008), limits immunity to conduct "under the aegis of the Exchange Act's delegated authority." Each formulation requires examining whether the specific act was within the specific delegation. FINRA's motion makes the categorical argument, not the specific one.

The SAC plausibly alleges that FINRA's specific conduct fell outside the framework. Rule 6490 provides a specific deficiency, notice, and appeal framework when FINRA determines that a company-related-action request is deficient, including where the identified concerns involve significant settlement uncertainty or potential fraud-related concerns. SAC ¶ 28. FOIA-produced materials show FINRA's Fraud team was bluesheeting MMTLP while the corporate action was being processed. SAC ¶ 51, Ex. 14. MMTLP was on FINRA's OTC Threshold Securities List, reflecting persistent fail conditions. SAC ¶ 43, Ex. 6. Rather than invoking Rule 6490's deficiency procedure, FINRA revised the operative corporate-action

language mid-process on December 8, 2022, unilaterally and without issuer authorization, after excluding issuer counsel from the operative FINRA-DTCC call. SAC ¶¶ 49, 75, Ex. 4 ¶ 9.

The judicial-notice exhibits FINRA itself submitted confirm the specific changes. The December 6 notice (FINRA Ex. B) stated that "MMTLP shares will be *canceled* effective 12/13/22" and referenced the "12/12/22 Record Date." The December 8 revised notice (FINRA Ex. C) changed "canceled" to *deleted* and removed the words "Record Date" entirely. At the pleading stage, those changes cannot be dismissed as merely cosmetic. They changed the operative market-facing characterization of what would happen to the shares and removed entitlement language material to settlement processing. Rule 6490 does not authorize FINRA to bypass its own deficiency procedure and instead unilaterally revise operative corporate-action language mid-event.

FINRA then imposed a Rule 6440 extraordinary-event halt before the market opened on December 9, 2022. Count I challenges whether this specific halt-through-deletion sequence was within the authority Rule 6440 confers. FINRA's own halt notice (FINRA Ex. D) states: "The trading and quoting halt will end concurrent with the deletion of the symbol effective Tuesday, December 13, 2022." The halt-through-deletion sequence is not an inference drawn from surrounding facts. It is stated in FINRA's own exhibit. Trading never resumed. The final quoted market window was eliminated entirely before legally effective cancellation of the underlying shares. FINRA may argue that a halt and a deletion are each independently authorized acts, and that combining two authorized acts does not create unauthorized conduct. But that argument mistakes the question. The issue is not whether each act was individually authorized in the abstract. The issue is whether FINRA had authority to impose a halt structured, as stated in FINRA's own notice, to prevent resumed trading before cancellation, eliminating the final market

window as a terminal result rather than as a temporary measure. Rule 6440's text authorizes halts to protect investors and address settlement uncertainty. It does not clearly authorize using halt authority to foreclose the final exit window entirely where trading never resumes before deletion and cancellation. The purpose a rule authorizes and the consequences it permits are not unlimited.

FINRA also concedes in footnote 16 of its motion that "FINRA does not and cannot cancel a company's securities" and that the December 8 revision changed "cancelled" to "deleted" because FINRA may delete a symbol when it *learns* the security has been cancelled. Motion at 12 n.16. That concession narrows FINRA's authority. FINRA could not cancel the underlying security, and Rule 6440 did not itself supply authority to convert a temporary halt into a halt-through-deletion sequence that eliminated the final quoted market window without resumed trading. Whether that combined sequence was reasonably and fairly implied by Rule 6440, Rule 6490, or any other SEC-approved rule is precisely the threshold filed-rule question Count I presents.

The existence of halt authority and the scope of that authority over the duration and consequences of a halt are separate questions. FINRA may point to settlement and clearance uncertainty as the predicate for the halt, but that does not automatically establish authority for a halt whose stated design was to end only upon deletion of the symbol, foreclosing any resumed trading before legally effective cancellation. Count I challenges whether Rule 6440 authorized this specific use of halt authority as a terminal market-elimination mechanism rather than a temporary stabilization measure.

**B. The "No Exceptions" Rule Does Not Apply to Threshold Authority Challenges**

7

FINRA cites *DL Cap.* for the proposition that there are "no exceptions" to SRO immunity, and *Xu v. FINRA*, 503 F. App'x 7, 8-9 (2d Cir. 2012), for the proposition that courts reject bad-faith exceptions. Motion at 15. Those cases address intent-based exceptions to immunity for conduct that is *already* conceded to be within delegated authority. In *DL Cap.*, the plaintiff alleged NASDAQ committed fraud in the course of a delisting decision — a function unquestionably within NASDAQ's delegated authority. In *Xu*, the claim sought a bad-faith carve-out for conduct already acknowledged as regulatory. Neither case presents the question Count I presents: whether the specific conduct was within the delegated authority at all. Count I does not allege fraud, bad faith, or improper motive as grounds for overriding immunity for otherwise-authorized conduct. It alleges the specific acts were outside the rule framework entirely. Immunity has no premise to rest on if the conduct was not authorized.

Plaintiff does not contend that every security-specific halt requires a separate rule filing. Count I challenges whether this specific halt-through-deletion sequence, stated in FINRA's own notice to end concurrent with symbol deletion and eliminating the final market window entirely before legally effective cancellation, was within the authority Rule 6440 confers. The point is narrower: FINRA may not combine existing rules in a way that produces a terminal market result not reasonably and fairly implied by any filed rule, and then avoid judicial review by characterizing the result as a routine application of existing authority. Whether that specific combination was authorized by any filed rule is the threshold question Count I presents.

Plaintiff does not assert the issuer's Rule 6490 appeal rights as a private substitute for the issuer or the corporate-action submitter. Plaintiff relies on Rule 6490 as the SEC-approved boundary of FINRA's own authority, because FINRA invokes that same rule framework as the source of its regulatory immunity. The question is not whether the issuer had procedural rights.

8

The question is whether FINRA's bypass of its own deficiency framework was within the filed-rule authority that makes FINRA's conduct regulatory. FINRA may reply that retail shareholders cannot invoke Rule 6490 at all because only the corporate-action submitter has procedural rights under that rule. That reply conflates two distinct questions. Whether the issuer held procedural rights under Rule 6490 is one question. Whether FINRA's decision to bypass the rule's deficiency framework was within the filed-rule authority FINRA invokes as a shield from suit is a different question entirely. Plaintiff does not need standing under Rule 6490's procedures to present the second question. He needs standing to challenge conduct that exceeded FINRA's delegated authority and caused him a concrete, ongoing injury. He has it. Rule 6490's deficiency framework marks the boundary of what FINRA was authorized to do. Crossing that boundary without authorization is the conduct Count I challenges, regardless of who held the procedural rights within the framework.

FINRA also cites *In re NYSE Specialists* and *Pee Pee Pop Trust v. FINRA*, No. 19-cv-00240, 2019 WL 4723788 (D. Nev. Sep. 26, 2019), for the proposition that immunity covers claims that an SRO "violated its own internal rules." Motion at 16. Those cases involved claims that an SRO applied its rules incorrectly or enforced them improperly in exercising an acknowledged core function. Count I is structurally different. It does not allege FINRA enforced Rule 6490 improperly against Plaintiff. It alleges FINRA bypassed Rule 6490's deficiency procedure entirely and substituted an unauthorized unilateral revision. Bypassing a rule is not enforcing it incorrectly.

### C. FINRA's Equitable-Relief Cases Do Not Resolve the Threshold Question

FINRA cites *Cashmore v. FINRA*, No. 18-CV-1198S, 2020 WL 6566302 (W.D.N.Y. Nov. 9, 2020), *Hofman v. Fidelity Brokerage Servs., LLC*, No. 23-cv-00881, 2023 WL 3872564 (C.D.

9

Cal. May 8, 2023), and *Gallagher v. FINRA, Inc.*, No. 21-13605, 2022 WL 1815594 (11th Cir. June 3, 2022), Motion at 15-17, to argue immunity extends to declaratory and equitable claims. Those cases treated the challenged conduct as within delegated regulatory functions and then held immunity applied regardless of remedy. Count I contests that threshold premise. Cases extending immunity to declaratory relief for conduct already assumed to be regulatory do not answer whether the conduct was regulatory in the first place.

FINRA cites *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 454 (S.D.N.Y. 2013), for the proposition that trading halt decisions are "quintessentially regulatory." Motion at 16. *Facebook* involved a claim that NASDAQ was negligent in deciding not to halt trading during the Facebook IPO — a judgment call within NASDAQ's acknowledged halt authority. Count I alleges that the specific halt-through-deletion sequence exceeded Rule 6440's text. Immunity for how an SRO makes halt decisions within its authority does not govern whether the specific sequence employed was within that authority at all.

## D. FINRA's Own Concessions Confirm the Filed-Rule Limit

FINRA's motion at pages 6-12 describes FINRA's authority as bounded by filed, SEC-approved rules. Motion at 7-12. That description is accurate — and it proves Count I's point. FINRA's authority is *bounded* by the filed rules FINRA describes. The system FINRA describes is precisely the system Count I says FINRA departed from.

*SEC v. Sloan*, 436 U.S. 103 (1978), separates the existence of halt authority from the lawful scope of that authority. In *Sloan,* the SEC had unquestioned statutory power to suspend trading. The Court nonetheless held that the SEC could not use consecutive ten-day suspensions to maintain an extended halt beyond the statutory period. 436 U.S. at 110-23. FINRA may argue that *Sloan* involved an express statutory ten-day limit while Rule 6440 contains no comparable

10

express time limit. But *Sloan's* usefulness here does not depend on Rule 6440 containing an identical express time limit. Sloan separates the existence of halt authority from the lawful scope of that authority, and confirms that a specific regulatory power cannot be extended beyond what the authorizing text supports. The question here is not whether Rule 6440 sets a time limit on halts. The question is whether Rule 6440 authorized this specific halt-through-deletion sequence — a halt designed to run concurrent with deletion, eliminating the final market window with no resumed trading before cancellation. General halt authority does not supply that authorization. The specific consequence must be authorized by the rule's text or fairly implied by the filed-rule framework.

FINRA's reply may characterize "halt-through-deletion" as Plaintiff's invented phrase rather than a recognized legal category. But the phrase is drawn directly from FINRA's own exhibit language. FINRA Ex. D says the halt "will end concurrent with the deletion of the symbol." That is not Plaintiff's description of the sequence. It is FINRA's own description. And Rule 6440's stated purpose matters here. Rule 6440 authorizes halts "necessary to protect investors and the public interest" where extraordinary events create settlement and clearance uncertainty. A halt that protects investors would ordinarily permit resumed trading when conditions allow. A halt stated from the moment of imposition to end concurrent with deletion, with no resumed trading before cancellation, serves a categorically different function: it eliminates the market rather than stabilizes it. Whether that terminal function was within Rule 6440's authorization is the legal question Count I presents. Calling it "rhetoric" does not answer it.

The Supreme Court's decision in *Galette v. New Jersey Transit Corp.*, 607 U.S. ___, No. 24-1021 (Mar. 4, 2026), is not an SRO immunity case and Plaintiff does not cite it as controlling

11

SRO precedent. Its structural reasoning confirms the broader point: separate corporate entities performing public functions under government oversight do not inherit expanded sovereign immunity by labeling their conduct governmental. FINRA is a private Delaware corporation. Its immunity is derivative, not inherent, and is bounded by the delegation that creates it.

FINRA's reliance on *OCC Information Memo No. 48884* does not defeat Count I at the pleading stage. At most, the memo confirms that the MMTLP structure carried foreseeable settlement complexity if an OTC market did or did not develop. That point does not help FINRA. The SAC alleges that by December 2022 FINRA had contemporaneous notice of settlement uncertainty, fraud-related concerns, threshold-list pressure, and nonstandard clearance issues. Those allegations plausibly support the inference that FINRA should have proceeded through Rule 6490's deficiency framework rather than unilaterally revising operative corporate-action language outside that framework.

FINRA's likely reply is that Count I is simply the FAC with better labels — that calling the challenge "ultra vires" or "threshold authority" is just a new way of saying the same thing the Court already rejected. That characterization fails for a specific, verifiable reason: the FAC contained no allegation about Rule 6490's deficiency procedure, no allegation that FINRA bypassed that procedure on December 8, no allegation that the halt notice was designed from imposition to run concurrent with deletion, and no comparison of the December 6 and December 8 Daily List language. Those are not repackaged allegations. They are specific factual allegations grounded in FINRA's own filed exhibits that the FAC never presented. Law of the case cannot bar a legal theory based on facts the prior complaint never pled. The Court cannot have rejected what it never saw.

## II. SECTION 27 OF THE EXCHANGE ACT SUPPLIES PERSONAL JURISDICTION

The Court dismissed the FAC for lack of personal jurisdiction because Plaintiff had not alleged any basis for the Court to exercise jurisdiction over FINRA. ECF No. 98 at 6-8. The Court evaluated jurisdiction under Connecticut's long-arm statute. The SAC fixes that by pleading a different jurisdictional basis the Court never addressed: Exchange Act § 27 and Fed. R. Civ. P. 4(k)(1)(C). SAC ¶ 16.

Section 27 provides that suits to enforce any duty or liability created by the Exchange Act may be brought in federal district court and authorizes nationwide service of process. 15 U.S.C. § 78aa(a). The Supreme Court has confirmed that Section 27 reaches suits that arise under the Exchange Act or require resolution of substantial Exchange Act questions. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 380-84 (2016). Rule 4(k)(1)(C) makes that statutory service the basis for personal jurisdiction in federal court. Because Section 27 applies and nationwide service is authorized, state-specific long-arm analysis is not controlling.

FINRA's personal-jurisdiction argument contains a logical inconsistency that requires rejection of its jurisdictional theory. FINRA argues that Count I is not "a securities claim" for Section 27 purposes. Motion at 18. But FINRA simultaneously argues that all of Count I's challenges to FINRA's regulatory activities are covered by absolute immunity under federal securities law — a doctrine derived entirely from judicial interpretation of the Exchange Act's SRO structure. FINRA cannot invoke the Exchange Act's SRO framework as the source of absolute immunity while simultaneously treating a claim testing the limits of that same framework as non-federal for Section 27 purposes. At minimum, that inconsistency confirms why Count I arises under federal securities law: the claim cannot be resolved without deciding the scope of FINRA's Exchange Act-delegated authority. The Court should not grant FINRA the benefit of federal regulatory immunity while simultaneously denying Plaintiff the benefit of

13

federal jurisdiction to test whether that immunity applies. To be precise: Plaintiff does not contend that immunity itself creates Section 27 jurisdiction. Plaintiff contends that FINRA cannot characterize the same conduct as federal securities regulatory activity for immunity while denying that a claim testing the limits of that activity arises under the federal securities laws for jurisdictional purposes.

The threshold question is whether Count I arises under the Exchange Act. It does. Section 19(g)(1) of the Exchange Act, 15 U.S.C. § 78s(g)(1), requires every self-regulatory organization to comply with the Exchange Act, the rules and regulations thereunder, and its own rules. Rule 6490 is FINRA's own SEC-approved rule. The SAC alleges FINRA bypassed Rule 6490's deficiency framework on December 8, 2022. That allegation, taken as true, describes a Section 19(g)(1) violation: FINRA failed to comply with its own rule while exercising authority under the Exchange Act. A suit enforcing that statutory duty arises under the Exchange Act and falls within Section 27. FINRA may reply that Count I is simply private enforcement of SRO rule compliance through a declaratory label, and that courts have rejected that form of claim. But Count I does not ask this Court to enforce FINRA's rules against FINRA. It asks this Court to determine whether FINRA's specific conduct was within the filed-rule authority FINRA simultaneously invokes as a shield from suit. Enforcement asks: comply with this rule. Boundary determination asks: was this conduct within the authority the rule defines? Those are categorically different requests. Courts make boundary determinations about delegated federal authority as a basic exercise of federal jurisdiction. That is what Count I presents.

FINRA argues at page 18 of its motion that Plaintiff's SAC allegations about jurisdiction are mere "threadbare recitals." The SAC alleges: FINRA is the sole registered national securities association exercising nationwide authority; its challenged conduct, including publication of

14

operative Daily List notices affecting every market participant in every state and imposition of a nationwide OTC halt, constituted market-facing activity that produced consequences in every state, including Connecticut, where Plaintiff holds the resulting frozen position. SAC ¶¶ 16, 63. At the prima facie showing stage required on a Rule 12(b)(2) motion, those allegations are sufficient. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

**III. SUBJECT-MATTER JURISDICTION EXISTS UNDER 28 U.S.C. § 1331 AND EXCHANGE ACT § 27**

FINRA argues that subject-matter jurisdiction is absent because "the Declaratory Judgment Act does not confer subject matter jurisdiction." Motion at 22. Plaintiff does not rely on the Declaratory Judgment Act for jurisdiction. Plaintiff relies on 28 U.S.C. § 1331 and Exchange Act § 27. The Declaratory Judgment Act requires an independent jurisdictional basis but does not bar jurisdiction where one exists. *Correspondent Servs. Corp. v. First Equities Corp.*, 442 F.3d 767, 769 (2d Cir. 2006).

FINRA's reliance on *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950), Motion at 22, confirms rather than undermines jurisdiction here. In *Skelly Oil,* the underlying controversy was a contract dispute that did not independently arise under federal law. Count I presents no such problem. Whether FINRA's conduct was within or outside its Exchange Act-delegated authority is not a state-law question. It is a pure question of federal statutory and regulatory authority, federal from beginning to end.

Exchange Act § 27, 15 U.S.C. § 78aa(a), grants district courts exclusive jurisdiction of "all suits in equity and actions at law brought to enforce any liability or duty created by" the Exchange Act. Count I enforces the duty, created by Section 19(g)(1), that FINRA comply with

15

its own rules, and the duty, created by Section 19(b) and SEC Rule 19b-4, that unfiled rule-like conduct not take operative effect. Those duties were created by the Exchange Act. Section 78aa(a)'s grant of exclusive jurisdiction directly covers Count I.

FINRA cannot invoke the Exchange Act's comprehensive federal framework as the source of its immunity while arguing that a suit testing whether it exceeded that framework's limits does not arise under federal law. FINRA's own motion describes FINRA as operating under "a comprehensive federal securities framework." Motion at 5-6. That is correct — and it is the same framework that supplies Count I's jurisdictional basis.

## IV. PLAINTIFF HAS CONCRETE ARTICLE III STANDING

FINRA characterizes Plaintiff's injury as "speculative regret over a market price." Motion at 23-26. That misreads the SAC. Plaintiff is not claiming he had a profitable sale lined up that FINRA canceled. He alleges that FINRA's halt-through-deletion sequence removed the market mechanism itself — the final quoted trading window — before Plaintiff or any other holder could sell, close, reduce, or otherwise manage positions before the security ceased to exist.

### A. Injury in Fact

To establish Article III standing, a plaintiff must show injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff held 1,675 MMTLP shares — a concrete property interest — when the halt was imposed. SAC ¶¶ 7, 62, 81. The halt eliminated the final quoted market window before symbol deletion on December 13, 2022, and before the underlying preferred shares were legally cancelled by the issuer. FINRA may argue the injury is speculative because Plaintiff does not allege he placed a sell order or had a buyer. But speculation requires uncertainty about whether a transaction would have occurred.

16

There is no such uncertainty here. The market had been open and the security had been actively trading before FINRA imposed the halt, and broker-dealers were treating December 9 as an operative final trading day. TD Ameritrade was telling customers to route closing sell orders normally. TradeZero was instructing clients to liquidate positions by 4:00 p.m. that day. SAC ¶ 53, Ex. 16. The market mechanism was functioning when the halt removed it. Plaintiff's injury is not that he failed to execute a particular trade at a particular price. It is that the mechanism through which he could have executed any trade at any price was removed before he had the opportunity to use it. That is not a speculative lost opportunity. That is elimination of access to a functioning market.

FINRA relies on *Free Holdings, Inc. v. McCoy*, No. 23-644, 2024 WL 177447 (2d Cir. Jan. 17, 2024), Motion at 24-25, and its NFT-auction analogy. That analogy fails at every point of contact with this case. In *Free Holdings,* the plaintiff "failed to allege any actual, concrete attempts to sell" its NFT, and the auction market for the plaintiff's NFT continued to function; another party sold a competing NFT at that same auction. Here, the halt eliminated the entire trading venue before the security ceased to exist. There was no auction to attend. A person who is locked out of a building that is then demolished has not "failed to allege an attempt to enter." The point is that the building is gone. The market was the mechanism. The halt removed it.

Two additional exhibits incorporated into the SAC confirm the concrete, ongoing character of the injury. In September and October 2023, the Financial Information Forum informed SEC Trading and Markets personnel of concrete operational failures: shares on loan could not be recovered because of the prior halt, lending broker-dealers could not obtain equivalent entitlements for customers, and reconciliation problems persisted. SAC ¶¶ 59-60, Ex. 17. In December 2023, TradeStation stated that the physical certificate it received for the Next

17

Bridge distribution excluded lent shares, that it had been unable to recall those shares, and that it could not honor some customer requests to register ownership. SAC Ex. 20. Those materials support the plausibility of Plaintiff's standing allegations by showing that the halt and subsequent non-DTC and non-public structure produced concrete, broker-level transfer, lending, registration, and entitlement problems — not merely speculative investor regret.

The ongoing frozen position is itself a separate, present, concrete injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Robinhood has confirmed in writing that the contra position cannot be transferred electronically through ACATS or DTC, would remain behind if the account were transferred, and is not eligible for certificate or alternative transfer. SAC ¶ 63, Ex. 19. That is a present, documented, ongoing restriction on Plaintiff's property.

**B. Traceability**

FINRA argues at page 25 of its motion that Plaintiff "acknowledged December 8 was the last day a purchase could settle by the December 12 record date" and uses this to suggest Plaintiff had notice the window was closing. That argument mistakes the direction of the harm. The December 8 settlement cutoff applied to purchases. It says nothing about the selling window. A holder who owned shares before December 8 had every reason to expect December 9 and December 12 as operative days to exit the position before the security ceased to exist. Broker communications in the SAC confirm exactly that expectation: TD Ameritrade told customers to route closing sell orders normally, and TradeZero instructed clients to liquidate short-equity positions by 4:00 p.m. on December 9. SAC ¶ 53, Ex. 16. FINRA's halt eliminated the selling window. Knowing the purchase deadline was December 8 confirms, rather than negates, that holders expected to be able to sell through the final trading days before deletion.

18

Article III traceability does not require FINRA to be the sole or even proximate cause of Plaintiff's injury. It requires a "fairly traceable" connection. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016). The SAC pleads that connection directly: absent FINRA's December 8 revision and the December 9 halt-through-deletion sequence, Plaintiff would have had access to the final quoted trading window on December 9 and December 12, 2022. SAC ¶ 66. The issuer's transaction structure may explain what the post-distribution security became. It does not explain why Plaintiff lost the final quoted market window before that structure fully took operative effect. Those are distinct questions with distinct causes.

The sequence of FINRA's own judicial-notice exhibits also confirms traceability. FINRA submits the Meta Materials Amendment of Designation filed with the Nevada Secretary of State on December 9, 2022, Motion Ex. E, to suggest the issuer's corporate action caused the harm. But that Amendment was filed on December 9, 2022, after FINRA imposed the halt before the market opened that morning. FINRA halted first. The Amendment was filed second. Plaintiff's ability to transact was eliminated before the issuer's legal mechanism for cancelling the preferred shares became operative. FINRA's own exhibit confirms the temporal sequence.

The SAC further alleges that the settlement uncertainty FINRA cited as the basis for the halt was at minimum altered, and plausibly intensified, by FINRA's own December 8 revision. SAC ¶¶ 52, 75. OTC Markets placed a Caveat Emptor designation on December 8 citing "public-interest concern and confusion regarding dates and entitlements associated with FINRA's December 6 notice and its December 8 revision." SAC ¶ 50, Ex. 13. The chain of causation is pleaded directly.

**C. Redressability**

19

FINRA argues at page 25 of its motion that Plaintiff's injuries "center on" a "two-day lost opportunity" that cannot be redressed through prospective declaratory relief, citing *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 388 (2d Cir. 2015), and *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993). Motion at 25. A declaration cannot reopen MMTLP trading, make NBH DTC-eligible, or restore a historical market — but that is not the relief Plaintiff seeks and not the standard Article III requires. Three independent grounds establish redressability.

First, FINRA's own citation of *Robidoux* helps Plaintiff. *Robidoux* states that a plaintiff satisfies redressability for prospective relief by "alleging that the defendant was engaging in the unlawful practice against the plaintiff at the time of the complaint." 987 F.2d at 938. The broker confirmation incorporated into the SAC, issued after December 2022, states that Plaintiff's position cannot be transferred through ACATS or DTC, would remain stranded if the account were transferred, and is not eligible for certificate or alternative transfer. SAC ¶ 63, Ex. 19. That is a present, ongoing, documented constraint, not a completed historical wrong. The unlawful framework continues to operate on Plaintiff's position today.

Second, Article III requires only meaningful redress, not complete restoration. *Massachusetts v. EPA*, 549 U.S. 497, 525-26 (2007). Plaintiff does not ask the Court to restore MMTLP trading, guarantee DTC eligibility, or reverse completed corporate events. He asks for a declaration that FINRA's specific conduct was ultra vires and outside its filed-rule authority. That declaration resolves the legal status of the halt-through-deletion sequence that produced Plaintiff's ongoing position and supports appropriate further equitable relief under 28 U.S.C. § 2202. Altering the legal basis currently burdening Plaintiff's position is precisely what prospective declaratory relief accomplishes.

20

Third, FINRA's argument that Plaintiff's ongoing illiquidity flows from the issuer's corporate structure rather than from FINRA's conduct misidentifies the injury Count I addresses. Plaintiff's injury is not that NBH is illiquid in the abstract. It is that FINRA's halt-through-deletion sequence eliminated the final quoted market window in which Plaintiff could have sold, closed, reduced, or otherwise managed his MMTLP position before the security ceased to exist. The issuer's structure explains what NBH became after deletion. It does not explain why Plaintiff had no exit window before deletion. Those are distinct injuries with distinct causes. A declaration that FINRA exceeded its filed-rule authority would resolve the legal basis currently burdening Plaintiff's position and support further equitable relief under 28 U.S.C. § 2202 — including relief directed to the ongoing confinement of that position outside ordinary DTC-based transfer channels. That is meaningful, forward-looking redress.

## V. THE ABSENCE OF A PRIVATE DAMAGES REMEDY DOES NOT BAR DECLARATORY RELIEF TESTING THE LIMITS OF DELEGATED FEDERAL AUTHORITY

FINRA argues that no private right of action exists to challenge its regulatory conduct under FINRA's rules or the Exchange Act. Motion at 26-27. Count I does not seek damages. It seeks a declaration that FINRA's specific conduct exceeded the delegated authority FINRA invokes as the basis for immunity from all scrutiny.

FINRA cites *Desiderio v. NASD*, 191 F.3d 198, 208 (2d Cir. 1999), and *Feins v. AMEX*, 81 F.3d 1215 (2d Cir. 1996), Motion at 26-27. In *Desiderio,* the plaintiff sought to challenge an NASD rule requiring arbitration of employment disputes — a claim that NASD's rule-making and enforcement policy violated the Exchange Act. In *Feins,* the plaintiff alleged AMEX violated Section 19 by failing to enforce its rules against a third party — a private enforcement

21

claim asking a court to compel an SRO to use regulatory authority against others. Count I does not ask FINRA to enforce its rules against anyone. It asks the Court to declare that FINRA itself exceeded the limits of its own filed rules. *Feins* does not govern that structurally different question.

FINRA additionally argues at pages 7-8 that because the SEC can sanction FINRA under 15 U.S.C. § 78s(c) and (h) and bring civil proceedings under § 78u(d), any remedy lies exclusively with the SEC. The existence of an SEC enforcement remedy does not extinguish a federal court's jurisdiction to declare that a private entity exceeded its delegated authority. *Leedom v. Kyne*, 358 U.S. 184 (1958), was decided in exactly that posture: the agency had its own internal structure and could have addressed the violation itself, yet the Court held judicial review still available because the agency had acted in excess of its delegated authority. FINRA's argument that the SEC can sanction FINRA does not answer whether Plaintiff can obtain a declaration that FINRA exceeded its authority in the specific transaction that harmed him.

*Leedom v. Kyne*, 358 U.S. 184 (1958), *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), and *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), confirm that federal courts may review whether a federally empowered entity has acted outside the authority Congress allowed, and that review does not require a statutory private damages cause of action. These cases do not involve FINRA immunity directly. They are cited for the narrower principle that delegated authority has judicially cognizable limits. Plaintiff does not ask the Court to import federal agency-review doctrine wholesale into SRO immunity law. Plaintiff asks only that the Court apply what the Second Circuit already requires in SRO immunity cases: a case-by-case functional examination of whether the specific challenged conduct was within the specific delegated authority. *Standard Inv. Chartered*, 637 F.3d at 115.

22

FINRA's reply will likely characterize Count I as an attempt by a private party to enforce Exchange Act compliance against an SRO — a job Congress gave to the SEC. But that characterization misstates the nature of an ultra vires declaratory claim. Count I does not ask this Court to supervise FINRA's regulatory program, compel the SEC to act, or enforce FINRA's rules on behalf of anyone else. It asks this Court to determine whether FINRA's specific conduct was within the filed-rule authority FINRA invokes as the basis for immunity from judicial review. That is not enforcement of FINRA's rules against FINRA. It is a determination of the legal boundaries of FINRA's authority — a determination that courts make about delegated federal entities as a fundamental exercise of federal judicial power. The question whether a federally delegated authority exceeded its legal bounds is one courts answer; it is not reserved exclusively to the agency that granted the delegation.

If no court could ever examine whether an SRO exceeded its filed-rule framework even in a non-damages declaratory proceeding, the filed-rule system itself would be unenforceable against the SRO. Congress created a system in which FINRA's rules must be filed with and approved by the SEC before taking operative effect. Section 19(b). That system exists because FINRA's authority is bounded by the rules it files. A private SRO that could exceed those bounds at will, obtain immunity from monetary liability, and then use the absence of a damages remedy to prevent any judicial determination that it exceeded those bounds, would be operating outside the system Congress designed.

## VI. LAW OF THE CASE DOES NOT BAR COUNT I

FINRA invokes law of the case, arguing that the Court's prior finding bars the SAC. Motion at 2 n.2. Law of the case applies when the *same issue* is presented in a subsequent proceeding. *Arizona v. California*, 460 U.S. 605, 618 (1983). The prior Order held all of

23

Plaintiff's claims against FINRA arose from its regulatory activities and were "barred by absolute immunity." Order at 8. That holding covered the nine causes of action in the FAC. It says nothing about Count I because Count I was not in the FAC.

The prior Order did not adjudicate whether FINRA's specific revision of operative corporate-action language outside Rule 6490's deficiency framework constitutes conduct reasonably and fairly implied by an existing SEC-approved rule. It did not adjudicate whether a halt-through-deletion sequence eliminating the final market window before cancellation is authorized by Rule 6440. Those questions were not presented by the FAC and were not decided by the Order. Law of the case does not bar questions the prior decision never reached.

The SAC is also materially different in structure. It abandoned all nine prior causes of action, all damage theories, and all constitutional claims. It presents one narrow declaratory count grounded in a specific ultra vires theory. That is precisely the cure the Court's Order invited. Law of the case does not penalize a pro se plaintiff for curing exactly the defects the Court identified.

## VII. COUNT I STATES A PLAUSIBLE CLAIM FOR DECLARATORY RELIEF

FINRA argues that declaratory relief is a remedy, not a cause of action, and that Count I therefore fails to state a claim. Motion at 27-28. That principle is correct in the abstract. But it does not apply here. Count I is not a bare request for declaratory relief floating free of any legal theory. It identifies the specific rule framework at issue (Rule 6490's deficiency procedures, Section 19(b) and Rule 19b-4's filed-rule requirement, Section 19(g)(1)'s compliance obligation), the specific conduct challenged (the December 8 mid-process revision without deficiency notice and the halt-through-deletion sequence without resumed trading), the specific excess alleged

24

(conduct not reasonably and fairly implied by any filed rule), and the specific injury (loss of the final market window and the ongoing frozen position). A complaint satisfies the plausibility standard when it pleads factual content allowing the court to draw a reasonable inference that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is a specific, grounded claim that easily clears the plausibility standard.

Every case FINRA cites on this point involves a plaintiff who could not identify any underlying substantive federal legal theory. Count I has a specific, federal, statutory grounding: the Exchange Act-created filed-rule framework, the specific rules at issue, the specific excess alleged, and the specific injury resulting from that excess. The Declaratory Judgment Act provides the vehicle. Exchange Act § 27 and 28 U.S.C. § 1331 provide the jurisdictional basis.

## VIII. THE OTHER MMTLP DISMISSAL CASES FINRA CITES DO NOT CONTROL COUNT I

FINRA cites at footnote 3 of its motion a collection of MMTLP-related cases dismissed on immunity grounds, including *Hensley v. TD Ameritrade, Inc.*, No. 23-cv-05159, 2023 WL 12068975 (W.D. Wash. Oct. 2, 2023); *Park v. FINRA*, No. 23-CV-69, 2023 WL 11795601 (N.D. Ga. Sep. 25, 2023); *Tawil v. FINRA*, No. 22-cv-440, 2023 WL 4353179 (N.D. Fla. May 24, 2023); *Traudt v. Rubenstein*, No. 24-cv-782, 2025 WL 1795825 (D. Vt. June 30, 2025); and *Kelly v. FINRA*, No. 25-cv-01195, 2025 WL 2962788 (D. Nev. Oct. 16, 2025), among others. These cases do not control Count I for a consistent reason: every one of them involved broad multi-theory damages claims or general challenges to FINRA's regulatory program arising from the MMTLP halt. None addressed the specific question Count I presents: whether FINRA's

25

December 8 revision outside Rule 6490's deficiency framework and halt-through-deletion sequence without resumed trading were authorized by any filed SEC-approved rule.

A pattern of courts dismissing broad damages attacks on FINRA's regulatory program does not establish that a focused declaratory ultra vires claim is barred. FINRA's immunity argument must still be established case by case and must address the specific conduct and the specific delegation. *Standard Inv. Chartered*, 637 F.3d at 115.

## IX. DISMISSAL WITH PREJUDICE IS UNWARRANTED

FINRA argues amendment would be futile because its "only connection to this case is its regulatory activities." Motion at 28. That is the immunity argument restated. For the reasons above, it fails.

Dismissal with prejudice requires more than disagreement with Plaintiff's theory. Under Rule 15, denial of further leave is justified only by undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190-91 (2d Cir. 2015). None applies here.

The Court dismissed the First Amended Complaint without prejudice and granted Plaintiff an opportunity to amend. ECF No. 98 at 12. Plaintiff responded by abandoning nine causes of action, all damages theories, and all constitutional claims, and narrowing the case to one focused federal declaratory count grounded in a specific theory of exceeded rule-based authority. That is exactly the kind of responsive good-faith amendment the without-prejudice dismissal invited. FINRA has not shown that Count I as pleaded is legally futile — it has only argued that its conduct was regulatory, which is the question Count I presents, not the answer to

26

it. Where futility depends on resolving the same legal question the motion raises, dismissal with prejudice at the pleading stage is premature. The motion's request for dismissal with prejudice should be denied.

**CONCLUSION**

This Court dismissed the First Amended Complaint against FINRA because all of Plaintiff's claims arose from FINRA's regulatory activities. ECF No. 98 at 8. The SAC does not repeat those claims. Because Plaintiff proceeds pro se, the SAC must be construed liberally to raise the strongest arguments it suggests. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Count I presents a single, narrow question the FAC never asked: whether FINRA's December 8 revision of operative corporate-action language outside Rule 6490's deficiency framework, and its December 9 halt stated in FINRA's own notice to end concurrent with symbol deletion, were within the filed-rule authority that makes FINRA's conduct regulatory in the first place.

FINRA's answer is to repeat the word "regulatory." But that word is the conclusion FINRA must earn, not a premise the Court must accept. The motion rests on a circular argument. The conduct is immune because it is regulatory. It is regulatory because FINRA says so. The Exchange Act does not create that result. The Second Circuit's functional immunity inquiry does not produce it. The rule-based system Congress built in Section 19 does not permit it.

The facts pleaded in the SAC — accepted as true at this stage — plausibly support the contrary conclusion: that FINRA bypassed its own filed-rule framework, imposed a halt-through-deletion sequence that exceeded its filed-rule authority, and eliminated the final

27

market window for 1,675 shares that remain frozen outside ordinary transfer channels today. That is a federal question. This Court has jurisdiction to answer it.

For these reasons, FINRA's motion should be denied in its entirety and its request for dismissal with prejudice should be denied.

Respectfully submitted,

**/s/ Jason Todd Rolo**

Jason Todd Rolo
 Pro Se
L6 Surrey Ln
Torrington, Connecticut 06790
Telephone: (413) 657-9082
Email: mastcab@yahoo.com
Dated: May 18, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2026, I filed the foregoing Memorandum of Law in Opposition to Defendant FINRA's Motion to Dismiss Count I of the Second Amended Complaint electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by e-mail to all counsel of record by operation of the Court's electronic filing system.

**/s/ Jason Todd Rolo**

Jason Todd Rolo
Pro Se
L6 Surrey Ln
Torrington, Connecticut 06790
Telephone: (413) 657-9082
Email: mastcab@yahoo.com
Dated: May 18, 2026

28