**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF CONNECTICUT**

Jason Rolo,

Case No.:  3:24-cv-02053-VDO

                    Plaintiff,

    v.

SECURITIES & EXCHANGE COMMISSION

FINANCIAL INDUSTRY REGULATORY AUTHORITY

DEPOSITORY TRUST & CLEARING CORPORATION

JOHN DOE 1 - 100

                    Defendants,

**PLAINTIFF JASON ROLO'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT DTCC'S MOTION TO DISMISS
COUNT II OF THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND .................................................................................. 2

ARGUMENT ......................................................................................................... 4

I.  THE PRIOR DISMISSAL DOES NOT CONTROL THE SAC .......................................... 4

II.  SRO IMMUNITY IS AN AFFIRMATIVE DEFENSE—DTCC'S MOTION ASKS
     THE COURT TO ASSUME THE VERY AUTHORITY THE SAC DISPUTES ............... 5

   A.  The Defense May Be Resolved at Rule 12(b)(6) Only Where It
       Appears on the Face of the Complaint—It Does Not Here ................................................. 5
   B.  "Clearance and Settlement" Is Not the Answer—It Is the Question .............................. 7
   C.  Plaintiff Pleads Specific Facts Supporting a Plausible
       Filed-Rule-Gap Inference ................................................................................. 9
   D.  Immunity Cannot Be Self-Sealing .................................................................... 11

III. DEXTER DOES NOT REACH THE SAC'S THEORY ..................................................... 12

IV.  THE SAC STATES A COGNIZABLE CLAIM FOR DECLARATORY RELIEF ……... 13

   A.  Section 27 Equity Jurisdiction Supports the Claim ....................................................... 13
   B.  The Declaratory Judgment Act Is Remedial, and the SAC
       Identifies an Independent Federal Controversy ........................................................... 15
   C.  The Declaration Is Not Advisory and Standing Is Met ................................................ 15

V.  DTCC CANNOT DISCLAIM CORPORATE IDENTITY AND CLAIM FULL
    IMMUNITY—THE SAC PLEADS DTCC'S OWN CONDUCT AND SEC FILINGS
    CONFIRM ITS OPERATIONAL ROLE ........................................................................... 17

VI.  DISMISSAL WITH PREJUDICE WOULD BE PREMATURE ..................................... 19

CONCLUSION ...................................................................................................... 21

**TABLE OF AUTHORITIES**

**Cases**

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227 (1937) ................................................................ 15

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................................................... 4, 9

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ...................................................................... 4

Brawer v. Options Clearing Corp., 633 F. Supp. 1254 (S.D.N.Y. 1986) .................................. 13

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) ................................................... 4

Chevron Corp. v. Naranjo, 667 F.3d 232 (2d Cir. 2012) ......................................................... 15

City of Providence v. BATS Glob. Mkts., Inc., 878 F.3d 36 (2d Cir. 2017) ...................... 1, 6. 21

D'Alessio v. N.Y. Stock Exch., Inc., 258 F.3d 93 (2d Cir. 2001) ............................................... 7

Denny v. Barber, 576 F.2d 465 (2d Cir. 1978) .......................................................................... 5

Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198 (2d Cir. 1999) ........................... 13

Dexter v. Depository Trust & Clearing Corp., 406 F. Supp. 2d 260 (S.D.N.Y. 2005) ...... 6, 7, 12

DL Cap. Grp., LLC v. Nasdaq Stock Mkt., Inc., 409 F.3d 93 (2d Cir. 2005) ............................. 7

Feins v. AMEX, 81 F.3d 1215 (2d Cir. 1996) .......................................................................... 13

Flowers v. Conn. Light & Power Co., 2021 WL 5564085 (2d Cir. Nov. 29, 2021) ................... 20

Foman v. Davis, 371 U.S. 178 (1962) ..................................................................................... 19

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167 (2000) ................................ 16

Gomez v. Toledo, 446 U.S. 635 (1980) ..................................................................................... 5

Haines v. Kerner, 404 U.S. 519 (1972) ................................................................................... 21

Hill v. Curcione, 657 F.3d 116 (2d Cir. 2011) ......................................................................... 19

In re NYSE Specialists Secs. Litig., 503 F.3d 89 (2d Cir. 2007) ................................................ 7

Lanier v. BATS Exch., Inc., 838 F.3d 139 (2d Cir. 2016) ........................................................ 14

Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160 (2d Cir. 2015) ........ 19

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ............................................................... 16

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007) ...................................................... 15

Merrill Lynch, Pierce, Fenner & Smith v. Manning, 578 U.S. 374 (2016) .......................... 13, 14

Pa. Higher Educ. Assistance Agency v. Perez, 416 F. Supp. 3d 75 (D. Conn. 2019) ............... 15

Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67 (2d Cir. 1998) .......................................... 6

SEC v. Apuzzo, 689 F.3d 204 (2d Cir. 2012) ............................................................................. 6

Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185 (2d Cir. 2008) ......................................... 21

Sparta Surgical Corp. v. NASD, 159 F.3d 1209 (9th Cir. 1998) ................................................ 7

Spicer v. Chicago Bd. of Options Exchange, Inc., 977 F.2d 255 (7th Cir. 1992) ..................... 14

Spokeo, Inc. v. Robins, 578 U.S. 330 (2016) .......................................................................... 16

Standard Inv. Chartered, Inc. v. NASD, 637 F.3d 112 (2d Cir. 2011) ................................. 8, 21

Steffel v. Thompson, 415 U.S. 452 (1974) .............................................................................. 15

TechnoMarine SA v. Giftports, Inc., 758 F.3d 493 (2d Cir. 2014) ............................................ 20

TransUnion LLC v. Ramirez, 594 U.S. 413 (2021) ..................................................... 16

United States v. Bestfoods, 524 U.S. 51 (1998) ......................................................... 18

Weissman v. NASD, 500 F.3d 1293 (11th Cir. 2007) ................................................. 9

Whistler Invs., Inc. v. Depository Trust & Clearing Corp., 539 F.3d 1159 (9th Cir. 2008) ....... 12

Wiggins v. Griffin, 86 F.4th 987 (2d Cir. 2023) ................................................... 4, 21

**Statutes and Rules**

15 U.S.C. § 78aa (Exchange Act § 27) ....................................................... 14

15 U.S.C. § 78c(a)(26) ................................................................................... 7

15 U.S.C. § 78c(a)(27)-(28) (clearing agency rule definitions) ................................ 10

15 U.S.C. § 78q-1 (Exchange Act § 17A) ........................................ passim

15 U.S.C. § 78s (Exchange Act § 19) ................................................ passim

15 U.S.C. § 78s(b)(1) (Section 19(b)(1) filing requirement) ....................................... 10

28 U.S.C. § 1331 ...................................................................................... 14

28 U.S.C. §§ 2201, 2202 ......................................................................... 17

Fed. R. Civ. P. 12(b)(6) .......................................................................... 5, 6

FINRA Rule 6440 ................................................................................. 3, 13

NSCC Rule 51 / Procedure II.A (Obligation Warehouse) ................................. 3, 9, 11

SEC Rule 17Ad-22 ................................................................................ passim

SEC Rule 19b-4 ..................................................................................... passim

SR-DTC-2020-002 (SEC Rule Filing, DTCC Shared Services Model) ........................... 18, 19

**PRELIMINARY STATEMENT**

DTCC opens its motion with this framing: "This is Plaintiff's third attempt to state a claim against DTCC arising from the clearance and settlement of transactions in" MMTLP. Motion at 1. That framing is designed to make this case sound decided before it begins. It is not.

The SAC is not a third attempt at the same theory. The prior complaints alleged securities fraud, Bank Secrecy Act violations, antitrust claims, and requests for DOJ investigations and criminal declarations. The SAC contains none of that. It contains one count seeking one thing: a declaration that the event-specific clearance-and-settlement treatment applied to the MMTLP / Next Bridge corporate action lacked the clear, transparent, and enforceable filed-rule basis that Section 17A and Rule 17Ad-22 require. That theory was not in the prior complaints. The prior dismissal did not adjudicate it.

DTCC's answer to that theory is to repeat the phrase "clearance and settlement." Motion at 9 ("Plaintiff's Claims Against DTCC are Barred by Absolute SRO Immunity... because they arise from clearance and settlement functions"). But that phrase is the conclusion DTCC must establish through the functional immunity analysis—not a premise the Court must accept at the outset. *City of Providence* makes clear that immunity must be examined case by case and that DTCC bears the burden of demonstrating entitlement to it. DTCC has not identified a filed rule that clearly authorized the specific event-specific treatment the SAC challenges. It has identified a category. Categories do not establish immunity. Delegated authority does.

DTCC also states in footnote 1 of its motion that "DTCC itself does not process, clear, or settle securities transactions" because DTCC is "a holding company." Motion at 1 n.1. DTCC then asks this Court to grant DTCC absolute immunity for the conduct of the subsidiaries it says are legally

1

distinct and to dismiss all claims with prejudice against both DTCC and those subsidiaries. Those three positions cannot coexist.

The SAC seeks no damages. It asks only for a declaration resolving whether the challenged framework had the legal foundation the Exchange Act requires. The motion should be denied.

**FACTUAL BACKGROUND**

Plaintiff Jason Todd Rolo is a Connecticut resident who held 1,675 shares of MMTLP when FINRA imposed an extraordinary-event halt on December 9, 2022. SAC ¶¶ 7, 10. He could not transact during the final quoted market period preceding deletion and cancellation of the underlying shares. His resulting position was exchanged for Next Bridge Hydrocarbons shares that are not publicly traded and not DTC eligible, and his broker, Robinhood, later confirmed that the resulting position cannot be transferred electronically through ACATS or DTC, would remain behind if the account were transferred, and is not eligible for certificate or alternative transfer. SAC ¶¶ 62-63.

The MMTLP / Next Bridge event was settlement-sensitive from the outset. The issuer's Rule 424(b)(4) prospectus stated that each share of Meta Materials Series A Preferred Stock outstanding on the December 12, 2022 record date entitled the holder to one share of Next Bridge common stock; that no fractional shares would issue; that the distributed shares would not trade publicly; that they would not be eligible for electronic transfer through DTC or any other established clearing corporation; and that the preferred shares would be cancelled immediately after distribution. SAC ¶¶ 2, 45-46. Those terms made dates, entitlements, delivery, transferability, and settlement mechanics central to the transaction, and made the final quoted

2

market window in MMTLP the last ordinary market mechanism for holders and market participants to manage positions before the security ceased to exist. SAC ¶¶ 1, 3.

On December 6, 2022, FINRA published a Daily List notice announcing the MMTLP corporate action. On December 8, 2022, FINRA published a revised Daily List notice—made, according to the issuer's CEO, after a FINRA-DTCC call from which Meta Materials and Next Bridge counsel were excluded. SAC ¶¶ 4, 49. Before the market opened on December 9, 2022, FINRA imposed an extraordinary-event halt under Rule 6440. Trading did not resume before the symbol was deleted on December 13, 2022. SAC ¶¶ 5, 52.

FINRA later acknowledged that December 8, 2022 transactions did not clear through CNS; that trades not settled by December 12 required broker-to-broker resolution outside DTC; and that the event "provided no continuity in the clearance and settlement process." SAC ¶ 54. NSCC's Obligation Warehouse rules confirm that obligations exiting CNS may persist in a non-guaranteed track until settled, cancelled, or otherwise removed. SAC ¶¶ 33, 56. Post-halt, shares on loan could not be recovered because no market existed. The Financial Information Forum reported to SEC Trading and Markets personnel in 2023 that unrecoverable lent shares, certificate-backed shortfalls, and unresolved customer-entitlement problems persisted. SAC ¶¶ 59-60. TradeStation confirmed in a written customer notice that it could not honor customer requests to register Next Bridge ownership because shares were not backed by a physical certificate. SAC ¶ 61.

Count II of the SAC challenges DTCC's event-specific clearance-and-settlement treatment of the MMTLP / Next Bridge event. The SAC alleges that DTCC—which the SAC defines as a corporation that "operates securities clearance, settlement, and depository infrastructure through affiliated entities including DTC and NSCC"—permitted the final transaction set to exit ordinary

3

CNS-based settlement without a clear filed-rule basis for what came next, and that the resulting treatment lacked the well-founded, clear, transparent, and enforceable legal basis required by Section 17A of the Exchange Act and Rule 17Ad-22. SAC ¶¶ 8, 13, 86-99. Count II seeks only declaratory and prospective non-monetary relief. It seeks no damages.

## ARGUMENT

The SAC must be construed liberally and to raise the strongest arguments it suggests. *Wiggins v. Griffin,* 86 F.4th 987, 996 (2d Cir. 2023). All well-pleaded factual allegations are accepted as true and all reasonable inferences are drawn in Plaintiff's favor. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Courts consider documents integral to the complaint. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).

## I. THE PRIOR DISMISSAL DOES NOT CONTROL THE SAC.

DTCC argues that the SAC is "based on the very same clearance and settlement conduct that this Court already held is protected by absolute SRO immunity." Motion at 2. That argument misreads both the prior order and the SAC.

The March 9 Order dismissed claims arising from DTCC's alleged "critical responsibilities of clearing and settling trades"—specifically, failure to address "recurring settlement discrepancies, including those involving synthetic shares" and "naked short sales." Op. at 9. Those allegations are gone. The SAC contains none of them.

What the SAC alleges instead is this: that DTCC "permitted the final transaction set to exit ordinary CNS-based settlement without a clear filed-rule basis for what came next." SAC ¶ 8. DTCC quotes that allegation in its own motion. Motion at 7. It is a different allegation from

4

anything the Court previously considered. It targets the absence of a clearly identified filed-rule mechanism—not regulatory negligence, not failure to address manipulation, not any of the claims the Court dismissed in March.

DTCC's reliance on *Denny v. Barber* for the proposition that an amended complaint suffering from the "same deficiencies" as a prior complaint may be dismissed, Motion at 9, assumes its conclusion. The SAC does not suffer from the same deficiencies. The Court dismissed the FAC because the allegations arose from DTCC's general clearing responsibilities. The SAC's allegations arise from a specific claim that the event-specific treatment lacked a clearly identified filed-rule basis. That distinction is the point of the amendment. *Denny* does not bar it.

## II. SRO IMMUNITY IS AN AFFIRMATIVE DEFENSE—DTCC'S MOTION ASKS THE COURT TO ASSUME THE VERY AUTHORITY THE SAC DISPUTES.

### A. The Defense May Be Resolved at Rule 12(b)(6) Only Where It Appears on the Face of the Complaint—It Does Not Here.

DTCC's motion states that "absolute SRO immunity bars any and all of Plaintiff's claims against DTCC because they arise from clearance and settlement functions—conduct this Court has already held is entitled to absolute immunity." Motion at 9. That argument has a structural problem. Immunity is an affirmative defense. DTCC bears the burden. It may be established on a motion to dismiss only where the defense appears on the face of the complaint. The face of the SAC does not establish that the challenged treatment was within DTCC's delegated filed-rule authority. The SAC specifically alleges it was not.

Absolute SRO immunity is an affirmative defense on which the defendant bears the burden of pleading and proof. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). An affirmative defense may

support a Rule 12(b)(6) dismissal only "where the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir. 1998); *SEC v. Apuzzo,* 689 F.3d 204, 210 n.5 (2d Cir. 2012). That means the complaint's own well-pleaded allegations, accepted as true, must establish every element of the defense without resort to facts outside the pleading.

The essential predicate of DTCC's immunity defense is that the challenged conduct was within delegated, SEC-approved regulatory authority—authority that, for a registered clearing agency, must be traceable to the Exchange Act and the SEC-approved filed-rule framework. That predicate does not appear on the face of the SAC. The SAC's well-pleaded facts plausibly dispute it: the SAC specifically alleges the challenged treatment lacked a clear filed-rule basis. SAC ¶¶ 8, 89, 92-96. An affirmative defense cannot be established on the face of a complaint whose well-pleaded facts plausibly dispute the defense's essential predicate.

The Second Circuit has cautioned that SRO immunity is not automatic. It is a protection that must be examined "on a case-by-case basis," and "the party asserting immunity bears the burden of demonstrating its entitlement to it." *City of Providence v. BATS Glob. Mkts., Inc.,* 878 F.3d 36, 47-48 (2d Cir. 2017). DTCC does not receive immunity merely because the SAC uses terms associated with clearing infrastructure. DTCC must show that the specific challenged treatment was within delegated authority traceable to the Exchange Act and the SEC-approved filed-rule framework. Its motion does not do that. It relies on the broad label "clearance and settlement." Under the functional test, that label is not enough.

*Dexter v. Depository Trust & Clearing Corp.,* 406 F. Supp. 2d 260, 263 (S.D.N.Y. 2005)—which holds that even "incorrect and unlawful" conduct is immune if incident to regulatory duties—applies only after the court has already determined that the specific conduct was within a specific regulatory authority. In *Dexter,* DTC's depository distribution authority was clear and

6

undisputed. *Dexter*'s principle that incorrectly-performed authorized functions are immune does not reach the prior question whether the functions were authorized in the first place. That is the SAC's question. DTCC has not identified a specific filed rule that clearly governed the challenged event-specific treatment. Without that identification, DTCC's motion asks the Court to assume the very delegated authority the SAC disputes. At minimum, that prevents dismissal by label alone.

**B. "Clearance and Settlement" Is Not the Answer—It Is the Question.**

The Second Circuit applies a functional test to SRO immunity. Courts examine "the objective nature and function of the activity" and ask whether the challenged conduct fell within the scope of delegated, SEC-approved regulatory authority. *D'Alessio v. N.Y. Stock Exch., Inc.,* 258 F.3d 93, 105-06 (2d Cir. 2001). Immunity attaches when SROs act "under the aegis" of quasi-governmental powers delegated under the Exchange Act, *DL Cap. Grp., LLC v. Nasdaq Stock Mkt., Inc.,* 409 F.3d 93, 97 (2d Cir. 2005), when specific acts are "incident to the exercise of regulatory power," *In re NYSE Specialists Secs. Litig.,* 503 F.3d 89, 98 (2d Cir. 2007), and when an SRO acts pursuant to authority "delegated by the SEC," *Sparta Surgical Corp. v. NASD,* 159 F.3d 1209, 1214 (9th Cir. 1998). The Exchange Act defines "self-regulatory organization" to include registered clearing agencies. 15 U.S.C. § 78c(a)(26). Every formulation requires a nexus between the specific challenged conduct and specific delegated authority traceable to the filed-rule framework.

DTCC invokes *DL Capital*'s principle that courts decline to allow plaintiffs to evade immunity by relabeling clearly authorized conduct as wrongful. 409 F.3d at 98. That principle applies where conduct is clearly within delegated authority and the plaintiff tries to manufacture an exception by calling it improper. It does not apply where the complaint plausibly alleges that no

7

filed-rule authorization existed. The functional test disciplines both sides: courts reject a plaintiff's fraud label applied to clearly authorized conduct; courts equally cannot accept a defendant's regulatory label applied to conduct whose authorization the complaint plausibly disputes.

*Standard Investment Chartered, Inc. v. NASD,* 637 F.3d 112, 116-17 (2d Cir. 2011), confirms the point from the other direction. There, immunity attached because the challenged conduct was tied to an identifiable regulatory function and an SEC-supervised rulemaking path: NASD bylaw amendments that required filing and approval under Section 19(b). The court could identify the regulatory function and the filed-rule framework to which the conduct was tied. That is the contrast here. DTCC has not identified a comparable filed-rule framework governing the final non-CNS MMTLP transaction set, unresolved obligations, beneficial-owner entitlements, and conversion into a non-DTC-eligible successor security. The missing link is not whether DTCC generally performs clearing functions. It is whether this specific event-specific treatment was traceable to delegated filed-rule authority.

DTCC's motion asks the Court to decide the functional immunity question at too high a level of generality. Describing the challenged conduct as "clearance and settlement" does not answer whether the specific MMTLP / Next Bridge treatment was within delegated filed-rule authority. Plaintiff does not ask the Court to defer to Plaintiff's label. He asks the Court not to defer to DTCC's label either. The functional test requires the Court to examine the objective nature of the challenged conduct and whether that conduct was traceable to delegated authority. At the pleading stage, the SAC's well-pleaded facts plausibly dispute that predicate. Questions of delegated statutory and filed-rule authority are for courts to decide under the functional immunity test, not resolved by a defendant's self-characterization of its own regulatory scope.

Applying the functional test objectively: the challenged conduct is the application of event-specific settlement and entitlement treatment to a corporate action involving final-day non-CNS transactions, deletion of a security symbol, cancellation of the underlying shares, and conversion of positions into a non-DTC-eligible, non-publicly-traded successor security—without any identified filed-rule mechanism governing those consequences. Whether that specific treatment was within a filed rule is the question. *Weissman v. NASD,* 500 F.3d 1293, 1297 (11th Cir. 2007). DTCC has not answered it.

**C. Plaintiff Pleads Specific Facts Supporting a Plausible Filed-Rule-Gap Inference.**

DTCC will argue that the filed-rule gap allegation is a legal conclusion the Court need not accept under *Iqbal.* That argument mischaracterizes the SAC. The SAC does not merely assert that DTCC "acted outside its authority." It pleads specific facts from which the filed-rule-gap inference plausibly follows. Those facts must be accepted as true, and they plausibly support the inference that no clearly identified filed rule governed the challenged event-specific treatment.

Those facts are: FINRA's own written confirmation that December 8 transactions did not clear through CNS, that post-halt trades required broker-to-broker resolution outside DTC, and that the event "provided no continuity in the clearance and settlement process." SAC ¶ 54. The issuer's SEC-filed Rule 424(b)(4) prospectus confirming that Next Bridge shares would not be publicly traded and would not be eligible for electronic transfer through DTC or any other established clearing corporation. SAC ¶¶ 45-46. NSCC's own Obligation Warehouse rules confirming that obligations exiting CNS persist in a non-guaranteed track—but providing no specific mechanism for the scenario that arose here: obligations persisting through deletion, cancellation, and conversion into a non-DTC-eligible successor. SAC ¶¶ 33, 56. The Financial Information Forum's direct written communications to SEC Trading and Markets in 2023 confirming

9

unrecoverable lent shares, certificate-backed shortfalls, and unresolved customer-entitlement problems. SAC ¶¶ 59-60. TradeStation's written customer notice confirming it could not honor customer requests to register Next Bridge ownership because shares were not backed by a physical certificate. SAC ¶ 61.

These are statements by the regulatory participants themselves—specific, verifiable, and largely undisputed. At the pleading stage, these facts plausibly support the inference that the MMTLP / Next Bridge event was not governed by an identified, clear, and enforceable filed-rule mechanism for final non-CNS trades, unresolved obligations, and beneficial-owner entitlements in a non-DTC-eligible successor security. Rule 17Ad-22(e)(1) requires written policies and procedures providing a well-founded, clear, transparent, and enforceable legal basis for each aspect of a clearing agency's activities. The documented post-event operational failures are consistent with the absence of such a basis for this specific event.

This is why the filed-rule gap is not merely a label. Section 19(b)(1) requires SRO proposed rule changes to be filed with the SEC. The Exchange Act defines clearing-agency rules to include rules, bylaws, and certain stated policies, practices, and interpretations. 15 U.S.C. §§ 78s(b)(1), 78c(a)(27)-(28). And Rule 17Ad-22(e)(1) requires a covered clearing agency to maintain written policies and procedures providing a well-founded, clear, transparent, and enforceable legal basis for each aspect of its activities. Those provisions support the inference that operative, rule-like standards materially affecting market participants must be traceable to a publicly filed and SEC-approved rule framework before taking effect. DTCC cannot avoid that framework at the pleading stage by describing the challenged treatment at a level of generality that makes the filed-rule question disappear. Moreover, the filed-rule gap is not based merely on DTCC's silence in this motion. It is based on a mismatch between the rules that appear to exist and the event that

10

actually occurred. NSCC Rule 51 and Procedure II.A address the tracking, storage, maintenance, and non-guaranteed treatment of obligations outside CNS—but they do not clearly identify a filed mechanism governing final non-CNS MMTLP trades, unresolved short or fail obligations, beneficial-owner entitlements, and conversion into a non-DTC-eligible successor security after halt, deletion, and cancellation. The SAC alleges that this specific aspect of the MMTLP / Next Bridge treatment lacked the well-founded, clear, transparent, and enforceable legal basis Rule 17Ad-22(e)(1) requires.

Plaintiff does not argue that operational difficulty, non-CNS processing, or a non-DTC-eligible successor automatically proves unlawful conduct. The argument is that those facts, taken together with the absence of an identified filed-rule mechanism, plausibly dispute the authority predicate DTCC must establish to obtain immunity on the pleadings.

### D. Immunity Cannot Be Self-Sealing.

DTCC's immunity argument is circular. It runs: (1) the challenged conduct is clearance and settlement; (2) clearance and settlement is within delegated authority; (3) therefore immunity applies; (4) therefore the Court cannot examine whether the challenged conduct was within delegated authority. Step four forecloses the examination steps one through three purport to have conducted.

That cannot be right. Whether specific conduct was within delegated authority is the question immunity asks—not the answer it supplies before the question is examined. If immunity foreclosed that examination, the Exchange Act's filed-rule requirements for registered clearing agencies would be insulated from any review in precisely those cases where the defendant

11

invokes those same requirements as the basis for immunity. Section 19(b)'s filing mandate would be a dead letter.

## III. DEXTER DOES NOT REACH THE SAC'S THEORY.

*Dexter v. Depository Trust & Clearing Corp.,* 406 F. Supp. 2d 260 (S.D.N.Y. 2005), is DTCC's heaviest case. It does not control here.

*Dexter* involved a challenge to how DTC exercised a depository distribution function—not whether it had authority to do so. DTC's depository authority was clear, statutory, and undisputed. The court held that even incorrect exercise of an authorized function is immune. That is the right rule for the right situation: a plaintiff who concedes the SRO had authority but contests how it used it.

The SAC presents the prior question. Plaintiff does not allege that DTCC exercised an authorized function incorrectly. Plaintiff alleges the specific event-specific treatment lacked a clearly identified authorization in the first place. That is the question *Dexter* never addressed. If *Dexter*'s principle resolved the authorization question in the defendant's favor by default, no clearing-agency conduct could ever be examined for filed-rule authorization. Immunity would foreclose the examination before it began. That cannot be the intended scope of the decision.

*Whistler Investments, Inc. v. Depository Trust & Clearing Corp.,* 539 F.3d 1159 (9th Cir. 2008), similarly involved standard depository and transfer functions with clear statutory authority. The other MMTLP dismissals DTCC invokes addressed broad damages claims and fraud theories—not a targeted declaratory challenge to the filed-rule basis of event-specific clearing-agency treatment. Their dismissal of different claims on different theories does not control the SAC.

12

Count II does not claim DTCC is liable because FINRA halted MMTLP under Rule 6440. It claims DTCC's clearing-agency infrastructure applied event-specific settlement and entitlement treatment to the post-halt corporate-action sequence without a clear filed-rule basis for that specific treatment. FINRA's halt authority does not determine whether DTCC had a clearly identified filed-rule framework for the settlement and entitlement consequences that followed the halt, deletion, and conversion of MMTLP positions into non-DTC-eligible Next Bridge interests.

## IV. THE SAC STATES A COGNIZABLE CLAIM FOR DECLARATORY RELIEF.

### A. Section 27 Equity Jurisdiction Supports the Claim.

DTCC argues that Sections 17A and 19 create no private right of action. Plaintiff does not dispute that as applied to damages claims. *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 208 (2d Cir. 1999); *Brawer v. Options Clearing Corp.,* 633 F. Supp. 1254, 1261 (S.D.N.Y. 1986); *Feins v. AMEX,* 81 F.3d 1215, 1223-24 (2d Cir. 1996). He does not seek damages and does not ask the Court to imply a damages remedy from Sections 17A or 19. He seeks declaratory relief only as to whether DTCC's asserted immunity rests on conduct actually within the filed-rule authority DTCC invokes—a question DTCC itself has placed directly at issue by asserting immunity.

*Manning* and *Feins* can coexist here. *Feins* limits private damages actions under Section 19. *Manning* confirms that Section 27 reaches suits in equity that rise or fall on proving a federal Exchange Act duty. This is not a suit that merely references the Exchange Act in passing. Count II rises or falls on whether the challenged MMTLP / Next Bridge treatment had the filed-rule and legal-basis support required by Sections 17A and 19 and Rule 17Ad-22(e)(1). Plaintiff seeks no damages, does not privately enforce DTCC's rules as a damages cause of action, and asks only

13

for a declaration resolving whether the specific challenged framework was within the authority DTCC invokes as the basis for immunity. That is why *Manning* supports jurisdiction here even though Plaintiff does not ask the Court to imply a private damages remedy.

Section 27 of the Exchange Act grants district courts exclusive jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created by" the Exchange Act or its rules. 15 U.S.C. § 78aa. Federal question jurisdiction under 28 U.S.C. § 1331 independently supports the Court's jurisdiction. Nor does the Exchange Act automatically preclude district-court jurisdiction over every dispute involving SRO conduct. *Lanier v. BATS Exch., Inc.,* 838 F.3d 139, 147-48 (2d Cir. 2016) (district court erred in concluding it lacked subject-matter jurisdiction over exchange-related claims; the Exchange Act's regulatory structure does not automatically preclude district-court jurisdiction absent fairly discernible congressional intent to channel the specific claim into the administrative review scheme). Plaintiff's Count II is not a request to review an SEC order or displace administrative proceedings. It is a targeted declaratory claim concerning whether the specific challenged framework was within the filed-rule authority DTCC invokes as the basis for immunity. *Spicer v. Chicago Bd. of Options Exchange, Inc.,* 977 F.2d 255 (7th Cir. 1992)—which concerned private damages claims—does not preclude declaratory relief where no damages are sought and an independent jurisdictional basis exists. If the Court concludes that Section 27 and the DJA do not supply a sufficient legal vehicle for final declaratory relief against DTCC, that would at most support narrowing or amendment—not dismissal with prejudice where DTCC's asserted immunity itself places filed-rule authority directly at issue.

**B. The Declaratory Judgment Act Is Remedial, and the SAC Identifies an Independent Federal Controversy.**

Plaintiff agrees that the DJA is remedial and does not create substantive rights. *Chevron Corp. v. Naranjo,* 667 F.3d 232, 244 (2d Cir. 2012). The legal predicate is the Exchange Act's filed-rule framework and the Court's Section 27 equity jurisdiction over a live controversy. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007). Courts have declaratory jurisdiction where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41 (1937). The parties have directly adverse legal interests: DTCC asserts the challenged treatment was within delegated authority and therefore immune; Plaintiff alleges it was not and his property remains confined as a result. *Steffel v. Thompson,* 415 U.S. 452, 462 (1974) (DJA available for prospective relief from ongoing legal consequences even where triggering events are past).

*Pa. Higher Educ. Assistance Agency v. Perez,* 416 F. Supp. 3d 75, 87 (D. Conn. 2019), requires a plaintiff to have "a cause of action against the defendant over which this Court has jurisdiction." That standard is met: Plaintiff's claim is grounded in Section 27 equity jurisdiction over a live Exchange Act controversy with concrete parties, a specific legal question, and an ongoing property injury.

**C. The Declaration Is Not Advisory and Standing Is Met.**

The controversy is not historical. Plaintiff's resulting Next Bridge position remains outside ordinary DTC-based trading and transfer channels today. His broker confirmed in writing that the position cannot be transferred electronically through ACATS or DTC, would remain behind if

15

the account were transferred, and is not eligible for certificate or alternative transfer. SAC ¶¶ 63, 98. That is a present, ongoing constraint on a specific property interest.

A declaration would not need to restore trading, compel DTC eligibility, or unwind the corporate action to be redressable. It would resolve a live legal dispute over whether the challenged framework was within DTCC's delegated filed-rule authority and would resolve the legal uncertainty DTCC invokes to defeat any further relief. If the Court enters such a declaration, Section 2202 permits the Court to consider any further necessary or proper relief after notice and hearing. Plaintiff does not ask the Court to decide the scope of that further relief at the pleading stage. DTCC's redressability argument is circular: it asserts no continuing obligation to Plaintiff, which is the very conclusion a declaration would determine. The Court cannot resolve redressability by assuming, in DTCC's favor, the immunity defense that is the subject of the live controversy.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180-81 (2000) (ongoing consequences of past conduct satisfy Article III redressability where prospective relief would address those consequences).

Standing is met. Plaintiff's injury is concrete, particularized, and ongoing—tangible, present harm to a specific property interest. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423-25 (2021); *Spokeo, Inc. v. Robins,* 578 U.S. 330, 340-41 (2016) (tangible property harm is paradigmatic concrete injury). Causation is met: the SAC specifically alleges that DTCC's event-specific treatment directly produced the outcome in which Plaintiff's position was confined outside ordinary DTC-based channels. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Redressability is met: a declaration resolving the legal status of the challenged framework

16

provides the predicate for further prospective relief addressing the continuing constraint on Plaintiff's specific resulting position.

## V. DTCC CANNOT DISCLAIM CORPORATE IDENTITY AND CLAIM FULL IMMUNITY—THE SAC PLEADS DTCC'S OWN CONDUCT AND ITS OWN SEC FILINGS CONFIRM ITS OPERATIONAL ROLE.

In footnote 1 of its motion, DTCC states: "DTCC itself does not process, clear, or settle securities transactions" because DTCC is "a holding company." Motion at 1 n.1. It then states that it "construes references in the SAC to 'DTCC' as intended to refer to NSCC and/or DTC." *Id.* Having disclaimed any operational role, DTCC then asks this Court to grant it a prejudice dismissal—Motion at 18-21—that would permanently extinguish claims against NSCC and DTC as well. These positions cannot coexist.

If DTCC did not perform the challenged conduct because it is a mere holding company, a merits dismissal with prejudice in DTCC's favor does not adjudicate whether NSCC or DTC are entitled to immunity. Corporate separateness cannot simultaneously support DTCC's disclaimer of having acted and a prejudice dismissal that bars claims against the subsidiaries that did act. And if DTCC performed the challenged conduct through NSCC and DTC—which is what the SAC alleges—then DTCC must answer for it.

The SAC pleads DTCC's own conduct in four specific respects. First, it alleges that the December 8, 2022 revision of the operative corporate-action notice occurred "after a FINRA-DTCC call from which Meta Materials and Next Bridge counsel were excluded." SAC ¶ 4. At the pleading stage, the allegation that DTCC participated in a call concerning the operative corporate-action revision supports a plausible inference that DTCC was not merely a passive

holding company with no operational role in the challenged event. Second, the SAC specifically alleges that "DTCC permitted the final transaction set to exit ordinary CNS-based settlement without a clear filed-rule basis for what came next." SAC ¶ 8. "DTCC permitted" is a direct conduct allegation—not an allegation about NSCC or DTC acting independently. Third, the SAC defines DTCC as "a private corporation that *operates* securities clearance, settlement, and depository infrastructure through affiliated entities." SAC ¶ 13. The SAC describes DTCC as the operator. Fourth, Count II is expressly "directed to DTCC's *own conduct*, acting through DTC and NSCC." SAC ¶ 86. "DTCC's own conduct" is the SAC's language, not Plaintiff's gloss in this brief. "Acting through DTC and NSCC" describes the mechanism by which DTCC's own conduct was carried out—not a disclaimer of DTCC's involvement.

DTCC's own SEC filings confirm the same operational reality. In rule filings submitted to the SEC, DTCC has stated: "DTCC operates on a shared services model for DTC, NSCC, and FICC. Most corporate functions are established and managed on an enterprise-wide basis pursuant to intercompany agreements under which it is generally DTCC that provides a relevant service to DTC, NSCC, or FICC." SR-DTC-2020-002 (SEC Rule Filing). That public filing undermines any request for dismissal with prejudice based solely on the assertion that DTCC is a passive holding company with no plausible operational role in the challenged conduct.

The Supreme Court's decision in *United States v. Bestfoods,* 524 U.S. 51, 64-65 (1998), provides the legal framework. The Court held that a parent corporation may be held directly liable for its own conduct—without piercing the corporate veil—when it actively participated in and managed the operations that caused the harm. The test is not ownership. It is whether the parent was "pulling the levers" of the specific conduct at issue. Here, the SAC alleges DTCC participated in the December 8 call that preceded the revised corporate-action notice (SAC ¶ 4), that DTCC

18

itself permitted the final transaction set to exit CNS without a clear filed-rule basis (SAC ¶ 8), and that Count II targets DTCC's own conduct acting through its subsidiaries (SAC ¶ 86). Those allegations—taken as true at this stage—support that DTCC was not a passive holding company during the MMTLP / Next Bridge event. At the pleading stage, those allegations support a plausible direct-conduct theory against DTCC without requiring Plaintiff to pierce the corporate veil.

SR-DTC-2020-002 does not by itself prove DTCC controlled every aspect of the MMTLP / Next Bridge event. It does, however, defeat DTCC's effort to portray itself as a purely passive holding company for purposes of obtaining dismissal with prejudice. The SAC alleges DTCC's own conduct, including participation in the December 8 call, permitting the final transaction set to exit CNS without a clear filed-rule basis, and acting through DTC and NSCC. SAC ¶¶ 4, 8, 86. Those allegations and DTCC's public filings plausibly dispute DTCC's characterization of itself as a passive holding company and, at minimum, show that any party-identity or operational-role issue is curable by targeted amendment. Dismissal with prejudice would therefore be premature.

## VI. DISMISSAL WITH PREJUDICE WOULD BE PREMATURE.

Dismissal with prejudice is appropriate only where amendment would be futile—where no amendment could state a viable claim. *Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir. 2011). Leave to amend "shall be freely given when justice so requires," and denial requires specific findings of bad faith, undue delay, prejudice, or futility. *Foman v. Davis,* 371 U.S. 178, 182 (1962). The Second Circuit has reversed denials of amendment lacking adequate explanation. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 190 (2d Cir. 2015). None of the *Foman* factors favoring denial is present here.

19

The SAC is not a third attempt at the same theory. It is a first attempt at a fundamentally different theory—targeted, non-monetary, and grounded in a specific statutory and regulatory framework—that this Court has never evaluated on the merits. Dismissal with prejudice on a theory the Court is considering for the first time, by a pro se plaintiff who complied with every directive in the Court's prior order and substantially narrowed his claims, is not warranted.

DTCC's own motion identifies a curable deficiency: uncertainty about the respective roles of DTCC, NSCC, and DTC. Plaintiff could amend to specify which entity performed which aspect of the challenged treatment. *TechnoMarine SA v. Giftports, Inc.,* 758 F.3d 493, 506 (2d Cir. 2014) (dismissal with prejudice improper where identified deficiency is curable by targeted amendment); *Flowers v. Conn. Light & Power Co.,* 2021 WL 5564085, at *2 (2d Cir. Nov. 29, 2021) (Second Circuit protective of pro se plaintiffs' opportunity to cure deficiencies). If the Court finds any deficiency in Count II, the appropriate remedy is dismissal without prejudice with leave to amend.

Even if the Court concludes that the present pleading does not adequately state a declaratory claim against DTCC the holding company, that would not establish futility as to the underlying theory. DTCC's own motion identifies the curable issue: the relevant operational conduct may have been performed by NSCC or DTC rather than DTCC itself. A targeted amendment could name the proper clearing-agency entities, identify the specific conduct attributed to each, and clarify the precise filed-rule gap alleged as to each. That is a classic curable pleading issue—not a basis for dismissal with prejudice that would permanently extinguish claims against NSCC and DTC that have never been adjudicated on the merits.

**CONCLUSION**

For the foregoing reasons, DTCC's motion to dismiss should be denied.

DTCC's motion rests on a label. It calls the challenged conduct "clearance and settlement" and invokes immunity. But as DTCC's own motion acknowledges, the SAC does not challenge clearance and settlement generally—it challenges whether DTCC "permitted the final transaction set to exit ordinary CNS-based settlement without a clear filed-rule basis for what came next." Motion at 7 (quoting SAC ¶ 8). That is a specific allegation. DTCC's answer to it is a category. *City of Providence* requires more. *Standard Investment* shows what more looks like: courts identify the specific regulatory function and the specific filed-rule framework to which the conduct is tied. DTCC has not done that here.

Plaintiff is a Connecticut resident who held 1,675 shares of MMTLP when the halt was imposed. He could not act. His resulting position in Next Bridge Hydrocarbons cannot be traded or transferred through any ordinary market mechanism today. He seeks only a declaration resolving whether the framework producing that ongoing injury had the legal foundation Sections 17A and 19 of the Exchange Act require. That is a narrow question. It deserves an answer.

Because Plaintiff proceeds pro se, his pleadings are entitled to liberal construction and must be interpreted to raise the strongest arguments they suggest. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191-92 (2d Cir. 2008); *Wiggins v. Griffin,* 86 F.4th 987, 996 (2d Cir. 2023).

Plaintiff respectfully requests that the Court:

    (1) Deny DTCC's motion to dismiss Count II of the Second Amended Complaint;

(2) In the alternative, if the Court finds any pleading deficiency, dismiss without prejudice and grant leave to file a targeted amendment clarifying the respective roles of DTCC, NSCC, and DTC and the specific filed-rule gap alleged; and

(3) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: May 18, 2026

**/s/ Jason Rolo**

Jason Rolo

L6 Surrey Ln

Torrington, CT 06790

413-657-9082

mastcab@yahoo.com

Plaintiff, Pro Se

22

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2026, I filed the foregoing Memorandum of Law in Opposition to Defendant FINRA's Motion to Dismiss Count I of the Second Amended Complaint electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by e-mail to all counsel of record by operation of the Court's electronic filing system.

**/s/ Jason Rolo**

Jason Rolo

Pro Se

L6 Surrey Ln

Torrington, Connecticut 06790

Telephone: (413) 657-9082

Email: mastcab@yahoo.com

Dated: May 18, 2026

23