NITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JASON ROLO, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:24-cv-02053-VDO |
| | ) | |
| | ) | |
| SECURITIES AND EXCHANGE | ) | |
| COMMISSION, et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**SECURITIES AND EXCHANGE COMMISSION'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

i

**INTRODUCTION**

Plaintiff Jason Rolo's Opposition to the Commission's motion to dismiss the Second Amended Complaint, ECF 107 ("Opp."), fails to establish that Plaintiff has standing or that he has stated a claim upon which relief can be granted. Even if this Court were to consider the allegations in the Opposition that add to, and often contradict, allegations raised in the Second Amended Complaint, ECF 100 ("SAC"), the SAC should be dismissed.

Plaintiff's reformulated claims do not overcome the fact that he lacks standing. The Commission's Notice of Effectiveness did not cause Plaintiff's injuries that occurred when he waited to sell his shares until after December 8, 2022, and a declaration regarding the Notice of Effectiveness would not even partially remedy his alleged injuries. Also, even if Plaintiff had standing, his new claims would fail. Plaintiff's contention that the Commission should have foreseen the NBH clearing and settlement issues and therefore blocked effectiveness is meritless. Securities regulation, and accordingly the staff's decision to accelerate the effective date of a registration statement, is premised on the adequacy of disclosure, and the fact that NBH shares would not be DTC-eligible (and therefore difficult to trade) was explicitly disclosed. The staff does not consider the merits of any specific issuer or offering.

**ARGUMENT**

I.    **This Court lacks subject-matter jurisdiction over the Second Amended Complaint because Plaintiff does not have standing.**

A.    **Plaintiff lacks standing because he cannot show that the Commission caused any alleged injuries.**

Plaintiff is attempting to amend his Complaint via his Opposition by reframing his alleged injuries, which is improper, but even if the Court were to accept his new allegations, he cannot establish the causation or redressability necessary to find standing.

In the SAC, Plaintiff alleges that his "injuries are concrete and personal. He lost the final quoted market window in which he could have sold, closed, reduced or otherwise managed his position before" MMTLP was exchanged for NBH. He also alleges that "[a]bsent FINRA's December 8, 2022 revision of the operative corporate action notice and the subsequent halt-through-deletion sequence," Plaintiff would have been able to sell his MMTLP shares before being stuck "with a resulting securities interest confined outside ordinary DTC-based trading and transfer channels, without any adequate remedy through ordinary market mechanisms." SAC ¶ 66. In an effort to salvage his causation argument against the Commission, Plaintiff's Opposition ignores the alleged harm of losing the trading window as a result of FINRA's halt and describes his injury only as "hold[ing] a securities interest locked outside ordinary DTC-based trading and transfer channels." Opp. at 3.[1] Plaintiff also argues that it was predictable that FINRA would impose the halt to meet the requirements of FINRA Rule 6490, Opp. at 5, even though the SAC states that FINRA's actions were "not clearly authorized by Rule 6440, Rule 6490, or any filed SEC-approved rule." SAC ¶ 30; *see also id.* ¶ 80 (alleging FINRA's actions were "ultra vires and outside the rule-based authority delegated to FINRA under the Exchange Act and FINRA's SEC-approved rules."). Plaintiff, however, cannot rely on allegations that are not in the SAC, or that are inconsistent with the SAC, to survive a motion to dismiss. *See Wright v. Ernst & Young, LLP*, 152 F.3d 169, 178 (2d Cir. 1998); s*ee also Mafcote v. Indus., Inc. v. Milan Exp. Co., Inc.*, 2011 WL 3924188, at *7 (D. Conn. Sept. 7, 2011) (granting defendant's motion for partial summary judgment where "Plaintiffs' current argument also contradicts their own allegations in the Amended Complaint").

---

[1] Plaintiff argues at length that he has suffered a concrete, not generalized, injury and that his alleged injury is ongoing, Opp. at 2-3, but the Commission never argued to the contrary in its MTD.

2

But even if Plaintiff's alleged injury was viewed as only holding difficult to transfer NBH shares, he cannot establish causation. Plaintiff acknowledges that he must show that his injury is traceable to the Notice of Effectiveness, Opp. at 4, to establish Article III standing, but he does not show such a connection. He contends that it is sufficient that the Notice of Effectiveness "is a legally operative link in the chain that produced the harm," *id.*, but the cases he cites and binding Supreme Court precedent require more than that an act be a link in a chain.[2] As the Commission's memorandum in support of its motion to dismiss, ECF 106-2 ("MTD"), explained, the "causation requirement precludes speculative links—that is, where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs." MTD at 10 (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024)). "The causation requirement also rules out attenuated links—that is, where the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing." *Id.* The alleged link Plaintiff relies upon is both speculative and attenuated.

Plaintiff asserts that it was foreseeable that NBH shares would not be DTC-eligible and there would be no public market for NBH shares following the spin-off. Opp. at 4. That is true,

---

[2] Many of the cases Plaintiff cites do not even address the causation prong of standing. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("[t]his case concerns the injury-in-fact requirement" not causation); *Friends of the Earth, Inc. v. Laidlaw Environ. Serv. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (addressing the injury in-fact-prong for associational standing); *Bauer v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003) ("the parties frame a narrow question for us to consider: whether Bauer's allegation . . . constitutes a cognizable injury-in-fact for Article III standing purposes"). *Dept' of Commerce v. New York*, 588 U.S. 752, 767 (2019), addresses causation, but it does not help Plaintiff. In that case, the plaintiffs overcame concerns that they were relying on speculation by providing evidence about how independent actors had acted historically and by explaining what actions were predictable. *Id.* Plaintiff has not provided any comparable basis to address the speculative links in the chain he relies on. *Clapper v. Amnesty Int'l USA*, 569 U.S. 398 (2013), also does not help Plaintiff as plaintiff in that case lacked standing because his alleged injuries were not fairly traceable to the alleged misconduct.

3

as that was disclosed in NBH's SEC filings. SAC Ex. 10, ECF 100-9 at 23-24. That does not, however, mean that Plaintiff's alleged injury of not being able to sell his MMTLP shares and consequently holding NBH shares was a predictable consequence of the Notice of Effectiveness. Plaintiff could have sold his MMTLP shares at any point from November 18 through December 8, 2022 if he did not want to own shares in NBH. It certainly was not "sufficiently predictable," *All. for Hippocratic Med.*, 602 U.S. at 383, that an investor who did not want to own NBH shares would wait until the last possible day of trading to sell his MMTLP shares.

Moreover, Plaintiff's allegation that the fact that MMTLP shares would be converted into NBH shares that were not DTC eligible "made it foreseeable that broker-dealers, FINRA, and clearing infrastructure would face unresolved delivery, entitlement, and settlement problems" is entirely conclusory. Opp. at 4-5. Plaintiff provides no basis for finding that when the Commission issued the Notice of Effectiveness, anyone could have predicted what would happen as thousands of buyers and sellers of MMTLP shares made their independent decisions about whether and when to buy or sell MMTLP shares, as broker-dealers determined how to handle orders, and as FINRA made decisions about how to use its regulatory authority.

The alleged link between Plaintiff's injuries and the Notice of Effectiveness is speculative and attenuated regardless of whether one looks at Plaintiff's claims in the SAC or the revisions in the Opposition, and in neither instance has Plaintiff established causation.

**B. Plaintiff lacks standing because his claim cannot be redressed by this lawsuit.**

Plaintiff also lacks standing on redressability grounds. Plaintiff acknowledges that "a ruling for Plaintiff would not make NBH DTC-eligible, would not restore MMTLP, and would not unwind the transactions that have already occurred" between November 18, 2022 and the present. Opp. at 8. Plaintiff nonetheless "asks for a declaration that the Commission acted

contrary to law in making legally operative a transaction structure that lacked the rule-based foundation required by the Exchange Act, and for prospective equitable relief addressing the continuing legal consequences of that framework on his present position." Opp. at 8. Plaintiff claims that such relief would redress his injury because it "would alter the legal basis currently burdening Plaintiff's position." *Id.* Plaintiff's contention is meritless.

First, a declaration that the Commission violated the law would not change that "Plaintiff holds a securities interest locked outside ordinary DTC-based trading and transfer channels." Opp. at 3. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Environ*, 523 U.S. 83, 107 (1998).[3] Second, in neither the SAC nor the Opposition does Plaintiff articulate what sort of "prospective equitable relief" the Court could or should issue to even partially remedy his injuries. The "prospective" relief sought in the SAC is "setting aside" the Notice of Effectiveness, SAC at 32, ¶ L, but setting aside the Notice of Effectiveness is not prospective relief, and it is not possible to unring the bell of what has transpired over the past three-and-one-half years. *See* MTD at 13.

---

[3] Plaintiff attempts to distinguish *Steel* by arguing that it involved "a harm fully resolved before suit [whereas] Plaintiff's injury persists today." Opp. at 8. Plaintiff's characterization of *Steel* is both incorrect and irrelevant. *Steel* involved a past violation relating to the disclosure of information, but the plaintiff alleged "lingering effects of that failure." 523 U.S. at 105. That is no different than Plaintiff arguing that the Commission's past conduct—issuing the Notice of Effectiveness—is causing him ongoing harm. In *Steel*, as in this case, the issue is not the absence of an ongoing injury, but the fact that "none of the relief sought by [the plaintiff] would likely remedy [his] alleged injury in fact." *Id.* at 109. *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) (italics original), also provides no support for Plaintiff because it held that the plaintiff had standing where "a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." A favorable decision here will not remedy *any* injury to Plaintiff.

**II.    Plaintiff fails to state a claim upon which relief can be granted.**

**A.  Plaintiff fails to state a claim that the Commission acted contrary to law.**

Any claim that the Commission violated Sections 17A or 19(b) of the Securities Exchange Act of 1934 ("Exchange Act") or regulations thereunder by issuing the Notice of Effectiveness fails because these statutes concern clearing agencies and amendments to self-regulatory organization's rule; they are unrelated to the issuance of a notice of effectiveness. MTD at 13-14. Plaintiff acknowledges that he "does not contend that Sections 17A and 19(b) govern the act of issuing a notice of effectiveness in the abstract." Opp. at 12. Plaintiff appears to concede that he cannot maintain a claim that the Commission violated Sections 17A or 19(b), but rather he argues that these statutes should be considered when determining if issuing the Notice of Effectiveness was arbitrary and capricious. As discussed below, that argument fails.[4]

**B.  Issuing the Notice of Effectiveness was not arbitrary or capricious.**

The Securities Act of 1933 requires that issuers register all non-exempt offers and sales of securities (including spin-offs of an issuer's securities to a class of public shareholders) by filing with the Commission a registration statement containing information material to the investment decision. 15 U.S.C. §§ 77e, 77f. Before the securities may be sold, the Commission, or Commission staff through delegated authority, generally issues an order (referred to as a notice of effectiveness) declaring the registration statement effective. *Id.* § 77f(c).

The Commission did not act arbitrarily or capriciously when it issued the Notice of Effectiveness for NBH's registration statement. As an initial matter, Plaintiff fails to

---

[4] Plaintiff also argues that he is in the zone-of-interest that Section 17A was designed to protect, Opp. at 9, and that the Notice of Effectiveness was final agency action, *id.* at 9-10, but the MTD never argued to the contrary. Nor did the Commission argue that sovereign immunity barred Plaintiff's claims. *See id.* at 16.

acknowledge that "review of agency action under the arbitrary and capricious standard of review is narrow and particularly deferential." *New Jersey v. Bessent*, 149 F.4th 127, 152 (2d Cir. 2025). "[A]gency action is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Natural Resources Defense Council v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (citation omitted). Plaintiff cannot satisfy this standard. Plaintiff argues that the Commission relied on the fact that "the S-1 disclosed that NBH shares would not be DTC-eligible" and failed to consider other factors, but Plaintiff has not shown that the Commission failed to consider any factors it was required to consider under the relevant statutes or that the Commission's focus on whether NBH's disclosures were complete was in any way improper.

Plaintiff's arguments ignore that "[s]ecurities regulation in this country is premised on open disclosure." *SEC v. Fehn*, 97 F.3d 1276, 1294 (9th Cir. 1996). The Commission is not a merit regulator. *Malack v. BDO Seidman, LLP*, 617 F.3d 743, 750 (3d Cir. 2010) (the SEC "does not conduct 'merit regulation.' Rather, it seeks to confirm that the issuer adequately disclosed information pertaining to the security."). Thus, in reviewing registration statements, Commission staff consider whether disclosures are provided and do not conduct a review aimed at determining whether a security is a good investment. *See* 15 U.S.C. § 77h(a), (b), (c), (d) (in statute concerning the effective date of registration statements, relevant considerations include "the adequacy of the information respecting the issuer," "the facility with which the nature of the securities to be registered . . . can be understood," whether "a registration statement is on its face incomplete or inaccurate in any material respect," and whether "the registration statement

includes any untrue statement of a material fact or omits to state any material fact required to be stated therein"); *SEC Filing Review Process* (available at https://www.sec.gov/resources-small-businesses/capital-raising-building-blocks/sec-filing-review-process) (stating that when SEC staff review filings, such as registration statements, their comments may request that a company "provide supplemental information," "revise disclosure," or "provide additional disclosure").[5] NBH disclosed that NBH shares would be "locked outside ordinary DTC-based trading and transfer channels," Opp. at 3. The Commission, having due regard for the adequacy of the disclosure in the registration statement, properly focused on whether NBH was disclosing material facts about the transaction the registration statement addressed.

Plaintiff argues that the Commission acted arbitrarily and capriciously in issuing the Notice of Effectiveness because the transaction described in NBH's registration statement "was contrary to the statutory and regulatory framework governing clearance and settlement." Opp. at 12. Plaintiff's factual basis for this statement is that the Notice of Effectiveness that "gave operative legal force to . . . a spin-off that exited the DTC ecosystem, cancelled the underlying security, and provided no identified rule-based reconciliation mechanism for unresolved obligations." *Id.* Plaintiff, however, provides no legal basis for his claim that the Commission should have speculated about possible future trading issues in determining whether to allow a registration statement to go effective. Neither Section 17A of the Exchange Act nor any other

---

[5] Plaintiff's argument also rests on a misunderstanding of what facts may prevent a registration statement from being declared effective. Plaintiff is correct that granting a request for acceleration is not automatic, Opp. at 11, but Plaintiff ignores that it is the "general policy of the Commission" to grant such requests and none of the seven bases to refuse to accelerate the effective date relate to consideration of how a security will be cleared and settled in future transactions. *See* 17 C.F.R. § 230.461(b).

law or regulation imposes such a requirement.[6] Section 17A requires the Commission to facilitate a national system for the prompt and accurate clearance and settlement of securities transactions, 15 U.S.C. § 78q-1(a), and Rule 17Ad-22 establishes standards for clearing agencies. Neither suggests that the Commission must consider whether the registration of securities could lead to clearance and settlement issues beyond any such issues being disclosed to investors.

Plaintiff specifically cites Rule 17Ad-22(e)(1), which requires a *clearing agency* to establish policies and procedures to establish clear and transparent bases for clearing, and argues that issuing the Notice of Effectiveness "gave operative legal effect to a transaction structure that lacked those protections." Opp. at 12-13. This argument fails because the regulation requires that the DTC establish procedures to facilitate clearing; it does not state that a securities transaction cannot proceed if the issuer chooses not to make the securities DTC-eligible. Moreover, a company such as NBH is not required to use the national clearing system and make its securities DTC-eligible. *See generally Absolute Activist Master Value Fund, Ltd. v. Ficeto*, 2013 WL 1286170, at *18 (S.D.N.Y. March 28, 2013) (noting that "[s]hares that were not eligible for settlement via DTC were settled by physical delivery").

Because NBH's registration statement disclosed that NBH shares would not be DTC eligible and the SEC's role was not to consider the merits of the transaction described in the registration statement, the SEC did not act arbitrarily or capriciously in finding that NBH should have its registration statement declared effective.

---

[6] *See Oregon v. Natural Desert Assoc. v. USFS*, 957 F.3d 1024, 1033 (9th Cir. 2020) (agency's failure to analyze certain facts was not arbitrary and capricious where plaintiff "cites no statute or regulation containing any such requirement"); *Safe Haven Home Care, Inc. v. DHHS*, 681 F. Supp. 3d 195, 224 (S.D.N.Y. 2023) ("while Plaintiffs may have identified certain factors that CMS failed to consider, that failure would render CMS's decision arbitrary and capricious only if federal law required CMS to consider those factors").

### C.  There is no need to review the administrative record.

Nothing "from the administrative record is necessary to decide threshold legal questions presented by the pending motion to dismiss, including whether this Court has jurisdiction." *A.M.S. v. Edlow*, -- F. Supp. 3d --, 2026 WL 850779, at *8 (D.D.C. March 27, 2026) (granting motion to dismiss on claim that an agency acted arbitrarily and capriciously without reviewing the administrative record). The administrative record is unnecessary to dismiss this case because Plaintiff lacks standing. But even if Plaintiff had standing, the administrative record is unnecessary to reject Plaintiff's claim that it was arbitrary and capricious to issue the Notice of Effectiveness. *See, e.g., Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. Sept. 29, 2018) ("the administrative record is not necessary for the court's decision regarding the motion to dismiss" on 12(b)(6) grounds) (cleaned up). The administrative record is not needed to determine if "staff failed to consider whether the transaction structure complied with the Exchange Act's clearance-settlement requirements," Opp. at 11, because Plaintiff has not shown that Commission staff should have considered whether clearance or settlement issues were likely to occur when MMTLP shares were exchanged for NBH shares.

### CONCLUSION

Plaintiff's Second Amended Complaint should be dismissed with prejudice because Plaintiff has already twice amended his complaint, he provides no indication how further amendment could cure deficiencies in the SAC, and any further amendment would be futile. *See, e.g., Madsen v. Pratt & Whitney*, 2025 WL 2952064, at *3 (D. Conn. Oct. 20, 2025) (given "Plaintiff's failure to state a claim even after being given an opportunity to amend the complaint, it would be futile to allow Plaintiff further opportunity to amend") (Oliver, J.).

10

Respectfully Submitted,

Date: May 18, 2026                              /s/ Eric A. Reicher

                                                Melinda Hardy
                                                D.C. Bar No. 431906
                                                Eric A. Reicher
                                                D.C. Bar No. 490866
                                                Securities and Exchange Commission
                                                100 F Street NE
                                                Washington, DC 20549
                                                (202) 551-7921 (phone) (Reicher)
                                                hardym@sec.gov
                                                reichere@sec.gov

                                                Counsel for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of May, 2026, I filed or caused to be filed the foregoing Reply in Support of the SEC's Motion to Dismiss the Second Amended Complaint through the CM/ECF system which will provide service to counsels of record and to Plaintiff since he has been granted permission to file electronically by the Court.

/s/ Eric A. Reicher
Eric A. Reicher
Special Trial Counsel
U.S. Securities and Exchange Commission